UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: PORSCHE CARS NORTH          Case No.  2:11-md-2233
AMERICA, INC. PLASTIC COOLANT
TUBES PRODUCTS LIABILITY
LITIGATION                           **JUDGE GREGORY L. FROST**
                                    **Magistrate Judge E.A. Preston Deavers**

**This document relates to: <u>ALL CASES</u>.**

## <u>OPINION AND ORDER</u>

This matter is before the Court for consideration of Porsche Cars North America, Inc.'s Motion to Dismiss the Master Consolidated Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 62), Plaintiffs' Memorandum of Law in Opposition to Defendant Porsche Cars North America, Inc.'s Motion to Dismiss the Master Consolidated Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 77), and Porsche Cars North America, Inc.'s Reply Brief in Support of Its Motion to Dismiss the Master Consolidated Amendment Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 91).  For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

## I.  Background

The plaintiffs in this products liability action are purchasers of Porsche Cayenne, Cayenne GTS, Cayenne S, Cayenne Turbo, or Cayenne Turbo S sport utility vehicles of the model years 2003–2010 ("Cayenne").  Defendants are Porsche Cars North America, Inc. ("PCNA") and the German company Dr. Ing. h.c. F. Porsche Aktiengellschaft ("Porsche AG") (collectively, "Defendants").  Porsche AG manufactured the Cayenne and PCNA is the exclusive

importer of Cayenne vehicles in the United States.

On May 24, 2011, the United States Judicial Panel on Multidistrict Litigation ("the Panel") consolidated four related product liability actions involving the Cayenne (arising from California, New Jersey, New York, and Ohio) in this Court pursuant to 28 U.S.C. § 1407.  (ECF No. 1.)  The Panel subsequently transferred four related actions from Florida, Georgia, California, and Texas to this Court.  (ECF Nos. 3, 4, 11.)  On August 25, 2011, the plaintiffs in these eight actions, along with several new individual plaintiffs (collectively, "Plaintiffs"), filed a Consolidated Amended Complaint ("Complaint") with this Court alleging defects in the Cayenne's cooling system.  (ECF No. 35.)  Plaintiffs brought the Complaint on behalf of a proposed nationwide class of similarly situated Cayenne owners and lessees and proposed sub-classes of similarly situated Cayenne owners and lessees in California, Colorado, Florida, Georgia, Illinois, Michigan, New Jersey, New York, Ohio, Texas, and Washington.

Each individual plaintiff asserts that he or she purchased a Cayenne that came equipped with plastic coolant tubes.[1]  Plaintiffs assert that such tubes cracked, leaked, or otherwise failed and that, in some cases, the tubes leaked and caused damage to other parts of the engine.  When Plaintiffs attempted to repair or replace the coolant tubes, they allegedly learned that Porsche did not offer replacement plastic tubes but instead offered an "OEM update kit" that contained

---

[1] The circumstances in which each individual plaintiff purchased his/her Cayenne vary. Plaintiffs Graas, Krider, Starkey, Dudley, Gardner, Florez, Hoffecker, Crawford, Stuewe, and Wust plead only that they "purchased" or "owned" a Cayenne at all times relevant.  Plaintiffs Delgado and Gorospe purchased their Cayennes from a "used car dealer"; McIntosh purchased a "previously-owned" Cayenne from an undisclosed seller; Bredefeld and Daher purchased their Cayennes from a Suzuki and Ferrari dealer, respectively; and Spanoletti, Cadman, and Jackman purchased certified pre-owned Cayennes from authorized Porsche dealers.  Only Plaintiffs Conrad and Tran purchased their vehicles new.  (ECF No. 35 ¶¶ 72–232.)

aluminum coolant pipes and cost "at least $1,500 to $3,600 per vehicle" to purchase and install. (*Id*. ¶ 69.)

Plaintiffs allege that Defendants defectively designed the Cayenne by equipping it with plastic coolant tubes instead of aluminum pipes.  Plaintiffs argue that the Cayenne's coolant system is defective because coolant tubes are exposed to extreme heat and that, as a result of such exposure, coolant tubes made of plastic will crack and degrade.  Plaintiffs add that "most high-end performance vehicles with powerful engines use aluminum pipes to transport the coolant" and that the "extent of wear and tear on the Cayenne's plastic valley coolant tubes is entirely disproportionate to the age of these vehicles."  (*Id*. ¶ 68(b).)  Plaintiffs also allege that the use of plastic coolant tubes "implicates serious safety concerns."  (*Id*. ¶ 70.)

Plaintiffs assert that Defendants knew, reasonably should have known, or were reckless in not knowing about the coolant tube defect but failed to disclose the defect to consumers. Defendants allegedly had or should have had this knowledge "based on, among other things, widespread customer complaints of prematurely cracking coolant tubes, dealer inquiries, repair shop inquiries, dealer-provided repair data, the high volume of replacement parts being ordered, and [National Highway Traffic Safety Administration] complaints."  (*Id*. ¶ 63.)  Plaintiffs assert that, despite this alleged knowledge, Defendants promoted the Cayenne's cooling system and made misrepresentations such as " '[t]he entire cooling system is specifically designed for prolonged heavy-duty operation.' "  (*Id*. ¶ 62(c).)

Plaintiffs also attach to their Complaint a technical bulletin that PCNA issued in February 2008 stating that "[o]n [Model Year] 2003 to [Model Year] 2006 vehicles there is a chance that the coolant pipes made from plastic may start to leak. . . . Both coolant pipes (lower and heater)

must be replaced at the same times with new coolant pipes made from aluminum" as evidence that Defendants acknowledged the defect.  (ECF No. 35-1.)  Plaintiffs note that, despite acknowledging the defect, Defendants have not reimbursed Cayenne owners for the cost of replacement parts or issued any type of recall.

Plaintiffs plead a total of thirty-two claims for relief against Defendants, including one federal statutory claim and thirty-one state statutory and common law claims.  Plaintiffs seek economic damages, an order enjoining Defendants from "continuing the unfair business practices alleged in this Complaint," and injunctive relief "in the form of a recall or free replacement program."  (ECF No. 35, at 79.)  Plaintiffs do not claim any damages for bodily injury that the alleged coolant tube defect may have caused.

PCNA filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6) on January 6, 2012.  (ECF No. 62.)  That same day, Porsche AG filed a motion to dismiss pursuant to Rule 12(b)(2) (ECF No. 63) and a second motion to dismiss adopting PCNA's Rule 12(b)(6) arguments (ECF No. 64).  The Court is holding Porsche AG's Rule 12(b)(6) motion in abeyance until it decides the personal jurisdiction issue regarding Porsche AG.  (ECF No. 67.)  Thus, the Court now considers only PCNA's motion to dismiss.

## II.  Rule 12(b)(6) Standard

 Dismissal under Rule 12(b)(6) is proper if a complaint fails to state a claim upon which a court can grant relief.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must provide fair notice of what the claim is and the grounds upon which it rests, and it must set forth sufficient factual allegations suggesting that the plaintiff is entitled to relief under those claims.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citing *Conley v. Gibson*, 355

U.S. 41, 47 (1957)).  A court, in ruling on a Rule 12(b)(6) motion, must construe the complaint in the light most favorable to the plaintiff and treat all well-pleaded allegations contained therein as true.  *Id*. at 555–56.  The defendant bears the burden of demonstrating that the plaintiff has failed to state a claim for relief.  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Rule 8(a)(2) governs pleading standards and requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8 does not require "detailed factual allegations," "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Thus, a court need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice to defeat a Rule 12(b)(6) motion to dismiss.  *Id*. In fact, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  Once the court has identified the well-pleaded allegations, it should view each allegation in the context of the entire complaint to determine whether a plaintiff has alleged sufficient facts to support his or her claim.  *See In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 782 (N.D. Ohio 2011).

Considering only those well-pleaded facts, a complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550

U.S. at 556).  A plaintiff's factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Twombly*, 550 U.S. at 556.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the court should dismiss the complaint.  *Iqbal*, 556 U.S. at 679.

Claims of fraud are subject to heightened pleading requirements.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, or other conditions of a person's mind may be alleged generally.").  To satisfy Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010).  The rule requires that the circumstances of the fraud, and not the evidence of the case, be pleaded with particularity.  *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 n.9 (6th Cir. 1988).  Rule 9(b) may be relaxed when there has been a lack of discovery and the information needed for a plaintiff to achieve particularity is held exclusively by the opposing party—in other words, Rule 9(b) does not require a plaintiff to be omniscient.  *Id*.  The main purpose behind Rule 9(b) is to provide the defendant with notice of the plaintiff's claim so that the defendant may prepare an informed responsive pleading.  *Id*. at 679; *Coffey v. Foamex, L.P.*, 2 F.3d 157, 162 (6th Cir. 1993).

In interpreting federal law, a transferee court in a multidistrict case should look to the law of its own circuit rather than the law of the transferor courts' circuits.  *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 323 F. Supp. 2d 861, 876–77 (S.D. Ohio 2004) (citing *In re Korean Air*

6

*Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171, 1176 (D.C. Cir. 1987)); *In re: Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 00-1898, 2005 WL 106936, at *5 (S.D.N.Y. Jan. 18, 2005). Thus, although the parties have cited cases from various circuits discussing Rule 9(b)'s heightened pleading requirements, the Court will analyze federal procedural law in accordance with Sixth Circuit precedent.

The Court must decide substantive questions of state law "in accordance with the controlling decisions of the highest court of the state." *Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). If the state's highest court has not decided the issue, the Court must predict how that court would resolve it by considering decisions of the state's lower courts, other federal courts construing state law, secondary sources, and applicable dicta of the state's highest court. *Id.*; *see also Welsh v. Wachovia Corp.*, 191 F. App'x 345, 355–56 (6th Cir. 2006). A court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. *West v. Am. Tel. & Tel. Co*., 311 U.S. 223, 237 (1940) (stating that, when an intermediate appellate state court "rests its considered judgment upon the rule of law which it announces," such a rule is "datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise"); *Meridian Mut. Ins. Co.*, 197 F.3d at 1181.

### III. Facts

#### A. Four-Year/50,000 Mile Warranty

PCNA attached to its motion to dismiss four written "Warranty and Customer

Information" packets from the years 2003–2006 ("Warranties") that Plaintiffs did not attach to

their Complaint. Each Warranty provides the following coverage:

> [PCNA] will repair or replace with a new or remanufactured part distributed by
> [PCNA], at its sole option, any factory-installed part that is defective in material or
> workmanship under normal use. (Normal vehicle use is described in this Booklet.)
> Warranty repairs will be made free of charge for parts and labor at an authorized
> Porsche automobile dealer . . . .

(ECF No. 62-1, at 7; 62-3, at 7; 62-5, at 6; 62-7, at 7.)

Warranty coverage lasts for "four years, or 50,000 miles, whichever comes first"

("Warranty Period"). (*Id*.) The Warranties also state that "[a]ny implied warranties, including

the implied warranties of merchantability and fitness for a particular purpose, are limited to the

duration of the written warranty." (*Id*.)

The Court will consider the Warranties as part of the Complaint without converting

PCNA's motion to a summary judgement motion. The Sixth Circuit has stated that in ruling on a

Rule 12(b)(6) motion, a court may consider exhibits attached to the defendant's motion to

dismiss if they are referenced in the complaint and are central to the claims contained therein.

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 30 (6th Cir. 2008); *see also Greenberg*

*v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (allowing a defendant to submit and the

court to consider a document that was not attached to the complaint but that was "central to the

plaintiff's claim"). The Complaint references the 2003 Warranty and later states that

"[Defendants] made written and implied warranties regarding its Porsche Cayennes." (ECF No.

35 ¶¶ 218, 247.) Plaintiffs argue that they sufficiently identified the Warranties in their

Complaint. (ECF No. 77, at 28.) Because Plaintiffs refer to the Warranties and because the

Warranties are undoubtedly central to this products liability action, the Court will consider the

Warranties as part of the Complaint.  *See, e.g., Perko v. Ford Motor Co.*, No 10-514, 2011 WL 1769098, at *2 (N.D. Ohio May 9, 2011) (in a product liability action, considering a warranty that the defendants attached to their motion to dismiss as part of the complaint).

### B.  Claims

The Court begins by identifying those well-pleaded facts that are common to all twenty Plaintiffs.  *Iqbal*, 556 U.S. at 679.  Many of the thirty-two claims turn on what PCNA allegedly knew—and what it allegedly represented—and when.  The Court will therefore examine the factual support surrounding these allegations and isolate the well-pleaded facts on which the Court may rely in analyzing Plaintiffs' claims.

One of Plaintiffs' overarching allegations is that PCNA knew or was reckless in not knowing of the alleged defect and that it concealed this knowledge from consumers.  To support this allegation, Plaintiffs allege that PCNA received "many complaints from Cayenne owners and lessees concerning failure of the tubes since the U.S. commercial launch of the Cayenne in 2003," "had access to aggregate data from [their] dealers regarding the coolant tubes," "had access to pre- and post-release testing data," and "had access to complaints made to [them and their] dealers regarding the coolant tubes."  (ECF No. 35 ¶¶ 59, 61.)  Plaintiffs also allege that "most high-end performance vehicles with powerful engines use aluminum pipes to transport the coolant," that "[a]luminum pipes have been proven to withstand the extreme temperatures of the cooling system," and that the "combination of (a) the tube placement relative to the engine and (b) use of plastic composite material to carry the coolant[] virtually guarantees that the plastic coolant tubes [PCNA] used in [its] Cayennes will prematurely fracture and fail."  (*Id*. ¶¶ 46, 53.)

The Court finds that these factual allegations are sufficient to assume that PCNA had

knowledge of the alleged coolant tube defect at all times relevant.  PCNA argues that Plaintiffs

fail to allege "which defendant knew of the supposed defect, when each learned of it, or how

each responded" and "when the decision to conceal the defect was made, who made it, where it

occurred, and where it was implemented." (ECF No. 62, at 31; No. 91, at 51.)  But Rule 9(b)

provides that "knowledge[] and other conditions of a person's mind may be alleged generally."

Fed. R. Civ. P. 9(b).  Furthermore, Plaintiffs allege that *both* PCNA and Porsche AG played a

role in manufacturing, marketing, and selling the vehicles and that, at the time the vehicles were

manufactured and warranted, both PCNA and Porsche AG knew or should have known of the

defect due to the mechanics of the design and pre-release testing data.  (ECF No. 35 ¶¶ 33–34.)

Plaintiffs allege that PCNA received complaints, dealer inquiries, and post-release testing data

that would have further informed them of the defect.  In 2008, PCNA allegedly issued a

technical bulletin confirming this knowledge.  The Court finds that these facts are sufficient to

provide PCNA fair notice of the allegation that it knew of the alleged defect at all times relevant.

*See Michaels Bldg. Co.*, 848 F.2d at 680.  The specific "when the decision to conceal the defect

was made, who made it, where it occurred, and where it was implemented" are facts that, if they

exist, are likely within PCNA's control and are best addressed after the close of discovery.  *See*

*id.*  The Court will therefore assume, for purposes of this analysis, that PCNA knew of the

alleged defect at the time it sold the vehicles.  Whether this knowledge is actionable will depend

on the law underlying the thirty-two claims for relief.

The Court next examines Plaintiffs' allegations regarding affirmative misrepresentations.

Plaintiffs provide seven specific statements that Defendants allegedly made "in [their] brochures

and other marketing material" regarding the Cayenne's cooling system. (ECF No. 35 ¶ 62.)[2] The Court will assume for purposes of this motion that Defendants made these statements; however, Plaintiffs' claim that these specific representations "had the likely effect of misleading the public, including Plaintiffs and the other members of the Class" is a conclusory statement that is not entitled to a presumption of truth. *See Twombly*, 550 U.S. at 555. Plaintiffs do not identify which Defendant made the alleged statements or the time or place at which the statements were made. Nor do Plaintiffs allege the time or place at which the marketing materials containing said statements were distributed or made available. Without more, Plaintiffs fail to plead the circumstances surrounding PCNA's affirmative misrepresentations with the particularity that Rule 9(b) requires. *See Bennett*, 607 F.3d at 1100; *see also Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012) (finding that the plaintiff failed to satisfy

---

[2]PCNA allegedly misrepresented that:
(a) The Cayenne includes "a cooling system perfected in the deserts of Dubai;"
(b) "In the V8 on the Cayenne Turbo and Cayenne S, we've used a special coolant management system offering effective control of operating temperatures throughout every part of the engine;"
(c) "The entire cooling system is specifically designed for prolonged heavy-duty operation;"
(d) "Every technical detail has been examined and optimized to ensure that the Cayenne Turbo reaches benchmark levels of SUV performance;"
(e) "The cooling system is extremely robust;"
(f) "The Cayenne Turbo engine is among the most advanced internal combustion engines ever produced by Porsche [and that] this mechanical symphony integrates a
list of technical features that is a culmination of everything our engineers have learned about watercooled V8 engines and turbo technology over the past four decades;"
(g) "The Cayenne V8 engine's cooling system helps to maximize performance in every respect [and that] the strategy for achieving these objectives is nothing if not thorough."
(ECF No. 35 ¶ 62.)

11

Rule 9(b) where his allegation "omit[ted] entirely the time and place of the alleged statements" and referred only to "defendants" despite the fact that there were several defendants in the case); *Culy Constr. & Excavating, Inc. v. Laney Directional Drilling Co.*, No. 2:12-cv-4, 2012 WL 2071804, at *6–7 (S.D. Ohio June 8, 2012).

Against this backdrop, the Court considers Plaintiffs' claims.

## IV.  Discussion

### A.  NATIONWIDE CLASS

Plaintiffs bring their first claim for relief on behalf of a purported nationwide class, defined as all current and former owners or lessees of a 2003–2010 model year Cayenne.  On behalf of this class, Plaintiffs allege that PCNA violated the Magnuson-Moss Federal Warranty Act ("Magnuson-Moss" or "Act"), 15 U.S.C. § 2301 *et seq*., and that Plaintiffs sustained damages as a result.  PCNA moves to dismiss this claim in its entirety.

*Count One: Magnuson-Moss Act*

Magnuson-Moss provides a civil claim for relief for consumers who are damaged by a supplier or warrantor's failure to comply with its obligations under a written or implied warranty or under the Act in issuing such a warranty.  15 U.S.C. § 2301(d)(1).  In order to state a claim under the Act, a plaintiff must demonstrate that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts.  *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005).

*1.  Written Warranty*

Plaintiffs appear to concede that no individual plaintiff has a valid claim for breach of express warranty.  PCNA asserts, and the Complaint corroborates, that "no plaintiff claims to have had any problems with his or her coolant pipes until after the applicable warranty term expired."  (ECF No. 62, at 12.)  Plaintiffs do not contest this assertion.  Without more, Plaintiffs fail to allege an actionable breach of express warranty claim.  They therefore cannot advance a Magnuson-Moss claim premised on this theory.  *Temple*, 136 F. App'x at 268.

Similarly unsuccessful is Plaintiffs' attempt to "reserve their express warranty claims under Magnuson-Moss for those [currently unnamed] class members whose express warranties may have not yet expired."  (ECF No. 77, at 28.)  Plaintiffs offer no authority that would allow them to "reserve" such claims and the Court is not aware of any such authority.  The Sixth Circuit has stated that "[i]f it is found, prior to class certification, that the named plaintiffs' individual claims are without merit, then dismissal is proper."  *J&R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 390 (6th Cir. 2008).  *See also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").  Because Plaintiffs fail to state a claim for breach of express warranty, their Magnuson-Moss claim based on this theory must be dismissed.

The Court **GRANTS** PCNA's motion to dismiss Plaintiffs' Magnuson-Moss claim to the extent that it is premised on an alleged breach of express warranty.

### 2.  *Implied Warranty*

Plaintiffs note in their memorandum in opposition that only Colorado, Michigan, New Jersey, Texas, Georgia, and Ohio Plaintiffs are "raising claims" under the Act's implied warranty

provisions. (ECF No. 77, at 32.) California, Florida, New York, and Washington Plaintiffs are therefore excluded from the nationwide class's Magnuson-Moss claim. To the extent that these Plaintiffs are asserting Magnuson-Moss claims as part of the nationwide class, the Court dismisses their claims as they relate to PCNA. *See J&R Mktg.*, 549 F.3d at 390. The Court **GRANTS** PCNA's motion to dismiss California, Florida, New York, and Washington Plaintiffs' Magnuson-Moss claims in their entirety.

The remaining Plaintiffs allege that PCNA failed to comply with its implied warranties in violation of Magnuson-Moss. The Act defines "implied warranty" as "an implied warranty arising under State law (as modified by sections 108 and 104(a) [15 U.S.C. §§ 2308 and 2304(a)]) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). Courts have uniformly held that Congress intended the Act's implied warranty provisions to be interpreted in accordance with the relevant state's law, except as expressly modified by the Act. *See Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1013–14 (D.C. Cir. 1986). The Court must therefore determine whether Plaintiffs state a claim for breach of implied warranty under the laws of Ohio, Georgia, New Jersey, Colorado, Michigan, and Texas in order to determine which Plaintiffs are included in the nationwide class.

PCNA offers three arguments as to why this Court should dismiss Plaintiffs' Magnuson-Moss claim. First, PCNA argues that the Act does not supplant state privity requirements and that Georgia and Ohio Plaintiffs' claims fail for lack of privity. Second, PCNA argues that the Warranties effectively limit the duration of all implied warranties to the duration of the Warranty Period (four-years/50,000 miles), which had expired by the time the alleged defect manifested in each Plaintiff's vehicle. Finally, PCNA argues that Plaintiffs are precluded from bringing their

Magnuson-Moss claims because they failed to provide PCNA with an opportunity to cure the defect. The Court will consider each of these arguments in turn.

### a. State Privity Requirements – Georgia and Ohio

It is well settled that Magnuson-Moss does not supplant state law privity requirements. *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249–51 (2d Cir. 1986); *see also Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 810 (11th Cir. 2005) (citing *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003); *Abraham*, 795 F.2d at 249). The Court therefore looks to Georgia and Ohio state law to determine whether Georgia and Ohio Plaintiffs may advance implied warranty claims under the Act as part of the nationwide class.

For the reasons set forth in Section IV(E) of this Opinion and Order (Count Eleven), the Court finds that Georgia Plaintiff fails to meet the privity requirements that are necessary to sustain an implied warranty of merchantability claim under Georgia law. *See infra* Section IV(E) (Count Eleven). Georgia Plaintiff therefore fails to state an implied warranty claim under Magnuson-Moss. *See Temple*, 136 F. App'x at 268.

The Court similarly finds that Ohio Plaintiffs fail to satisfy Ohio's privity requirements for a breach of implied warranty claim under Magnuson-Moss. Although Ohio courts recognize two forms of implied warranty claims—implied warranty in tort and implied warranty of merchantability (contract)—only the latter can form the basis of a Magnuson-Moss claim. *See Curl v. Volkswagen of Am., Inc.*, 114 Ohio St. 3d 226, 2007-Ohio-3609, 871 N.E.2d 1141, ¶ 28. Ohio Plaintiffs concede that they cannot advance an implied warranty of merchantability claim because they are not in privity with PCNA. Ohio Plaintiffs therefore fail to state a Magnuson-Moss claim.

15

Ohio Plaintiffs' argument that their Magnuson-Moss claim survives based on their implied warranty in tort claim—which does not require privity—is without merit. In *Curl*, the Ohio Supreme Court confronted the following question: does Ohio law require that the parties be in privity of contract in order for a plaintiff to state a claim for breach of implied warranty under Magnuson-Moss? *Curl*, 114 Ohio St. 3d ¶ 1. The court unequivocally answered yes. *Id.* ¶ 28. The court reasoned that privity requirements for contractual claims, such as those arising under the Uniform Commercial Code ("UCC") and Magnuson-Moss, allow sellers of goods to define the scope of their responsibility and provide a greater degree of foreseeability regarding potential claimants. *Id.* ¶ 26. The court also cited *Walsh v. Ford Motor Co.*, which provides that "Magnuson-Moss is strictly a warranty statute based in contract law" and that "[i]t is plain to the Court that where a State permits warranty claims that are based on either tort or contract law, the Court must look exclusively to contract law to determine whether privity is required." 588 F. Supp. 1513, 1527 (D.D.C. 1984). The *Curl* court implicitly reached this same conclusion. *See* 114 Ohio St. 3d ¶ 28. Ohio Plaintiffs' implied warranty in tort claim cannot form the basis of their Magnuson-Moss claim.

The Court finds that Ohio and Georgia Plaintiffs fail to state a claim for breach of implied warranty under Magnuson-Moss. These Plaintiffs are therefore excluded from the nationwide class's Magnuson-Moss claim. Accordingly, the Court **GRANTS** PCNA's motion to dismiss Georgia and Ohio Plaintiffs' Magnuson-Moss claims in their entirety.

> *b. Durational Limitation – Colorado, Michigan, New Jersey, and Texas*

The Court now considers the remaining Plaintiffs' allegations. Colorado, Michigan, New Jersey, and Texas have each adopted the UCC's implied warranty provisions. In each state, a

seller warrants that its goods shall be merchantable in every contract for the sale of those goods, subject to certain restrictions.  UCC § 2-314 (2011).[3]  Magnuson-Moss provides that a seller/warrantor may limit the duration of this implied warranty "to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty."  15 U.S.C. § 2308(b).

It is undisputed that the Warranties purport to limit the duration of all implied warranties to a period of four-years/50,000 miles and that this period had expired by the time the alleged defect manifested in each Plaintiff's vehicle.  The parties dispute whether this durational limitation is enforceable under the Act.  Plaintiffs argue that the Warranties' limitation is unenforceable because it is unconscionable and because it is not conspicuous.  The Court finds that Plaintiffs have sufficiently alleged facts to suggest that the limitation is unconscionable; thus, it does not consider the parties' arguments regarding conspicuousness.

As an initial matter, PCNA argues that the Court should refuse to consider the unconscionability arguments of Colorado, Michigan, and Texas Plaintiffs because these plaintiffs do not mention the word "unconscionable" in asserting their specific claims for relief.[4]

---

[3]Section 2-314 of the UCC states (in relevant part): "Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  UCC § 2-314.  *See* Col. Rev. Stat. § 4-2-314 (adopting UCC § 2-314 as Colorado law); Mich. Comp. Laws § 440.2314 (adopting UCC § 2-314 as Michigan law); N.J. Stat. Ann. § 12A:2-314 (adopting UCC § 2-314 as New Jersey law); Tex. Bus. & Com. Code Ann. § 2.314 (adopting UCC § 2-314 as Texas law).

[4]Each state's plaintiffs asserted independent claims in the context of one omnibus Complaint; Plaintiffs expressly incorporated the preceding paragraphs of the Complaint into each independent claim for relief.  (ECF No. 35.)  The Complaint also includes a section that sets

The Court rejects this argument for two reasons.  First, the relevant question for this Court is whether Plaintiffs have alleged sufficient facts in support of their unconscionability argument, not whether they have specifically alleged certain terms.  *See, e.g., Alban v. BMW of N. Am., LLC,* No. 09-5398, 2011 WL 900114, at *8–9 (D.N.J. Mar. 15, 2011) ("*Alban II*") (dismissing a plaintiff's implied warranty claim premised on unconscionability when she failed to plead facts in support of her unconscionability allegations); *see also Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 680–81 (6th Cir. 2008) (stating that courts should not "elevate form over substance" in deciding a motion to dismiss; the complaint need only put the defendant on notice of the claim).

Second, PCNA had adequate notice that Plaintiffs were challenging the Warranties' durational limitation on this ground.  New Jersey Plaintiffs specifically alleged that any limitation or negation of the implied warranty, including any time limitation, is unconscionable and unenforceable.  *See In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d at 782 (stating that a court should view each allegation in the context of the entire complaint); *cf. In re Onstar Contract Litig.*, 600 F. Supp. 2d 861, 879 (E.D. Mich. 2009) (dismissing claim for breach of express warranty over an "unconscionability" challenge when the complaint "contain[ed] no allegations whatsoever that the express written warranties . . . are unconscionable").  PCNA also referenced unconscionability in its motion and argued that the Warranties' durational limitation was enforceable and not unconscionable; thus, PCNA cannot now argue that this claim was a surprise.  The Court will consider Colorado, Michigan, Texas, and New Jersey Plaintiffs' substantive arguments regarding unconscionability.

Federal courts look to substantive state law in determining whether a durational

---

forth the factual allegations common to all Plaintiffs.

limitation on an implied warranty is unconscionable.  *See, e.g., Alban v. BMW of N. Am., LLC*,

No 09-5398, 2010 WL 3636253, at *8 (D.N.J. Sept. 8, 2010) ("*Alban I*").  PCNA does not offer

arguments specific to each state; instead, it argues that the Warranties' durational limitation is

not unconscionable under New Jersey law and that there are no meaningful distinctions between

New Jersey law and the laws of the other states.

In New Jersey, courts look to the circumstances surrounding the formation of a contract

to determine whether procedural or substantive unconscionability exists.  *Sitogum Holdings, Inc.*

*v. Ropes*, 800 A.2d 915, 921 (N.J. Super. Ct. 2002).  Facts suggesting that the bargaining process

was fundamentally unfair or that the resulting contractual provision is "so one-sided as to shock

the court's conscience" would support a finding of unconscionability.  *Id.*; *see also Carlson v.*

*Gen. Motors Corp.*, 883 F.2d 287, 294–97 (4th Cir. 1989).

The fact that a manufacturer had knowledge of a defect at the time it issued a warranty

does not make a time/mileage limitation on an implied warranty unconscionable.  *Henderson v.*

*Volvo Cars N. Am. LLC*, No. 09-4146, 2010 U.S. Dist LEXIS 73624, at *26 (D.N.J. July 21,

2010).  Such knowledge is, however, relevant in determining whether the bargaining process was

fundamentally fair.  *Carlson*, 883 F.2d at 294–97.  In other words, although a manufacturer's

knowledge of a defect will not invalidate a durational limitation, the relevant question in the

unconscionability context is whether one party abused its superior knowledge and the opposing

party's relative ignorance so as to create an exchange of obligations that is substantively

unconscionable.  *Id.* at 296.

The *Carlson* court provided several examples of facts that would support a finding of

unconscionability.[5]  For example, when a manufacturer is aware that its product is inherently defective *and* the buyer has no notice of or ability to detect the problem, "there is perforce a substantial disparity in the parties' relative bargaining power."  *Id.  See also Henderson*, 2010 U.S. Dist. LEXIS 73624, at *26 n.6 (finding that the plaintiff's allegation that a "gross disparity in bargaining power" existed between the parties was sufficient to support a finding of unconscionability at the motion to dismiss stage).  The fact that a defect is likely to substantially limit the product's intended use only amplifies this disparity.  *See id.* at 294 (finding it "most significant" that the plaintiffs alleged that the defendant knew of but concealed from consumers the fact that an inherent defect could cause "catastrophic failures").  Similarly, facts suggesting that the stronger party knew that the weaker party would be unable to receive substantial benefit from the contract invokes both procedural and substantive unconscionability.  *See id.* at 296; *Sitogum Holdings*, 800 A.2d at 921.  The *Carlson* court considered other allegations such as the "lack of effective warranty competition among dominant firms in the automobile manufacturing industry" but suggested that the contracting parties' knowledge disparity was perhaps the "most significant" factor in its unconscionability analysis.  *Carlson*, 883 F.2d at 294.

The question for this Court is not whether the Warranties' durational limitation is unconscionable as a matter of law, but whether Plaintiffs have alleged sufficient facts to state a

---

[5]The Court notes that *Carlson* is still good law despite the fact that it preceded *Twombly* and *Iqbal*.  In *Alban II*, the court questioned *Carlson*'s persuasive value because the *Carlson* court stated, in denying the defendant's motion to dismiss, that " 'unconscionability should but rarely be determined on the bare bones pleadings.' "  2011 WL 900114, at *8 (citing *Carlson*, 883 F.2d at 292).  *Alban II* does not cast doubt upon the general principles underlying the doctrine of unconscionability that the *Carlson* court espoused.  If a plaintiff can set forth facts sufficient to support his or her allegations of unconscionability, the claim will survive a motion to dismiss.

*prima facie* case of unconscionability. *See, e.g., id.* at 293–94.[6] Plaintiffs have made such a showing in this case.

Necessarily viewing the Complaint in its entirety and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs (and Colorado, Michigan, Texas, and New Jersey Plaintiffs by incorporation) allege facts suggesting that PCNA knew that the Cayenne's coolant system was inherently defective and that purchasers would bear the cost of correcting that defect. *See supra* Section III(B). PCNA allegedly knew that, in order to keep the vehicle in use after the Warranty Period, consumers would be required to purchase a part that is significantly more expensive than the part with which the Cayenne was originally equipped. Plaintiffs also allege facts suggesting that the defect could substantially damage other parts of the engine and/or render the vehicle inoperable. Finally, Plaintiffs allege facts suggesting that PCNA did not disclose this information to purchasers, that purchasers could not have seen the defect given the design and placement of the coolant tubes in the vehicle, and that such information would have altered each individual plaintiff's buying decisions.

These facts are sufficient to suggest that there existed a "substantial disparity in the parties' relative bargaining power" in this case such that Plaintiffs were unable to receive a substantial benefit from the Warranties' four-year/50,000 mile implied warranty coverage. *See Carlson*, 883 F.2d at 294; *cf. Alban*, 2011 WL 900114, at *8 (rejecting the plaintiff's argument

---

[6]The UCC expressly requires that courts not make substantive findings of unconscionability at the motion to dismiss stage. *See* UCC § 2-302(2) ("When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."). Parties must, however, allege sufficient facts to invoke this provision. *See Carlson*, 883 F.2d at 293–94; *Alban II*, 2011 WL 900114, at *8.

that a durational limitation on an implied warranty was unconscionable because plaintiff failed to plead facts supporting his assertions that he had "no meaningful choice" in the bargaining process and that a "gross disparity in bargaining power existed").  Plaintiffs have sufficiently alleged facts suggesting that both procedural and substantive unconscionability exist in this case so as to defeat the motion to dismiss.

The Court notes that this holding does not contradict the Second Circuit's decision in *Abraham v. Volkswagen of America, Inc.*, on which PCNA relies throughout its motion.  795 F.2d at 249–51.  The *Abraham* court held that a plaintiff could not pursue a claim for breach of express warranty after the warranty period had expired by alleging that the manufacturer had knowledge of a defect at the time it issued the warranty.  *Id*. at 249–50.  The court stated:

> Moreover, virtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

*Id*. at 250.

The *Carlson* court distinguished the express warranty context in which this language arose from the implied warranty context.  *See* 883 F.2d at 294–97.  The *Carlson* court reasoned that the *Abraham* court was called upon to decide the reasonableness of an express warranty's temporal limitation, which is an objective analysis based on a reasonable consumer's expectations.  *Carlson*, 883 F.2d at 295.  The manufacturer's subjective knowledge is therefore

not relevant in the express warranty context.  *Id*.  Unlike temporal limitations on express warranties, however, temporal limitations on implied warranties must not only be reasonable but also conscionable.  15 U.S.C. § 2308 ("[I]mplied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable . . . .").  Unconscionability is a "broader question" than reasonableness and implicates the parties' subjective knowledge in the bargaining process.  *Carlson*, 883 F.2d at 295.  This Court's holding is therefore consistent with both *Carlson* and *Abraham*.

The Court finds that Colorado, Michigan, Texas, and New Jersey Plaintiffs have alleged sufficient facts to support the inference that the Warranties' durational limitation on all implied warranties was unconscionable.  Thus, for purposes of this motion, the Court assumes that the implied warranty of merchantability had not expired at the time the alleged defect manifested in Colorado, Michigan, Texas, and New Jersey Plaintiffs' vehicles.  PCNA offers no additional arguments regarding these Plaintiffs' implied warranty claims.  The Court finds that Colorado, Michigan, Texas, and New Jersey Plaintiffs state a claim for breach of the implied warranty of merchantability under the law of their respective states, as modified by Magnuson-Moss.

### c.  Opportunity to Cure

To prevail on a Magnuson-Moss claim, a plaintiff must demonstrate not only that a product failed to live up to its written or implied warranties, but also that the seller had an "opportunity to cure" the alleged defect and failed to do so.  *Temple*, 133 F. App'x at 268; 15 U.S.C. § 2310(e).  PCNA argues that the opportunity to cure requirement is a condition precedent to filing suit and that, because Plaintiffs failed to provide PCNA with an opportunity to cure before they filed their Complaint, dismissal of their Magnuson-Moss claim is proper.

23

PCNA's argument is not well taken.

Section 2310(e) sets forth the Act's opportunity to cure requirement.  Under Section

2310(e):

> No action (*other than a class action* or an action respecting a warranty to which subsection (a)(3) applies) may be brought under subsection (d) for failure to comply with any obligation under any written or implied warranty or service contract, *and a class of consumers may not proceed in a class action under such subsection with respect to such a failure except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs*, unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply. In the case of such a class action . . . brought under subsection (d) for breach of any written or implied warranty or service contract, such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class.  In the case of such a class action which is brought in a district court of the United States, *the representative capacity of the named plaintiffs shall be established in the application of rule 23 of the Federal Rules of Civil Procedure*.

15 U.S.C. § 2310(e) (emphasis added).

The plain language of the statute imposes different requirements on individual plaintiffs and class action plaintiffs regarding the time at which they must satisfy the opportunity to cure requirement.  *See id.*  For individual plaintiffs, Section 2310(e) is a condition precedent to filing suit unless the warrantor establishes an informal dispute settlement procedure pursuant to Section 2310(a)(3).  *See id.*  In contrast, plaintiffs bringing a class action may file suit before the defendant is afforded an opportunity to cure for the limited purpose of establishing the representative capacity of the named plaintiffs.  *See id.*  Once a court makes this determination, but before the class action can proceed, the defendant must be afforded an opportunity to cure the alleged breach of warranty and the named plaintiffs must at that point inform the defendant that they are acting on behalf of a class.  *See id.*; *see also Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1004 (D.C. Cir. 1986) (interpreting the plain language of Section 2310(e) as indicating that

24

"a plaintiff may file a class action, but may not proceed with that action, until she has afforded the defendant a reasonable opportunity to cure its alleged breach"); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. MDL-1703, 2012 WL 1015806, at *5 (N.D. Ill. Mar. 22, 2012) ("[T]he statute allows a Magnuson-Moss class action to be brought before the defendant is given an opportunity to cure (only to the point of establishing the named plaintiffs' representative capacity) . . . .").

PCNA cites cases in which courts have dismissed class action Magnuson-Moss claims because the plaintiff failed to satisfy Section 2310(e) prior to filing suit, but this result contradicts the plain language of the statute. To hold that no class action "may be brought . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure" would read the "other than a class action" language out of the statute and would nullify the phrase that "a class of consumers may not *proceed* in a class action . . . except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs." 15 U.S.C. § 2310(e). The only way to reconcile the latter clause with the rest of the statute is to read Section 2310(e) as standing for the proposition that a class action may be brought, but may not proceed once the court determines the representative capacity of the named plaintiffs, until the defendant is provided with an opportunity to cure the alleged defect. *See id.* If a class action  may not be brought unless a defendant first is afforded an opportunity to cure the alleged breach, then the phrase "a class of consumer may not proceed in a class action" would not make sense. There would be nothing to proceed with because no case would have been brought.

The courts that interpreted Section 2310(e) to dismiss a plaintiff's class action claim at

the pleadings stage failed to account for this language in the statute.  In *Bearden v. Honeywell*,

for example, the court dismissed a plaintiff's putative class action because she failed to notify the

defendant that she was acting on behalf of a class prior to filing her claim.  720 F. Supp. 2d 932,

936 (M.D. Tenn. 2010) (citing *Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL

4723366, at *10 (N.D. Cal. Dec. 4, 2009)).  *See also Rehberger v. Honeywell Int'l, Inc*., No.

3:11-0085, 2011 WL 780681, at *11 (M.D. Tenn. Feb. 28, 2011) (citing *Bearden* and dismissing

a class action Magnuson-Moss claim because the plaintiff failed to provide the defendant with an

opportunity to cure prior to filing suit).  In so holding, however, the *Bearden* court omitted the

phrase "other than a class action " from its quotation of Section 2310(e) and stated, with no

apparent analysis, that class actions are subject to the same "no action . . . may be brought"

language that applies to claims brought by individual plaintiffs.  720 F. Supp. 2d at 936.  The

*Stearns* and *Rehberger* courts similarly dismissed class action claims under Section 2310(e)

without acknowledging the language in the statute that removes class actions from the

requirement that "no action . . . may be brought" until the defendant is afforded an opportunity to

cure.  *See Stearns*, 2009 WL 4723366, at *10; *Rehberger*, 2011 WL 780681, at *11; 15 U.S.C. §

2310(e).

     The Court finds that Section 2310(e) does not mandate dismissal of Plaintiffs' class

action claim at this stage of the litigation.  Thus, the Court does not consider the parties'

arguments regarding PCNA's alleged knowledge of the defect as an appropriate substitute for

notice under Section 2310(e).  The Court **DENIES** PCNA's motion to dismiss Count One of

Plaintiffs' Complaint to the extent that it is comprised of Colorado, Michigan, Texas, and New

Jersey Plaintiffs' claims for breach of implied warranty of merchantability under Magnuson-

Moss.

The Court **GRANTS IN PART** and **DENIES IN PART** PCNA's motion to dismiss Count One of Plaintiff's Complaint.

## B. CALIFORNIA

California Plaintiffs Bob Conrad, David Graas, Sean Krider, and Sy Duc Tran each purchased Cayennes that came equipped with plastic coolant tubes. Plaintiffs Conrad and Tran purchased their vehicles new from Porsche dealerships, and Plaintiffs Graas and Krider purchased used Cayennes from unidentified sellers. All four California Plaintiffs experienced problems with their coolant tubes, and each paid to install aluminum coolant pipes in their vehicles. California Plaintiffs do not claim that these problems began while any of their vehicles were under warranty.

California Plaintiffs bring claims under California's Consumer Legal Remedies Act, Cal. Civil Code § 1750 *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, and for unjust enrichment. PCNA moves to dismiss each claim.

*Count Two: California's Consumer Legal Remedies Act*

California Plaintiffs allege that PCNA violated the California Consumer Legal Remedies Act ("CLRA") by failing to disclose and/or concealing from consumers the material fact that the Cayenne's plastic coolant tubes were defective and would likely fail before the life of the engine. California Plaintiffs allege that these facts were material because reasonable consumers, had they known of the defect, would not have purchased the Cayenne or would have insisted on paying less for it. California Plaintiffs seek injunctive relief, actual and punitive damages, and attorney's fees and costs under the CLRA.

27

The CLRA serves to "protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code. § 1760. Plaintiffs invoke sections five and seven of the CLRA, which proscribe:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> . . .
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

*Id*. § 1770(a)(5) & (7).

Omissions are actionable under sections 1770(a)(5) and 1170(a)(7) of the CLRA where (1) the omission is contrary to a defendant's express representation or (2) the defendant failed to disclose or concealed a fact that it had a duty to disclose. *See Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 126 (Ct. App. 2006). In *Daugherty*, a California court of appeals found that an automobile manufacturer had no duty to disclose a defective oil seal that would manifest and require repairs after the vehicles' warranties expired. *Id*. at 837. The court found that the manufacturer's silence was not contrary to any of its affirmative representations and that the plaintiff had failed to allege facts suggesting that the defect constituted a safety risk. *Id*. at 835–37. *See also Bardin v. DaimlerChrysler Corp.* 39 Cal. Rptr. 3d 634, 648–49 (Ct. App. 2006) (dismissing the plaintiff's CLRA claim because the manufacturer had no duty to disclose the fact that it used steel in its vehicles' exhaust manifolds instead of the more durable and expensive cast iron). The court therefore affirmed the trial court's dismissal of the plaintiff's CLRA claim. *Daugherty*, 51 Cal. Rptr. 3d at 128.

28

Courts have since cited *Daugherty* for the proposition that a manufacturer has no duty to inform consumers of defects that will manifest outside the warranty period unless the manufacturer has affirmatively misrepresented the defective nature of the product or the defect poses a safety risk to consumers. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141–43 (9th Cir. 2012); *Oesteicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009). Presumably, because a consumer expects that a manufacturer will guarantee its product against unreasonable safety risks, both within and outside the warranty period, a manufacturer's failure to disclose such risks is misleading and therefore actionable under the CLRA. *See, e.g., Decker v. Mazda Motor of Am., Inc.*, No. SACV 11-0873, 2011 WL 5101705, at *4 (C.D. Cal. Oct. 24, 2011); *see also Daugherty*, 51 Cal. Rptr. 3d at 127.

A defect that poses an objective, identifiable safety risk to consumers will trigger a duty to disclose under the CLRA. *See, e.g.*, *Chlolakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1236–37 (C.D. Cal. 2011); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 989 (N.D. Cal. 2010), *aff'd*, No. 10-17321, 2011 WL 6322200 (9th Cir. Dec. 19, 2011).  California courts have found that defects in automobiles that could cause sudden or unexpected engine failure while driving pose such a risk. *See*, *e.g*., *Chlolakyan*, 796 F. Supp. 2d at 1236–37.  In *Cholakyan*, the plaintiffs alleged that a defect caused water to enter the driver/front passenger foot well in their vehicles, potentially causing electrical faults due to water in the control units. *Id*. at 1236.  The court found that plaintiffs had adequately pleaded a safety issue because they alleged that the defect could cause "sudden and unexpected engine failure" while driving. *See id*. *See also Smith*, 749 F. Supp. 2d at 990 (suggesting that "evidence that the [defect] causes engines to shut off unexpectedly or causes individuals to stop their vehicles under dangerous conditions" would

29

trigger a duty to disclose under the CLRA); *Eisen v. Porsche Cars N. Am.*, No. CV 11-9405, 2012 WL 841019, at *5 (C.D. Cal. Feb. 22, 2012) (finding that plaintiff did not plead a safety concern because he failed to indicate that "failure of the [defective part] somehow impairs steering or other critical vehicle function").  PCNA acknowledges that vehicle defects that could cause "sudden, unexpected engine failure" or related risks would evince a safety concern under the CLRA.  (ECF No. 62, at 41.)

Importantly, the *Cholakyan* court found that the plaintiffs had sufficiently alleged a safety risk despite the fact that the water leak defect had not actually caused sudden engine failure in their vehicles.  796 F. Supp. 2d at 1236–37 (rejecting defendant's argument that "the purported safety defects are speculative in nature, because there is no allegation that [plaintiff] or any other class member ever experienced such a defect"); *see also Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) ("The Court is not persuaded . . . that Plaintiff must plead that consumers have been injured by the alleged unreasonable safety risk.").  The courts in both *Cholakyan* and *Ehrlich* concluded that the plaintiffs had standing to pursue their CLRA claims because they incurred monetary damages in repairing the alleged defects in their vehicles.  *See Cholakyan*, 796 F. Supp. 2d at 1236–37; *Ehrlich*, 801 F. Supp. 2d at 918.  They therefore could invoke *Daugherty*'s safety exception without alleging any safety-related injuries. *See Cholakyan*, 796 F. Supp. 2d at 1236–37; *Ehrlich*, 801 F. Supp. 2d at 918.

Here, Plaintiffs allege that the use of plastic coolant tubes in the Cayenne put consumers at risk of engine failure while operating the vehicle.  Necessarily taking all facts alleged in the Complaint as true, Plaintiffs (and California Plaintiffs by incorporation) allege that "[a]s a result of continuous exposure to extreme heat, plastic coolant tubes crack and leak" (ECF No. 35 ¶ 52);

cracked coolant tubes result in "coolant seeping directly into the vehicle's starter, transmission seals, and other components causing possible engine damage and engine failure" (*id*. ¶ 3); that coolant tube failure renders the vehicle "inoperable" (*id*. ¶ 54) or can "disabl[e] the vehicle" (*id*. ¶ 70); and that "acute failure of the [coolant tubes] can and sometimes does occur while traveling at high speeds on public roadways" (*id*).  These allegations are sufficient to support the inference that the alleged defect can cause engine failure and render the vehicle inoperable while driving, which is sufficient to allege a safety concern under California law.  *See, e.g., Smith*, 749 F. Supp. 2d at 990.  The Court finds that Plaintiffs have pleaded facts sufficient to invoke the second *Daugherty* exception.

PCNA's arguments to the contrary are not persuasive.  PCNA contests Plaintiffs' factual assertions and argues that coolant loss "does not impair a vehicle's operability during the first few minutes after it occurs," pointing specifically to one named plaintiff who drove his vehicle for four miles "without any adverse effect on vehicle operability."  (ECF No. 62, at 42.)  These arguments are not appropriate at the motion to dismiss stage.  Here, the Court must accept that coolant tube failure "renders the vehicle inoperable," possibly while "traveling at high speeds."  (ECF No. 35 ¶¶ 9, 70).  The fact that one of the named plaintiffs did not experience this result does not alter this conclusion.  *See, e.g., Cholakyan*, 796 F. Supp. 2d at 1236–37.

PCNA's argument that Plaintiffs fail to establish a sufficient nexus between the alleged defect and the purported safety risk is similarly unpersuasive.  Plaintiffs describe the layout of the Cayenne's engine and explain how this layout "virtually guarantees" that plastic coolant tubes will fracture.  (ECF No. 35 ¶ 53.)  Plaintiffs also explain how the cracked coolant tubes cause coolant to leak into specific engine components and allege that such a leak disables the

vehicle.  (*Id*. ¶¶ 3, 70.)  These allegations are sufficient to demonstrate a causal connection at this

stage of the litigation.  *See, e.g., Cholakyan*, 796 F. Supp. 2d at 1236–37 (finding that an alleged

water leak defect that caused "electrical faults" in some cases could plausibly give rise to the

alleged safety concern of "sudden an unexpected engine failure"); *Marisikian v. Mercedes Benz*

*USA, LLC*, No. CV 08-04876, 2009 WL 8379784, at *6–7 (C.D. Cal. May 4, 2009) (denying

motion to dismiss a CLRA claim where the plaintiff alleged that air intake systems were

"susceptible to clogging" and the defect could lead to "substantial electrical failure" because "it

is not implausible that the [clogging] would cause catastrophic engine and electrical system

failure while the car is on the road" (internal citations omitted)).  *Cf. Wilson*, 668 F.3d at 144

(holding that, where an alleged computer defect weakened the power connection between the

power jack and the motherboard, resulting in a loss of power to the computer, the plaintiff failed

to demonstrate how the alleged defect caused the computer to "ignite" and pose a safety

concern); *Eisen*, 2012 WL 841019, at *3 (finding that a plaintiff failed to allege a safety defect

with particularity when he alleged only that the engine shaft in his vehicle "failed" but did not

explain "how the shaft fails and how that failure affects the vehicle").

　　　　As a final note, the Court agrees with PCNA's argument that the risk of being stranded is

too speculative to establish a safety concern as a matter of law.  *Smith*, 749 F. Supp. 2d at 991

(where an alleged ignition lock defect prevented drivers from starting their engines, leaving them

"unexpectedly stranded," the alleged risks were "speculative in nature, deriving in each instance

from the particular location at which the driver initially has parked the vehicle and/or the driver's

individual circumstances."); *Smith*, 2011 WL 632200, at *1; *Eisen*, 2012 WL 841019, at *5

(citing the Ninth Circuit's decision in *Smith* and holding that an engine defect that could leave

drivers stranded on the road, "susceptible to being hit by another vehicle," was too speculative to constitute a safety concern as a matter of law).[7]  As such, the individual experience of California Plaintiff Graas, whose coolant tubes failed while traveling and left him "[s]tranded on the side of the highway in the middle of the night," plays no role in the Court's decision that Plaintiffs have adequately pleaded a safety concern.  (ECF No. 77, at 61.)  Considering those objective safety risks that the Cayenne's plastic coolant tubes allegedly pose to consumers, the Court finds that Plaintiffs' safety allegations are sufficient to survive a motion to dismiss.

Plaintiffs have adequately pleaded facts to invoke *Daugherty*'s safety exception.  The Court therefore finds that Plaintiffs have sufficiently alleged that PCNA had a duty under California law to disclose the alleged coolant tube defect to consumers.  PCNA does not argue that it disclosed the alleged defect or that such an omission is not otherwise actionable under the CLRA.  Accordingly, the Court finds that Plaintiffs state a claim for violations of the CLRA and need not consider the parties' arguments regarding the first *Daugherty* exception.  The Court **DENIES** PCNA's motion to dismiss Count Two of Plaintiffs' Complaint.

*Count Three: California's Unfair Business Practices Act*

California's Unfair Competition Law ("UCL") proscribes "any unlawful, unfair or

_____

[7]Given the court's finding in *Eisen* and the plethora of cases on point, Plaintiffs' reliance on *Cabral v. Ralph's Grocery Co.*, 248 P.3d 1170 (Cal. 2011) for the proposition that "simply stopping on the side of the highway is unsafe" is misplaced.  (ECF No. 77, at 61.)  In *Cabral*, a wrongful death case, the court confronted the issue of "whether a freeway driver owes other drivers a duty of ordinary care in choosing whether, where and how to stop on the side of the road."  *Id*. at 1176.  The court differentiated between freeways and "urban, suburban and rural roads" and suggested that the same standards may not apply in each case.  *Id*. at 1183.  Ultimately, the court declined to create an exception from the general duty of care for freeway drivers, based in part upon a finding that accidents with vehicles on the side of the freeway were foreseeable.  *See id*. at 1177–82.  This finding does not cast doubt upon the *Eisen* court's conclusion that such a risk is too speculative to trigger a duty to disclose under the CLRA.  *See Eisen*, 2012 WL 841019, at *5.

fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200; *Cal-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999). "Because . . . Section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Boschma v. Home Loan Ctr., Inc.*, 129 Cal. Rptr. 3d 874, 893 (Ct. App. 2011); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). California Plaintiffs allege that PCNA engaged in unlawful, unfair, and fraudulent business practices by introducing a defective product into the market and failing to disclose the alleged defect to consumers.

The case law suggests, and PCNA does not dispute, that allegations suggesting that a defendant knew of and failed to disclose safety risks posed by its defective product are sufficient to establish UCL liability under all three prongs of the statute. Based on its finding above, the Court therefore finds that California Plaintiffs state a claim for relief under the unlawful, unfair, and fraudulent prongs of the UCL. *See supra* Section IV(B) (Count Two). The Court addresses the parties' arguments regarding each prong.

### 1. Unlawful Conduct

By proscribing any "unlawful" business practice, the UCL "borrows violations of other laws" and makes them "independently actionable" under the UCL. *Cal-Tech Commc'ns*, 973 P.2d at 539–40 (internal citations omitted). A violation of the CLRA can serve as a predicate for a UCL claim. *See, e.g., Stevens v. Super. Ct.*, 89 Cal. Rptr. 2d 370, 375 (Ct. App. 1999).

California Plaintiffs state a claim under the CLRA and therefore sufficiently state a claim under the UCL. *See, e.g., Cal-Tech Commc'ns*, 973 P.2d at 539–40. PCNA's argument that Plaintiffs failed to expressly incorporate their CLRA claim into their UCL claim is not

persuasive. The Complaint invokes "the acts alleged in this Complaint" and put PCNA on notice of the alleged CLRA violation. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d at 782 (noting that courts should view each allegation in the context of the entire complaint); *Tullis*, 515 F.3d at 680–81 (stating that courts should not "elevate form over substance" in deciding a motion to dismiss). Plaintiffs' UCL claim premised on "unlawful" conduct therefore survives PCNA's motion to dismiss.

### 2. Unfair Conduct

To state a claim under the "unfairness" prong of the UCL, a plaintiff must demonstrate (1) a substantial injury to consumers, (2) that the injury is not counterbalanced by an equivalent or greater benefit to consumers or to competition, and (3) that consumers could not themselves have avoided the injury. *Daugherty*, 51 Cal. Rptr. 3d at 129–30 (citing *Cel-Tech Commc'ns,* 973 P.2d at 539–544; and *Camacho v. Auto. Club of S. Cal.*, 48 Cal. Rptr. 3d 770, 777 (Ct. App. 2006)).

In general, California courts have found that a defendant's failure to disclose defects that will manifest post-warranty is not "unfair" under the UCL unless the defendant failed to inform consumers of a fact that it had a duty to disclose under *Daugherty*. *See Bardin*, 39 Cal. Rptr. 3d at 643–44 (affirming trial court's dismissal of a UCL claim premised on unfair business practices because the use of "less expensive and less durable materials in the manufacture of [the defendant's] vehicles to make more money" does not violate public policy absent one of the two *Daugherty* exceptions);[8] *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098 (N.D. Cal.

---

[8]*See also Daugherty*, 51 Cal. Rptr. 3d at 130 (stating that, where a defect did not present a safety concern, "the failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted . . . cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair

2007) (finding that a defendant's failure to disclose defects, where it had a duty to disclose, would in turn constitute an unfair practice under the UCL).[9]  Here, Plaintiffs have sufficiently alleged that the use of plastic coolant tubes presents a safety risk that triggered a duty to disclose under *Daugherty*.  *See supra* Section IV(B) (Count Two).  PCNA's reliance on *Daugherty*, *Bardin*, and *Clemens* therefore does not bar California Plaintiffs' claim in this case.  The Court finds that California Plaintiffs' claim for unfair practices under the UCL survives PCNA's motion to dismiss.

### 3.  Fraudulent Conduct

The fraudulent conduct prong of the UCL applies to acts that are either akin to common law fraud or likely to deceive the public.  *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009).  Plaintiffs seeking to assert a UCL claim premised on fraudulent conduct must demonstrate that a defendant's alleged acts or omissions were material and likely to deceive a reasonable consumer.  *See id.*; *see also Bardin*, 39 Cal. Rptr. 3d at 636.

---

practice under the UCL"); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026–27 (9th Cir. 2008) (citing *Daugherty* for the proposition that a defendant's failure to disclose a defect that might or might not shorten the effective life span of an automobile part does not cause a substantial injury to consumers and therefore does not constitute an unfair practice under the UCL).

[9]The Court notes that the *Falk* court incorrectly found that a manufacturer has a duty under California law to disclose defects that are material and would have altered consumers buying decisions, regardless of whether those defects presented a safety risk.  *Falk*, 496 F. Supp. 2d at 1095 (citing *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543–44 (Ct. App. 1997)).  The Ninth Circuit rejected this broad test and found that a defect is only "material" for purposes of the CLRA if it presents a safety risk.  *Wilson*, 668 F.3d at 1141–42 (discussing *Falk* and stating that, "for the omission to be material, the failure must still pose safety concerns" (citing *Smith*, 749 F. Supp. 2d at 987) (internal citations omitted)).  Despite this discrepancy, the *Falk* court's holding that a manufacturer commits an unfair practice under the UCL when it fails to inform consumers of a defect that it had a duty to disclose is consistent with *Daugherty*, *Bardin*, and *Clemens* on this point.

PCNA cites *Clemens v. Daimler Chrysler Corp.* for the proposition that the public is not likely to be deceived where the only expectation consumers could have had about a particular engine component is that it would function properly for the duration of the express warranty. 534 F.3d at 1026–27.  As stated above, however, consumers expect that products will function safely throughout and past the duration of the express warranty; a manufacturer's failure to disclose a defect that presents a safety risk is therefore deceptive under the CLRA. *See, e.g., Decker*, 2011 WL 5101705, at \*4.  The Court therefore concludes that a manufacturer's failure to disclose defects that present safety risks is likely to deceive a reasonable consumer under the fraudulent prong of the UCL.  *Cf. Smith*, 2011 WL 6322200, at \*3 (rejecting a UCL claim because the plaintiff failed to demonstrate that the alleged defect presented a safety issue to consumers); *O'Shea v. Epson Am., Inc.*, No. CV 09-80634, 2011 WL 3299936, at \*6–7 (C.D. Cal. July 29, 2011) (same).  Because Plaintiffs have sufficiently alleged a safety risk under California law, the Court finds that California Plaintiffs' UCL claim premised on fraudulent conduct survives PCNA's motion to dismiss.

California Plaintiffs state a claim for relief under the unlawful, unfair, and fraudulent prongs of the UCL.  Accordingly, the Court **DENIES** PCNA's motion to dismiss Count Three of Plaintiffs' Complaint.

*Count Four: Unjust Enrichment (California)*

California courts do not recognize unjust enrichment as an independent claim for relief. *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Ct. App. 2003).  Instead, unjust enrichment "is a general principle underlying various doctrines and remedies, rather than a remedy itself," *id.*, and "is synonymous with restitution."  *Durell v. Sharp Healthcare*, 108 Cal.

Rptr. 682, 699 (Ct. App. 2010).  Where a plaintiff seeks restitution under statutory claims for

relief, an attempt to plead a separate claim for unjust enrichment "adds nothing" to the

complaint.  *Jogani v. Super. Ct.*, 81 Cal. Rptr. 3d 503, 511 (Ct. App. 2008); *see also Marsikian*,

2009 WL 8379784, at *8 (dismissing a plaintiff's unjust enrichment claim because "including

such a claim would not enlarge the range of remedies Plaintiffs may otherwise seek").

Here, Plaintiffs seek restitution in their statutory claims for relief.  (ECF No. 35 ¶ 267

("Pursuant to §§ 17203 and 17204 of the Business & Professions Code, California Plaintiffs and

the other California Sub-Class members are entitled to: . . . *full restitution of all monies paid* to

Porsche as a result of its deceptive practices . . . ." (emphasis added)).)  If Plaintiffs cannot

recover under the CLRA, the purpose of which is to "protect consumers against unfair and

deceptive business practices and to provide efficient and economical procedures to secure such

protection," Cal. Civ. Code § 1760, or the UCL, which addresses any "unlawful, unfair or

fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200, Plaintiffs may not pursue

an independent theory of restitution based on unjust enrichment.  *See Falk*, 496 F. Supp. 2d at

1099 (dismissing a plaintiff's unjust enrichment claim because "the sole remedies available for

the violations alleged have been discussed [under the CLRA and the UCL]. . . there will be no

occasion for resort to unjust enrichment").  If PCNA's conduct is actionable under the CLRA

and/or the UCL, then Plaintiffs will recover the appropriate restitution under these statutes.

Plaintiffs' suggestion that there exists a split of authority in California regarding unjust

enrichment as an independent claim for relief is not persuasive.  The state cases that Plaintiffs

cite involve a restitution theory as the sole claim.  *See Lectrodryer v. SeoulBank*, 91 Cal. Rptr. 2d

881, 883–84 (Ct. App. 2000) (considering a restitution-based theory of recovery in a credit

38

dispute); *First Nationwide Sav. v. Perry*, 15 Cal. Rptr. 2d 173, 176–77 (Ct. App. 1992) (same).

Where, as here, the unjust enrichment claim does not "enlarge the range of remedies" that a

plaintiff may seek and thus "adds nothing to the complaint," dismissal is proper. *Marsikian*,

2009 WL 8379784, at *8*; *Jogani*, 81 Cal. Rptr. 3d at 511. *See also Falk*, 496 F. Supp. 2d at

1099.

The Court finds that California Plaintiffs have failed to state a claim for relief under an

independent theory of unjust enrichment.  Accordingly, the Court **GRANTS** PCNA's motion to

dismiss Count Four of Plaintiffs' Complaint.

## C.  COLORADO

Colorado Plaintiff Kevin Starkey purchased a model-year 2006 Cayenne from an

unidentified seller in 2010.  Colorado Plaintiff's coolant tubes cracked in 2011, and the resulting

coolant leak damaged his transmission seals and caused the vehicle to cease operating.  Colorado

Plaintiff paid to replace his coolant tubes with aluminum pipes and repair the other damage to his

vehicle.  He now brings claims for violations of the Colorado Consumer Protection Act

("CCPA"), Col. Rev. Stat. § 6-1-101 *et seq*., strict product liability, and breach of implied

warranty of merchantability under Colorado law.  PCNA moves to dismiss each claim.

*Count Five: Colorado's Consumer Protection Act*

The CCPA provides a claim for relief for consumers who are injured by certain

"deceptive trade practices."  Col. Rev. Stat. § 6-1-113(1)(a) (consumers have a claim for relief);

§ 6-1-105 (identifying specific deceptive trade practices).  Deceptive trade practices under the

CCPA include affirmative misrepresentations, such as "[representing] that goods, food, services,

or property are of a particular standard, quality, or grade, or that goods are of a particular style or

model, if [the person] knows or should know that they are of another."  *Id*. § 6-1-105(1)(g); *see also id*. §§6-1-105(1)(e), (i), and (r) (proscribing various types of affirmative misrepresentations such as false advertising).  The CCPA also proscribes "[failing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction."  *Id*. § 6-1-105(1)(u).

Colorado Plaintiff invokes each of these sections and alleges that PCNA violated the CCPA by knowingly misrepresenting the quality and characteristics of the Cayenne and by falsely advertising the Cayenne.  Colorado Plaintiff also alleges that PCNA committed an unlawful omission under the CCPA by failing to disclose material information to consumers. The Court finds that Colorado Plaintiff states a claim under the CCPA on the latter allegation only.

To state a CCPA claim, a plaintiff must allege: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.  *Crowe v. Tull*, 126 P.3d 196, 201 (Colo. 2006) (citing *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc*., 62 P.3d 142, 146–47 (Colo. 2003)).  Allegations premised on fraudulent conduct must meet Rule 9(b)'s heightened pleading standard.  *Duran v. Clover Club Foods Co*., 616 F. Supp. 790, 793 (D. Colo. 1985); *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-CV-1398, 2011 WL 2415167, at *4 (D. Colo. June 10, 2011).  Here, PCNA

40

argues that Colorado Plaintiff has not pleaded a causal connection between PCNA's alleged conduct and his damages as required to state a claim under the CCPA.[10]

Colorado Plaintiff essentially concedes that his allegations cannot support an inference that PCNA's affirmative representations proximately caused his injuries. Instead, he argues that he incurred damages because his vehicle contained plastic coolant tubes "while [PCNA], at the same time, represented that the coolant system was 'extremely robust.' " (ECF No. 77, at 166.) Without alleging that he heard or had access to PCNA's affirmative statements, or identifying the specific statements on which he allegedly relied, Colorado Plaintiff cannot demonstrate proximate cause under the CCPA. *See, e.g., Gen. Steel Domestic Sales, LLC*, 2011 WL 2415167, at *4; *cf. Crowe*, 126 P.3d at 209–10. The Court **GRANTS** PCNA's motion to dismiss Count Five of Plaintiffs' Complaint to the extent that it is premised on allegations of affirmative misrepresentations.

The Court now considers whether PCNA's alleged failure to disclose the alleged coolant tube defect to consumers is actionable under the CCPA. One Colorado district court has held that a plaintiff cannot state an actionable omission under the CCPA unless he or she identifies some form of communication that took place between the parties. *See Baca v. Clark*, No. 06-cv-00714, 2007 WL 2022054, at *7 (D. Colo. July 9, 2007); *see also Warner v. Ford Motor Co.*, No. 06-cv-02442, 2008 U.S. Dist. LEXIS 82858, *36–37 (D. Colo. Sept. 30, 2008) (citing and distinguishing *Baca*). In *Baca*, however, the plaintiff could not establish that the defendant intended to communicate any facts to her when the defendant did nothing but post a picture of a

---

[10] This argument applies to each of Colorado Plaintiff's CCPA allegations. Colorado Plaintiff's argument that PCNA did not challenge certain allegations because it only cited three examples of deceptive practices under the statute is without merit.

product on its website.  2007 WL 2022054, at *1–2, 6–7.  The defendant therefore did not

misrepresent any material facts when it "failed" to instruct the plaintiff how to properly use the

product.  *Id.* at *6–7.

  In contrast, *Warner v. Ford Motor Co.* and a case on which it relies suggest that the act of

distributing and selling a product constitutes a "statement" to consumers that the product is

reasonably safe for its intended use.  2008 U.S. Dist. LEXIS 82858, at *26–31 (citing *Connick v.*

*Suzuki Motor Co*., 675 N.E.2d 584, 595 (Ill. 1996)).  In such a case, a defendant's failure to

disclose defects that present a known safety risk to consumers is an actionable misrepresentation

under the CCPA.  *See id*.; *accord Connick*, 675 N.E.2d at 595*; Daugherty*, 51 Cal. Rptr. 3d at

127.  When a consumer alleges that he or she would not have purchased the product had the risk

been disclosed, the consumer has alleged facts sufficient to support an inference that the alleged

omission caused his or her injuries.  *See Warner*, 2008 U.S. Dist. LEXIS 82858, at *48; *accord*

*Connick*, 675 N.E.2d at 595.

  In *Warner*, for example, the plaintiffs alleged that the defendant-manufacturer failed to

disclose the fact that the subject vehicle was defectively designed and that the defect posed a

known safety risk to consumers.  2008 U.S. Dist. LEXIS 82858, at *1–4.  The plaintiffs asserted

that, had they known of the defect, they would not have purchased the vehicle.  *Id.*  The court

found that such an omission was actionable misconduct under the CCPA and that the plaintiffs

had sufficiently alleged that the defendant's conduct caused their injuries.  *See id*. at *49–50.  In

reaching its conclusion, the court relied heavily on *Connick v. Ford Motor Co.*, in which the

Illinois Supreme Court found that a defendant-manufacturer's alleged concealment of a vehicle's

susceptibility to rollover was an actionable omission under the Illinois consumer fraud statute.

*See Warner*, 2008 U.S. Dist. LEXIS 82858, at *27–31.  The *Connick* court similarly found that the plaintiffs' allegation that they would not have purchased the vehicle had the safety risk been disclosed was sufficient to meet the statute's proximate cause requirement.  675 N.E.2d at 595.

Although the plaintiffs in both *Warner* and *Connick* had received some form of communication from the defendant, the Court finds that the lack of direct communication between the parties in this case does not mandate dismissal of Colorado Plaintiff's claim.  The Colorado Supreme Court has indicated that the CCPA is to be construed broadly and that "it should ordinarily be assumed that the CCPA applies to the conduct[; t]hat assumption is appropriate because of the strong and sweeping remedial purpose of the CCPA."  *Showpiece Homes Corp. v. Assur. Co. of Am.*, 38 P.3d 47, 53 (Colo. 2001); *Warner*, 2008 U.S. Dist. LEXIS 82858, at *19 (citing *Showpiece Homes*).  Furthermore, the *Connick* court appeared to accept the plaintiff's allegations that "the offering for sale of a consumer product constitutes a representation that the product is reasonably safe for its intended use," *id.* (internal citations omitted); *infra* Section IV(F) (Count Fourteen), and the *Warner* court acknowledged the similarities between Colorado and Illinois law in this area.  *See Warner*, 2008 U.S. Dist. LEXIS 82858, at *30–31.  The *Connick* court's holding is also consistent with case law in other jurisdictions in which courts have held that consumers expect to purchase products that do not contain safety-related defects such that a defendant acts fraudulently in knowingly concealing such defects from consumers.  *See, e.g., Daugherty*, 51 Cal. Rptr. 3d at 127.

Here, Plaintiffs (and Colorado Plaintiff by incorporation) have alleged facts sufficient to support an inference that the alleged coolant tube defect presents a safety risk to consumers and that PCNA had knowledge of but failed to disclose this defect to consumers.  *See supra* Section

43

III(B); IV(B) (Count Two).  Colorado Plaintiff alleges that he would not have purchased his

Cayenne had the alleged coolant tube defect been disclosed.  The Court predicts that the

Colorado Supreme Court would find that these allegations are sufficient to state a claim under

the CCPA.  The Court **DENIES** PCNA's motion to dismiss these allegations.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** PCNA's motion to

dismiss Count Five of Plaintiffs' Complaint.

*Count Six: Strict Product Liability (Colorado)*

Colorado Plaintiff brings a claim for strict product liability and alleges that PCNA

designed and sold the Cayenne in a defective condition that was unreasonably dangerous to

consumers and/or their property.  PCNA argues, and the Court agrees, that the economic loss

doctrine bars any such claim.

Colorado has adopted the Restatement (Second) of Torts § 402A, which provides the

standard for strict product liability claims.  In relevant part, Section 402A states:

> (1) One who sells any product in a defective condition unreasonably dangerous to
> the user or consumer or to his property is subject to liability for physical harm
> thereby caused to the ultimate user or consumer, or to his property, if
> > (a) the seller is engaged in the business of selling such a product, and
> > (b) it is expected to and does reach the user or consumer without substantial
> > change in the condition in which it is sold.

Restatement (Second) of Torts § 402A (1965); *Hiigel v. Gen. Motors Corp.*, 544 P.2d 983, 989

(Colo. 1975) (adopting § 402A).

The Colorado Supreme Court initially adopted the view that "property" under Section

402A includes the product itself, such that "damage to the product sold is covered under the

doctrine of strict liability."  *Hiigel*, 544 P.2d at 989.  In *Hiigel*, the plaintiff sued the

manufacturer of his motor home after the wheels fell off the vehicle, allegedly due to the

44

manufacturer's failure to warn consumers of the proper way to maintain the vehicle's wheel attachment system. *Id*. at 985. The plaintiff did not sustain physical injuries but sought recovery for his costs in repairing the vehicle. *See id*. In allowing the plaintiff's claim to proceed, the court noted that jurisdictions were split as to whether plaintiffs could pursue tort claims to recover economic loss. *See id*. The court adopted the holding of *Santor v. Karagheusian, Inc*., 207 A.2d 305 (N.J. 1965), which allowed a plaintiff to recover in tort when a product contained a defect that damaged only the product itself. *Hiigel*, 544 P.2d at 989. The court limited its holding on this point to cases involving individual (and not commercial plaintiffs). *Id*.

     *Santor* has since received substantial criticism and represents the minority view among courts. *See E. River S.S. Corp. v. Transamerica Delaval, Inc*., 476 U.S. 858, 868–69 (1986) (classifying *Santor* as the minority approach and declining to follow it in an admiralty case). The majority of courts instead have adopted the holding of *Seely v. White Motor Co.*, in which the California Supreme Court refused to allow a plaintiff to pursue a strict liability in tort theory to recover damages for the purchase price of his vehicle. 403 P.2d 145, 151 (Cal. 1965). The court found that the law draws a boundary between "tort recovery for physical injuries and warranty recovery for economic loss" and that a "manufacturer's liability [in tort] is limited to damages for physical injuries and there is no recovery for economic loss alone." *Id*. The court reasoned that a consumer can contract to protect his or her economic interests but "should not be charged at the will of the manufacturer with bearing the risk of physical injury." *Id*. When a defective product fails and the only damage is to the product itself, the consumer has suffered economic loss and may only recover in contract. *See id*. The United States Supreme Court adopted *Seely*'s holding in federal admiralty law and stated that "[e]ven when the harm to the

45

product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law." *E. River*, 476 U.S. at 870–71.

Twenty-five years after *Hiigel*, the Colorado Supreme Court joined the majority of jurisdictions and officially adopted the economic loss rule for cases brought by all plaintiffs, including individual purchasers. *See Town of Alma v. Azco Const., Inc.*, 10 P.3d 1256, 1259–66 (Colo. 2000). The court cited extensively to *Seely* and *East River* and ultimately stated:

> [W]e now expressly adopt the economic loss rule. We hold that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.[] Economic loss is defined generally as damages other than physical harm to persons or property.

*Id*. at 1264.

The *Town of Alma* court illustrated the rule using a manufacturer's warranty as an example. When a product fails outside its warranty and only the product itself is damaged, the buyer has suffered only economic loss. The buyer could have addressed his or her economic expectations in contract by "demand[ing] additional warranties on a product while agreeing to pay a higher price, or the same buyer may choose to assume a higher level of risk that a product will not perform properly by accepting a more limited warranty in exchange for a lower product price." *Id*. at 1262. If the buyer fails to protect adequately those economic expectations in contract, he or she cannot then attempt to recover solely economic loss in tort. *See id.* at 1262–64; *cf. Camacho v. Honda Motor Co.*, 741 P.2d 1240 (Colo. 1987) (considering the merits of a strict liability claim based on Section 402A where the plaintiff suffered severe leg injuries in an accident involving an allegedly defective motorcycle).

46

In its analysis, the *Town of Alma* court noted that application of the economic loss doctrine turns on the source of the duty owed and not the nature of the injury suffered. 10 P.3d at 1262.  The court then cited several examples of circumstances in which an individual could suffer monetary injury but still pursue a tort action based on an independent duty of care that the defendant violated.  *Id.* at 1263 (citing examples of "special relationships," such as attorney-client and physician-patient, that impose a duty of care independently of any contractual relationship).  In other words, the fact that a plaintiff suffers monetary damages does not necessarily mean that he or she has suffered "economic loss" for purposes of the rule.

This language does not alter the conclusion that "[d]amage to a product is most naturally understood as a warranty claim" that could have been insured or otherwise addressed in contract. *E. River*, 476 U.S. at 871; *Town of Alma*, 10 P.3d at 1262–63 (discussing warranties).  When a product sustains damage that would have been covered under its warranty, but the damage occurs outside of the warranty period, the damages could have been addressed in contract and are exactly the kind of damages that the economic loss rule developed to address.  *See Town of Alma*, 10 P.3d at 1262; *Seely*, 403 P.2d at 151; *Carter v. Brighton Ford, Inc.*, 251 P.3d 1179, 1183 (Colo. App. 2010) ("Damages occurring only to the product itself represent the type of damages that can be foreseen and dealt with by contract.").  Absent some damages that would not have been contemplated under the product's warranty, the fact that the product is "unreasonably dangerous" is irrelevant to the question of whether the economic loss rule applies. *See Town of Alma*, 10 P.3d at 1264 ("Economic loss is defined generally as damages other than physical harm to persons or property."); *accord E. River*, 476 U.S. at 871 (rejecting an intermediate theory in which economic loss is recoverable in tort where "the defective product

creates a situation potentially dangerous to persons or other property" and stating that "[t]he tort

concern with safety is reduced when an injury is only to the product itself"); *Sherman v. Sea Ray*

*Boats*, 649 N.W.2d 783, 790 (Mich. Ct. App. 2002) (stating that, where a plaintiff seeks only

economic loss and not damages for physical injury, "tort concerns with product safety no longer

apply, and economic expectation issues prevail").

Here, is it undisputed that Colorado Plaintiff suffered only economic loss when his

vehicle's coolant tubes failed.  Colorado Plaintiff does not allege that coolant tube failure caused

him to suffer personal injury or injury to property other than his Cayenne;[11] instead, the only

damages that he suffered could have been addressed under the vehicle's Warranty.  The duty that

PCNA allegedly breached therefore sounds in contract and Colorado Plaintiff is barred from

pursuing a tort claim for strict product liability.

Colorado Plaintiff attempts to confuse the issue by suggesting that PCNA breached a

_____

[11]The product at issue in this case is the Cayenne and not the individual coolant tubes.  To the extent that Plaintiffs are suggesting otherwise, this suggestion goes against the great weight of authority. *See, e.g., Progressive Ins. Co. v. Sacramento Cnty. Coach Showcase*, No. 2:07-CV-10187, 2008 WL 5377993, at *7 (D. Nev. Dec. 23, 2008) (stating that the reasoning behind the economic loss rule applies when "an integral component of a larger product causes damage to the product itself because 'the injury suffered—the failure of the product to function properly—is the essence of a warranty action[.]' " (citation omitted)); *Int'l Flavors & Fragrances Inc. v. McCormick & Co., Inc.*, 575 F. Supp. 2d 654, 662 (D.N.J. 2008) ("Several courts have been faced with facts similar to those at bar, and each has concluded that the damage done to a final product by a defective component or ingredient does not constitute damage to property 'other than the product itself.' "); *Americoach Tours, Inc. v. Detroit Diesel Corp.*, No. 04-2016, 2005 WL 2335369, at *3 (W.D. Tenn. Sept. 23, 2005) ("In the instant case, MCI . . . assembled the bus from component parts, and the entire bus . . . was therefore the 'product itself.' "); *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F. Supp. 1027, 1059 (D.S.C. 1993) ("[V]irtually all machines have component parts and to distinguish the component part from the whole would result in a finding of injury to 'other property' whenever a product injures itself." (citing *E. River*, 476 U.S. at 868–69)).  The Colorado court of appeals' mention in dicta of "damage to the product (in addition to the defect)," without more, does not persuasively reject this line of cases.  *See Carter*, 251 P.3d at 1182–83.

duty to act reasonably in the design, manufacture, and sale of the Cayenne.  (ECF No. 77, at 169 (citing *Loughridge v. Goodyear Tire and Rubber Co.*, 192 F. Supp. 2d 1175, 1183–84 (D. Colo. 2002), for the proposition that "strict products liability imposes a duty on the manufacturer of a product, outside any contractual duty, to act reasonably in the design, manufacture, and sale of the product").)  Were the Court to apply this principle to the present case, such a holding would contradict the Colorado Supreme Court's implicit holding that product damage that could have been addressed by a warranty is not recoverable in tort.  *See Town of Alma*, 10 P.3d at 1263 (suggesting that the type of damages suffered is relevant in determining the source of the duty underlying the action); *Carter*, 251 P.3d at 1183 (rejecting the *Loughridge* court's holding that warranty claims—claims in which the product damaged only itself—constitute "property damage" within the meaning of Colorado's product liability statutes).  The *Loughridge* court also based its ruling on the fact that the plaintiffs had alleged harm to property other than the product itself; such a circumstance is not present in this case.  *See* 192 F. Supp. 2d at 1184.

Colorado Plaintiff's final argument is that *Hiigel* has never been overruled and precludes application of the economic loss doctrine in this case.  Colorado Plaintiff does not explain how *Hiigel* would support a tort action on these facts that would not contradict the theory of and purposes underlying the economic loss rule that the *Town of Alma* court espoused.  *See Carter*, 251 P.3d at 1183 (finding that, at the very least, *Hiigel* has been "substantially narrowed and clarified" by *Town of Alma*).  Colorado Plaintiff notes that the plaintiff in *Town of Alma* was in privity with the defendant, that the contract in *Town of Alma* covered the "specific subject matter of the lawsuit," that the issue arose in the negligence context and not strict product liability, and that the defect did not pose safety risks.  (ECF No. 77, at 169.)  None of these distinctions alter

49

the Court's conclusion that, because Colorado Plaintiff seeks purely economic loss that he could have addressed by purchasing extended warranty coverage in contract, he cannot now attempt to recover those damages in tort.

The Court finds that the economic loss rule bars Colorado Plaintiff's tort claim for strict product liability. Accordingly, the Court **GRANTS** PCNA's motion to dismiss Count Six of Plaintiffs' Complaint.

*Count Seven: Implied Warranty of Merchantability (Colorado)*

Colorado Plaintiff brings a claim for breach of implied warranty of merchantability under Colorado law. Like his co-plaintiffs, Colorado Plaintiff asserts that PCNA breached the implied warranty of merchantability under the UCC by failing to supply goods that are fit for their ordinary purpose.

PCNA does not offer any arguments specific to Colorado Plaintiff's implied warranty claim and adopts only those arguments that it advanced in connection with Plaintiffs' Magnuson-Moss claim. Specifically, PCNA argues that all implied warranties had expired by the time the alleged defect manifested in Colorado Plaintiff's vehicle. The Court rejected these arguments in Section IV(A)(2)(b) of this Opinion and Order (Count One) and found that Plaintiffs had sufficiently alleged facts to suggest that the durational limitation on all implied warranties was unconscionable and unenforceable, such that the Court cannot assume for purposes of this motion that the implied warranty of merchantability had expired. *See supra* Section IV(A)(2)(b) (Count One). The Court therefore finds that Colorado Plaintiff states a claim for breach of the implied warranty of merchantability. The Court **DENIES** PCNA's motion to dismiss Count Seven of Plaintiffs' Complaint.

## D. FLORIDA

Florida Plaintiff Joseph Dudley purchased a 2004 Cayenne from an unidentified seller sometime in 2010.  That same year, Florida Plaintiff became aware that the plastic coolant tubes in his vehicle "faced defective coolant tube issues" and paid to replace the plastic tubes in order to avoid having the defect manifest in his vehicle.  (ECF No. 35, at 20.)  Florida Plaintiff now brings claims for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq*., negligence, and unjust enrichment.  PCNA moves to dismiss each of these claims.

### Count Eight: Florida's Deceptive and Unfair Trade Practices Act

Under the FDUTPA, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Fla. Stat.§ 501.204(1).  A person who has suffered a loss as a result of an FDUTPA violation may recover "actual damages, plus attorney's fees and court costs."  *Id*. § 501.211.  There are three elements to an FDUTPA claim: (1) a deceptive or unfair practice, (2) causation, and (3) actual damages.  *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006).

Here, the parties dispute whether Florida Plaintiff has alleged causation and actual damages as required to state a claim under the FDUTPA.  Florida courts have defined "actual damages" as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."  *Butland,* 951 So. 2d at 869 (citing *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984)).  Florida Plaintiff seeks to recover

51

two types of actual damages: the cost of replacing the plastic coolant tubes in his vehicle with aluminum pipes and the amount that he overpaid in purchasing what he assumed to be a non-defective vehicle.  Under the latter theory, Florida Plaintiff seeks to recover the diminished value of his vehicle, measured as the difference between the value of a Cayenne equipped with non-defective parts and the value of the Cayenne as delivered.  PCNA argues that Florida Plaintiff cannot claim actual damages where the vehicle was delivered in a condition that outlived its express warranty, and, alternatively, that Florida Plaintiff fails to allege actual damages because he installed aluminum pipes in his vehicle before the plastic coolant tubes failed.

The Court agrees with PCNA that Florida Plaintiff cannot recover under the FDUTPA the cost of repairing and replacing the allegedly defective coolant tubes in his vehicle.  Florida courts have suggested that the cost of repairing and replacing a defective part are "consequential" damages that are not recoverable under the FDUTPA and that the FDUTPA permits a consumer to recover "only the diminished value" of the goods or services received. *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 263 (Fla. Dist. Ct. App. 2004) (citing *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. Dist. Ct. App. 1985)); *see also Kia Motors Am. Corp. v. Butler*, 1140 (Fla. Dist. Ct. App. 2008) (finding that, in a case in which the plaintiff paid to repair and replace the allegedly deceptive brakes in her vehicle, the plaintiff sought recovery of consequential damages that are not recoverable under the FDUTPA); *Butland*, 951 So. 2d at 869.

Here, Florida Plaintiff alleges actual damages under the FDUTPA on a "diminished value" theory of recovery.  A district court in Florida recently found that a plaintiff pleaded the elements of an FDUTPA claim on facts similar to those that Florida Plaintiff alleges in this case.

52

In *Matthews v. American Honda Motor Co., Inc.*, the plaintiff alleged that the defendant manufactured and sold vehicles with a latent defect and brought a FDUTPA claim on behalf of herself and all Florida owners and lessees of the subject vehicles.  No. 12-60630-CIV, 2012 WL 2520675, at *1 (S.D. Fla. June 6, 2012).  The plaintiff alleged that the defect caused paint discoloration and delamination on the outside of the vehicles, that the defect did not manifest until after the applicable warranties on the vehicles had expired, and that the defendant was aware of the defect but failed to disclose it to the public at large.  *Id*.  In finding that the plaintiff adequately pleaded the elements of an FDUTPA claim,[12] the court stated that "Florida courts have recognized that a[n] FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect that diminishes a product's value."  *Id*. at *3 (citing *Davis v. Powertel, Inc*., 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000)).  The court went on to reject the defendant's argument that the vehicle's warranty barred the claim, stating, "[plaintiff's] allegation that [defendant] knowingly failed to disclose the latent paint defect takes this case outside of warranty law."  *Id*.

Florida case law supports the *Matthews* court's holding that a consumer can recover under the FDUTPA when a defendant's deceptive conduct allegedly diminishes the value of the product sold.  *See Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 738 (Fla. 2002) (indicating that the FDUTPA contemplates compensation for diminished value); *Davis*, 776 So. 2d at 990 (reversing a trial court's dismissal of a putative class action when the plaintiffs alleged that the defendant's failure to disclose a material fact reduced the value of their phones); *Ft.*

---

[12]The court found that the plaintiff had adequately pleaded the elements of a FDUTPA claim but ultimately dismissed the claim without prejudice on statute of limitations grounds.  *See id.* at *3–5.  PCNA does not make a statute of limitations argument under the FDUTPA in this case.

*Lauderdale Lincoln Mercury v. Corgnati*, 715 So. 2d 311, 314 (Fla. Dist. Ct. App. 1998).  In a case with facts similar to those alleged here, a Florida court of appeals allowed a plaintiff's FDUTPA claim to proceed where she allegedly purchased a vehicle that came equipped with defective seat belts and sought to recover the "diminution in value of her [] automobile caused by the allegedly defective seatbelt buckles."  *Collins v. DaimlerChrysler Corp*., 894 So. 2d 988, 990–91 (Fla. Dist. Ct. App. 2004).  The *Collins* court suggested that the appropriate measure of damages under the FDUTPA would be the difference in value between the car sold with operational seat belts and the car sold with defective seat belts.  *Id*. at 991.

Importantly, the *Collins* court allowed the plaintiff's claim to proceed despite the fact that the alleged seat belt defect had never manifested itself by failing to operate in an emergency or otherwise causing injury.  *Id*. at 990–91.  The court noted that the case was unique in that seat belts present safety and reliability concerns such that the plaintiff had alleged a concrete injury even though the defect had never manifested in her vehicle.  *Id*.

For the reasons set forth in Section IV(B) (Count Two) of this Opinion and Order, the Court assumes for purposes of this motion to dismiss that the alleged coolant tube defect presents a safety risk to consumers.  Thus, in light of *Collins*, PCNA's argument that Florida Plaintiff alleges only speculative damage because he replaced his coolant tubes before the alleged defect manifested in his vehicle is not persuasive.

Similarly unpersuasive is any attempt to distinguish the *Collins* court's holding from the facts of this case on the ground that Florida Plaintiff did not rely on PCNA's affirmative representations in purchasing his vehicle.  The Court acknowledges the fact that the FDUTPA's actual damages inquiry is premised on the "contract of the parties," *Butland*, 951 So. 2d at 869,

54

and that the Florida courts confronting this issue have measured damages in accordance with the defendant's affirmative representations regarding the quality of its product. *See, e.g., Collins*, 894 So. 2d at 990–91; *Corgnati*, 715 So. 2d at 312; *H & J Paving of Florida, Inc. v. Nextel, Inc*., 849 So. 2d 1099, 1102 (Fla. Dist. Ct. App. 2003). But the *Matthews* court applied this measure of damages to a case in which the plaintiff did not rely on any of the defendant's express representations, and *Collins* does not rule out the theory that a defendant's failure to disclose defects that implicate safety concerns is actionable regardless of whether the defendant affirmatively represented the fact that its product would operate safely. *See Matthews*, 2012 WL 2520675, at *1–3; *Collins*, 894 So. 2d at 991 n.3; *accord Decker*, 2011 WL 5101705, at *4; *Connick*, 675 N.E.2d at 584. The Court declines to dismiss Florida Plaintiff's claim on this ground.

Given the above analysis, PCNA's argument that Florida Plaintiff fails to allege causation is not compelling. Florida Plaintiff alleges that, had he known of the alleged coolant tube defect, he would not have purchased a Cayenne or would have insisted on paying less for it. (ECF No. 35 ¶ 113.) These allegations are sufficient to demonstrate cause under the FDUTPA. *See, e.g*., *Davis*, 776 So. 2d at 973–75; *Matthews*, 2012 WL 2520675, at *2–3. PCNA's argument that Florida Plaintiff must allege "transaction-specific facts" in order to demonstrate causation under the FDUTPA is misleading; this language was relevant in a class certification procedure in which the allegedly deceptive conduct depended on the facts of each individual transaction. *Miami Auto. Retail, Inc. v. Baldwin*, No. 3D10-2136, 2012 WL 2402152, at *1, 8 (Fla. Dist. Ct. App. June 27, 2012). In *Miami Automotive Retail*, the court distinguished cases in which "every customer received the same misrepresentation" and stated that, in such cases,

55

"individual reliance may not be necessary under FDUTPA." *Id*. at *8. PCNA's argument does not mandate dismissal of Florida Plaintiff's claim.

The Court finds that Florida Plaintiff states a claim for relief under the FDUTPA. Accordingly, the Court **DENIES** PCNA's motion to dismiss Count Eight of Plaintiffs' Complaint.

*Count Nine: Negligence (Florida)*

Florida Plaintiff alleges that PCNA "owed a duty to [Florida Plaintiff] with regard to the plastic coolant tubes installed in the subject Porsche Cayenne vehicles." (ECF No. 35 ¶ 309.) Florida Plaintiff asserts that PCNA breached this duty by negligently designing the Cayenne's cooling system in such a way as to cause injury to Florida Plaintiff.

In Florida, as in Colorado, the economic loss rule prevents plaintiffs from recovering under a negligence claim "when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property." *Indem. Ins. Co. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). The Florida Supreme Court has stated that "the products liability economic loss rule developed to protect manufacturers from liability for economic damages caused by a defective product beyond those damages provided by warranty law." *Id*. at 538.

Florida Plaintiff does not dispute this contention but instead argues that the rule does not bar tort claims based on fraudulent inducement and negligent misrepresentation. Even if true, Florida Plaintiff does not explain how this fact is relevant to his claim that PCNA negligently designed the Cayenne. Florida Plaintiff was free to plead a claim for fraudulent inducement or negligent misrepresentation if the facts supported such a claim for relief. He failed to do so, and

56

cannot amend his claim in his memorandum in opposition.  *See, e.g.*, *Pa. ex rel. Zimmerman*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotations omitted)).  As it stands, the Complaint fails to provide sufficient notice of a fraudulent inducement or negligent misrepresentation claim such that PCNA could have prepared an informed responsive pleading.

As for the negligent design claim, Florida Plaintiff does not dispute the fact that the alleged coolant defect caused damage to the Cayenne and not personal injury or damage to other property.  Thus, the Court finds that the economic loss doctrine, as recognized by Florida courts, bars Florida Plaintiff's negligent design claim.  The Court **GRANTS** PCNA's motion to dismiss Count Nine of Plaintiffs' Complaint.

*Count Ten: Unjust Enrichment (Florida)*

Florida Plaintiff brings a claim for unjust enrichment and alleges that "[PCNA] charged [Florida Plaintiff] and other Florida Sub-Class members more than a fair market price for their vehicles" such that it would be "inequitable" for PCNA to retain the benefit without paying the value of the benefit conferred.  (ECF No. 35 ¶¶ 314, 316.)  Florida Plaintiff alleges that he conferred a benefit on PCNA, "which it appreciated when it received the monetary compensation for the Cayennes and other benefits conferred."  (*Id.* ¶ 313.)  The Court finds that Florida Plaintiff fails to state a claim for unjust enrichment.

Unjust enrichment is an "equitable claim based on a legal fiction which implies a contract as a matter of law."  *14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.*, 43 So. 3d 877, 880 (Fla. Dist. Ct. App. 2010).  In order to state a claim for unjust enrichment in Florida, a plaintiff must allege that he or she "directly conferred a benefit on the defendants."  *Am. Safety*

57

*Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. Dist. Ct. App. 2007) (citing *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996)).  The parties need not be in privity of contract in order for a plaintiff to establish that he or she conferred a direct benefit on a defendant; however, a plaintiff cannot recover for unjust enrichment in Florida when he or she purchased a product on the secondary market with no direct link to the manufacturer.  *Compare Romano v. Motorola, Inc*., No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (refusing to dismiss a plaintiff's unjust enrichment claim where the plaintiff purchased a product through a manufacturer's "retail outfit" and stating that "[w]hile the [product] is ultimately sold through the retailer, [the defendant] is directly benefitted through profits earned from the sale of the [product]") *with Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551–52 (D. Md. 2011) (dismissing an unjust enrichment claim under Florida law where the plaintiff purchased a used Ford vehicle from an independent dealership and finding that the plaintiffs failed to demonstrate that the defendant received a direct benefit from the transaction).  *See also Szymczak v. Nissan N. Am., Inc*., No. 10 CV 7493, 2011 U.S. Dist. LEXIS 153011, at *58–59 (S.D.N.Y. Dec. 16, 2011) (dismissing a Florida plaintiff's unjust enrichment claim because he failed to allege that he purchased a product from or otherwise conferred a direct benefit on the defendant).

Here, Florida Plaintiff alleges that he purchased a 2004 vehicle in 2010 and that he replaced the plastic coolant tubes in his vehicle.  Florida Plaintiff alleges only that he "bought and/or leased a Porsche Cayenne manufactured by Porsche" and that PCNA "received the monetary compensation for the Cayennes and other benefits conferred by Plaintiff[] Dudley . . . and the other Florida Sub-Class members."  (ECF No. 35 ¶ 313.)  Without establishing a link

between the unidentified seller of his vehicle and PCNA, Florida Plaintiff fails to allege that he

conferred a direct benefit on PCNA as Florida law requires. *See Doll*, 814 F. Supp. 2d at

551–52; *Peoples Nat'l Bank of Commerce*, 667 So. 2d at 879. Accordingly, Florida Plaintiff's

unjust enrichment claim against PCNA cannot survive.

As an alternative rationale for dismissing Florida Plaintiff's unjust enrichment claim, the

Court notes that several district courts in Florida have held that a plaintiff cannot advance an

unjust enrichment claim that is predicated on the same wrongful conduct as that which the

FDUTPA is designed to prevent. *See Matthews*, 2012 WL 2520675, at *2; *Jovine v. Abbott

Labs., Inc.*, 795 F. Supp. 2d 1331, 1341–42 (S.D. Fla. 2011); *Nichols v. Wm. Wrigley Jr. Co.*,

No. 10-80759-CIV, 2011 WL 181458, at *5 (S.D. Fla. Jan. 19, 2011); *Prohias v. Pfizer, Inc.*,

490 F. Supp. 2d 1228, 1236–37 (S.D. Fla. 2007); *Am. Honda Motor Co., Inc. v. Motorcycle Info.

Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). The purpose of the FDUTPA is to

protect the consuming public from those who engage in unfair methods of competition and/or

unconscionable, deceptive, or unfair acts or practices in the conduct of trade of commerce. Fla.

Stat. § 501.202(2). Thus, where a plaintiff alleges that a defendant engaged in deceptive trade

practices, the plaintiff has an adequate remedy at law even if his or her FDUTPA claim is

ultimately unsuccessful. *See Matthews*, 2012 WL 2520675, at *2, 5; *In re Managed Care Litig.*,

185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002) ("It is blackletter [sic] law that the theory of unjust

enrichment is equitable in nature and is, therefore, not available where there is an adequate legal

remedy." (internal citations omitted)).

Here, Florida Plaintiff does not assert that his unjust enrichment claim is predicated on

allegations that are distinct from those underlying his FDUTPA claim. Florida Plaintiff therefore

59

has an adequate remedy at law and is barred from advancing an unjust enrichment claim in this case. *See Matthews*, 2012 WL 2520675, at *2, 5.

The Court finds that Florida Plaintiff fails to state a claim for unjust enrichment. Accordingly, the Court **GRANTS** PCNA's motion to dismiss Count Ten of Plaintiffs' Complaint.

## E.  GEORGIA

Georgia Plaintiff Anthony Gardner purchased a 2005 Cayenne in 2008 from an unidentified seller.  Georgia Plaintiff does not disclose the amount that he paid for his Cayenne or any other circumstances surrounding the purchase.  Georgia Plaintiff alleges that, in March 2011, the plastic coolant tubes in his vehicle cracked and rendered his vehicle disabled.  Georgia Plaintiff paid to repair his vehicle and now brings claims for breach of implied warranty under the UCC, violations of Georgia's Uniform Deceptive Trade Practices Act, Ga. Code Ann. § 10-1-370 *et seq*., and unjust enrichment.  PCNA moves to dismiss these claims.

*Count Eleven: Implied Warranty of Merchantability Under UCC (Georgia)*

In Georgia, a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Ga. Code Ann. § 11-2-314 (adopting UCC § 2-314 as Georgia law).  A plaintiff seeking to assert a claim for breach of the implied warranty of merchantability under Georgia law must be in privity with the party against whom the plaintiff seeks to assert his or her claim.  *Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558, 560–61 (Ga. 1996); *Chaffin v. Atlanta Coca Cola Bottling Co.*, 194 S.E.2d 513, 514 (Ga. Ct. App. 1972).  Georgia courts have consistently held that, "if a defendant is not the seller to the plaintiff-purchaser, the plaintiff as the ultimate purchaser cannot recover on the implied []

60

warranty, if any, arising out of the prior sale by the defendant to the original purchaser, such as [the] distributor or retailer from whom plaintiff purchased the product." *Evershine Prods., Inc. v. Schmitt*, 202 S.E.2d 228, 231 (Ga. Ct. App. 1973).

Georgia Plaintiff does not argue that he is in privity with PCNA but argues that Georgia courts recognize an exception to this rule where a manufacturer extends a warranty to a remote purchaser. The Court disagrees and finds that Georgia Plaintiff fails to state a claim for breach of the implied warranty of merchantability.

Georgia Plaintiff's argument relies on language from a case in which a Georgia appellate court stated:

> While ordinarily under [Georgia law] there is no implied warranty existing between a manufacturer and an ultimate consumer, this is due to the fact that no privity of contract exists between the two. However, where an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists . . . .

*Chrysler Corp. v. Wilson Plumbing Co., Inc.*, 208 S.E.2d 321, 323 (Ga. Ct. App. 1974) (citing *Studebaker Corp. v. Nail*, 62 S.E.2d 198, 202 (Ga. Ct. App. 1950)); *see also McQueen v. Minolta Bus. Solutions*, 620 S.E.2d 391, 393 (Ga. Ct. App. 2005) ("[W]hen a buyer purchases a product from a retailer, and there is no privity of contract between the manufacturer and the buyer, no implied warranty runs from the manufacturer to the purchaser."). At least one district court in Georgia has cited *Chrysler Corp*. and allowed an express warranty to supplant the privity requirement in a plaintiff's implied warranty of merchantability claim. *See Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1288 (S.D. Ga. 2010).[13]

---

[13] PCNA indicates that district courts in Georgia are split over this issue. Although there exist some post-*Chrysler Corp*. cases in which courts did not allow a warranty to supplant privity requirements, *see Monticello v. Winnebago Indus., Inc*., 369 F. Supp. 2d 1350, 1360–61 (N.D.

The Court accepts *Chrysler Corp*. as good law but finds that the "exception" does not apply to the facts of this case.  The *Chrysler Corp*. court stated that a warranty supplants privity in certain circumstances—specifically, when a manufacturer issues a warranty to remote purchasers through an authorized dealer and when the warranty is part of the remote consumer's purchase.  208 S.E.2d at 323.  This language is not superfluous.  Instead, prior and subsequent cases suggest that this proposition is less an exception and more a means of implying privity where the sale is effectively a direct sale between the manufacturer and the consumer.  *See, e.g.*, *Studebaker Corp.*, 62 S.E.2d at 202 (stating that a purchase through an authorized dealer is "in effect a direct purchase" between the manufacturer and a remote purchaser); *Lauria v. Ford Motor Co.*, 312 S.E.2d 190, 192–94 (citing *Chrysler Corp*. and stating that, "[w]here an automobile manufacturer, through its authorized dealer, issues to a purchaser of one of its new automobiles from the dealer a warranty as part of the sale, certainly an implied warranty of merchantability is in effect despite the lack of actual privity").  By acting through a dealer and by making the warranty part of the sale between the dealer and purchaser, the manufacturer evinces an intent to contract with the remote purchaser and receives consideration in the form of direct profits from its dealers.  *Studebaker Corp.*, 62 S.E.2d at 201–02.  The manufacturer therefore bridges the privity gap that would otherwise bar the remote purchaser's implied warranty claim.  *See id*.

Georgia Plaintiff does not allege any facts suggesting that his purchase transaction was effectively a sale between himself and PCNA.  Georgia Plaintiff does not allege that he

---

Ga. 2005) and *Whitehead v. John Bleakley RV Ctr.*, No. 1:09-CV-468, 2010 WL 925091, at *7 (N.D. Ga. Mar. 8, 2010), neither of these courts cited *Chrysler Corp*. or appear to have directly confronted this argument.

purchased his vehicle new (instead, he purchased a 2005 vehicle in 2008) from a Porsche authorized dealer (he does not identify the seller) or that the unidentified seller incorporated the Warranty into his purchase of the vehicle.  Even assuming all facts alleged in the Complaint as true, the Court cannot conclude that PCNA effectively bridged the privity gap between itself and Georgia Plaintiff.  *See Twombly*, 550 U.S. at 556 (stating that a complaint that fails to "raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim" does not survive a motion to dismiss).  Georgia's general privity rule therefore applies.  Georgia Plaintiff acknowledges that he is not in privity with PCNA; thus, Georgia Plaintiff is barred from pursuing his implied warranty claim.

The Court **GRANTS** PCNA's motion to dismiss Count Eleven of Plaintiffs' Complaint.

*Count Twelve: Georgia's Uniform Deceptive Trade Practices Act*

Georgia's Uniform Deceptive Trade Practices Act ("GUDTPA") provides that "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."  Ga. Code Ann. § 10-1-373(a).  Georgia Plaintiff does not dispute the fact that the "sole remedy available under the [GUDTPA] is injunctive relief."  *Moore-Davis Motors, Inc. v. Joyner*, 556 S.E.2d 137, 140 (Ga. Ct. App. 2001).  As such, the GUDTPA provides relief from future wrongful conduct and does not rectify past injuries.  *See, e.g., Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002).

Georgia Plaintiff has already repaired the alleged coolant tube defect in his vehicle and does not suggest that he will experience future wrongful conduct.  Instead, without citing any authority, Georgia Plaintiff argues that currently unnamed class members could suffer harm

absent injunctive relief.  This argument fails.  An individual that has only suffered past harm, even when he brings his claim on behalf of a putative class of plaintiffs, fails to state a claim under the GUDPTA.  *See Bolinger v. First Multiple Listing Serv., Inc*., No. 2:10-CV-211-RWS, 2012 U.S. Dist. LEXIS 5767, at \*65 (N.D. Ga. Jan. 18, 2012); *Terrill*, 753 F. Supp. 2d at 1291–92; *see also J&R Mktg*., 549 F.3d at 390.

Because Georgia Plaintiff does not allege any future harm that he will likely experience, an injunction is not warranted and Georgia Plaintiff fails to state a claim under the GUDTPA. The Court **GRANTS** PCNA's motion to dismiss Count Twelve of Plaintiffs' Complaint.

*Count Thirteen: Unjust Enrichment (Georgia)*

In Georgia, unjust enrichment is an equitable concept that applies when, in the absence of a legal contract, one party has conferred a benefit on the opposing party for which it should be compensated.  *Wachovia Ins. Servs., Inc. v. Fallon*, 682 S.E.2d 657, 665 (Ga. Ct. App. 2009).  A party is precluded from pursuing an unjust enrichment claim where a valid contract governs the subject matter in dispute.  *Tuvim v. United Jewish Cmty., Inc*., 680 S.E.2d 827, 829–30 (Ga. 2009); *Goldstein v. The Home Depot, U.S.A., Inc*., 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009). When a consumer seeks compensation for a defective product that failed, the warranty covers the subject matter in dispute and an unjust enrichment claim does not lie.  *See, e.g., Terrill*, 753 F. Supp. 2d at 1291.  A plaintiff cannot use an unjust enrichment claim to alter or expand the terms of an express warranty that covers the product that is the subject of his or her claim.  *Id*.

Georgia Plaintiff's Cayenne is subject to the terms of the 2005 Warranty.  The 2005 Warranty defines PCNA's obligation to reimburse consumers for parts that are defective in material or workmanship.  (ECF No. 62-5, at 6 ("[PCNA] will repair or replace with a new or

64

remanufactured part . . . any factory-installed part that is defective in material or workmanship under normal use . . . Warranty repairs will be made free of charge for parts and labor at an authorized Porsche dealership.").)  Georgia Plaintiff argues that, because his vehicle contained a part that is defective in material, he is entitled to recoup some of the cost that he paid for his vehicle or obtain reimbursement for the cost of repairing and replacing the defective part. Allowing such recovery would effectively expand the duration and scope of the 2005 Warranty, which is not an appropriate use of an unjust enrichment claim.  *See Terrill*, 753 F. Supp. 2d at 1291.

Georgia Plaintiff's sole argument regarding the 2005 Warranty's application to this case is that he is entitled to plead his unjust enrichment claim in the alternative to his "warranty-based" claims.  (ECF No. 77, at 88.)  This argument is not well taken.  A plaintiff may bring an unjust enrichment claim in the alternative to a breach of contract claim if and only if the validity or existence of the subject contract is in dispute.  *See Terrill*, 753 F. Supp. 2d at 1291 (citing *Goldstein*, 609 F. Supp. 2d at 1347).  Georgia Plaintiff does not contend that the validity or existence of the Cayenne's express warranty, which defines PCNA's obligation to reimburse consumers for defective parts, is in dispute in this case.  That Georgia Plaintiff  "makes no concessions regarding the validity of PCNA's warranty" or that he also asserts a claim for breach of implied warranty does not alter this conclusion.  (ECF No. 77, at 88.)

Even if the 2005 Warranty did not cover the subject matter of Georgia Plaintiff's unjust enrichment claim, his claim is fatally flawed.  In Georgia, a plaintiff bringing a claim for unjust enrichment must have acted "with the expectation that the other will be responsible for the cost." *Morris v. Britt*, 620 S.E.2d 422, 424 (Ga. Ct. App. 2005).  Allegations that one party "engaged in

65

a wrongful act and profited by it, and that that profit came partially at the expense of Plaintiff . . . is not the basis for a claim of unjust enrichment." *Hernandez Auto Painting & Body Works, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. CV408-256, 2009 U.S. Dist. LEXIS 83669, at *16 (S.D. Ga. Sept. 14, 2009). If the Warranty did not cover the subject matter of Georgia Plaintiff's claim, then he would have had no basis to expect that PCNA would be responsible for his costs. The gravamen of Georgia Plaintiff's claim would simply be that PCNA engaged in a wrongful act and profited at his expense, which is insufficient to support a claim for unjust enrichment in Georgia. *See id.*; *see also Terrill*, 753 F. Supp. 2d at 1291.

The Court finds that Georgia Plaintiff fails to state a claim for unjust enrichment. Accordingly, the Court **GRANTS** PCNA's motion to dismiss Count Thirteen of Plaintiffs' Complaint.

## F. ILLINOIS

Illinois Plaintiff Scott Florez purchased a 2004 Cayenne in 2009 from an unidentified seller. In 2011, the plastic coolant tubes in Illinois Plaintiff's vehicle failed and rendered his vehicle disabled. Illinois Plaintiff paid to repair his vehicle and now brings claims for violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, and for unjust enrichment under Illinois law. PCNA moves to dismiss both claims.

*Count Fourteen: Illinois Consumer Fraud and Deceptive Practices Act*

The ICFA proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." 815 Ill. Comp. Stat. 505/2. The Illinois Supreme Court has held that a plaintiff may recover under the ICFA for unfair as well as deceptive conduct. *Robinson v. Toyota Motor*

*Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002).

Illinois Plaintiff purports to bring claims for both unfair conduct and deceptive practices under the ICFA. This distinction is important because claims for "unfairness" need only meet the notice pleading standard of Rule 8(a), while claims for "deceptive practices" must meet the heightened pleading standard of Rule 9(b). *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech Fin. Servs.,* 536 F.3d 663, 670 (7th Cir. 2008); *Greenberger v. Geico Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).

The Court finds that Illinois Plaintiff has asserted a claim for deceptive practices only. Other courts have recognized that a plaintiff cannot rely on the same allegations to plead both deceptive and unfair practices. *See, e.g., Pirelli Armstrong Tire Corp. v. Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *7 (N.D. Ill. Feb. 18, 2010) ("[I]f adding an allegation of unfairness to every allegation of fraud required a fall-back to the more relaxed pleading standard under Rule 8(a), then all consumer fraud cases would be pleaded with these words and be subject to the less stringent standard."), *aff'd*, 631 F.3d 436 (7th Cir. 2011). Instead, courts look to the gravamen of the complaint; if the allegations are predicated upon concealment, omission, or misrepresentation, the complaint is grounded in fraud and Rule 9(b) applies. *Id.* at *6; *Pirelli*, 631 F.3d at 446–47 ("[T]he dictates of Rule 9(b) apply to allegations of fraud, not claims of fraud.").

Here, Illinois Plaintiff's allegations are grounded in fraud, and he does not advance any allegations of unfair conduct that are distinct from his allegations of fraudulent misrepresentations and omissions. *See* ECF No. 35 ¶ 5 ("[PCNA's] uniform failure to disclose this defect constitutes both an actionable misrepresentation and an unfair, unlawful, fraudulent and deceptive business practice . . . ."). *Compare Pirelli*, 631 F.3d at 447 (finding that the plaintiff's allegations of

"unfair conduct" were really those of "fraud predicated on either a misrepresentation or an omission") *with Demitro v. Gen. Motors Acceptance Corp.*, 902 N.E.2d 1163, 1168–69 (Ill. App. Ct. 2009) (holding that the plaintiff stated a claim for unfair practices under the ICFA where the defendant allegedly repossessed a vehicle by mistake but refused to return it until the plaintiff paid his outstanding balance).  Illinois Plaintiff's attempt to evade the pleading requirements of Rule 9(b) therefore fails.

The Court turns to Illinois Plaintiff's allegations of deceptive acts.  To plead an ICFA claim based on deceptive acts, a plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damages to the plaintiff (5) proximately caused by the deception.  *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002).

The Illinois Supreme Court has unequivocally stated that a plaintiff cannot demonstrate proximate cause under the ICFA where there has been no communication between the plaintiff and the defendant.  *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009).  The *De Bouse* court found that statements and omissions are actionable under the statute only where the defendant made a direct statement to the plaintiff and misrepresented or omitted some material fact from that statement.  *Id*. at 316.  The court stated:

> [W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause.

*Id*.

Because Rule 9(b) applies to claims of deceptive acts, courts interpreting *De Bouse* have

dismissed ICFA claims in which the plaintiff failed to identify the specific communication that took place between the parties and on which the plaintiff allegedly relied. *See, e.g., Shailja Gandhi Revocable Trust v. Sitara Capital Mgmt., LLC*, No. 09 C 3141, 2011 U.S. Dist. LEXIS 19784, at \*16–17 (N.D. Ill. Feb. 25, 2011) (dismissing ICFA claim where "the plaintiffs have failed to plead that they actually read or heard any of the alleged misrepresentations"); *Ciszerski v. Denny's Corp.*, No. 09 C 5355, 2010 U.S. Dist. LEXIS 34132, at \*9 (N.D. Ill. Apr. 7, 2010) ("Because [plaintiff] identifies no communication that he received that was generated by Denny's, he has failed to plead the circumstances constituting the fraud with the particularity required by Rule 9(b)."); *Thompson's Gas & Elec. Serv. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010). Here, although Plaintiffs (and Illinois Plaintiff by incorporation) cite seven specific statements that Defendants allegedly made, these allegations are fatally flawed under Rule 9(b) because Plaintiffs failed to provide the time, place, and general circumstances under which such statements were made. *See supra* Section III(B). Illinois Plaintiff's allegation that he "did rely on such misrepresentations or [was] deceived," (ECF No. 35 ¶ 348), without more, does not cure this deficiency. *See, e.g., Cataldo*, 676 F.3d at 551; *Culy*, 2012 WL 2071804, at \*6–7. The Court therefore **GRANTS** PCNA's motion to dismiss Count Fourteen of Plaintiffs' Complaint to the extent that it is premised upon alleged affirmative misrepresentations.

The issue for this Court is whether, after *De Bouse*, PCNA's act in distributing the Cayenne for sale constitutes a "statement" for purposes of the ICFA that the vehicle is safe for its ordinary intended use. The Court finds that it does. The Illinois Supreme Court appeared to accept essentially the same argument in *Connick v. Suzuki Motor Co.*, in which the defendant allegedly withheld from consumers the fact that its vehicles contained a design defect that made

them susceptible to rollover.  675 N.E.2d 584, 587–88 (Ill. 1996).  The plaintiffs alleged, *inter
alia*, that the defendant "committed consumer fraud based on the mere sale of the [subject
vehicle] without disclosure of the safety risks, in that the offering for sale of a consumer product
constitutes a representation that the product is reasonably safe for its intended use, " and that the
plaintiffs would not have purchased the subject vehicles had they known of the safety risk.  *Id*. at
595 (internal citations omitted).  The court found that the plaintiffs stated a claim under the ICFA
based on a material omission by the defendant.  *Id*.

The *De Bouse* court later clarified this holding, stating that the *Connick* plaintiffs satisfied
the direct communication requirement under the statute because they received communications
from the defendant that contained "both misleading statements and material omissions."  *De
Bouse*, 922 N.E.2d at 316.  The court reiterated its holding that "[a] consumer cannot maintain an
action under the [ICFA] when the plaintiff does not receive, directly or indirectly, communication
or advertising from the defendant."  *Id*.  The court then went on, however, to consider the
question of whether "the act of offering a product for sale in Illinois is a representation that the
product is reasonably safe for its intended and ordinary use, such that a failure to disclose risks is
a violation of the Act."  *Id*. at 317.  The issue in *De Bouse* was whether a defendant drug
manufacturer had concealed the fact that its drug was unsafe; the court discussed the unique
concerns that drug manufacturers face in certifying that any drug will be reasonably safe for all
patients and concluded that the sale of a prescription medication does not constitute a
"representation" under the ICFA.  *Id*. at 318.  The court limited its holding to the drug context and
left open the question in the context of the sale of other products.  *See id*.

Given the Illinois Supreme Court's holding in *Connick* and the fact that vehicles can be

manufactured in a condition that is reasonably safe for all consumers, the Court finds that PCNA's distribution of the Cayenne constitutes a statement under the ICFA that the vehicles were safe for their ordinary, intended use.  *See Connick*, 675 N.E.2d at 595; *cf. De Bouse*, 922 N.E.2d at 316.  Plaintiffs (and Illinois Plaintiff by incorporation) have alleged facts sufficient to support an inference that the alleged coolant tube defect presents a safety risk to consumers; thus, Illinois Plaintiff has sufficiently alleged an actionable misrepresentation under the ICFA.  Similar to the *Connick* plaintiffs, Illinois Plaintiff alleges that he would not have purchased a Cayenne had he known of the alleged defect.  *See Connick*, 675 N.E.2d at 595; *cf. White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 550 (Ill. App. Ct. 2006).  The Court finds that this allegation satisfies the statute's proximate cause requirement at this stage of the litigation.  *See Connick*, 675 N.E.2d at 595.

Because the *Connick* court affirmed the reinstatement of the plaintiffs' class action claim on behalf of all "residents of Illinois" who purchased the subject vehicle, *see id.* at 587–88, and because the alleged omission in this case is not directly tied to a specific transaction, the Court declines to dismiss Illinois Plaintiff's claim on the ground that he failed to allege that he purchased his Cayenne in Illinois.  The Court finds that Illinois Plaintiff's residency in the state is sufficient to establish a geographic link under the statute based on the facts of this case.  *See id*.

The Court finds that Illinois Plaintiff states a claim under the ICFA premised on PCNA's alleged failure to disclose a safety risk to consumers.  Accordingly, the Court **DENIES** PCNA's motion to dismiss these allegations.  The Court **GRANTS IN PART** and **DENIES IN PART** PCNA's motion to dismiss Count Fourteen of Plaintiffs' Complaint.

*Count Fifteen: Unjust Enrichment (Illinois)*

71

Illinois Plaintiff brings a claim for unjust enrichment in the alternative to Plaintiffs' breach of express warranty claim (Count One).  Illinois Plaintiff offers the same theory regarding unjust enrichment that his co-plaintiffs offer—specifically, that PCNA was unjustly enriched by overcharging Illinois Plaintiff for his vehicle and obtaining revenues from the replacement parts that Illinois Plaintiff purchased.  The Court finds that Illinois Plaintiff fails to state a claim for unjust enrichment.

Illinois courts adhere to the general rule that, where a valid contract covers the subject matter in dispute, an unjust enrichment claim is not appropriate.  *Prima Tek II, LLC v. Klerk's Plastic Indus.,* 525 F.3d 533, 541 (7th Cir. 2008).  A plaintiff cannot use an unjust enrichment claim to unilaterally alter the terms of a valid contract.  *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011–12 (7th Cir. 1985); *see also Indus. Truck Serv. Co. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1003 (Ill. App. Ct. 1982) (dismissing an unjust enrichment claim because the "[p]laintiff's attempt here to bring a quasi-contract action is nothing more than an attempt to unilaterally amend the agreement in a manner prohibited by the agreement"); *accord Ball v. Sony Elecs., Inc*., No. 05-C-307-S, 2005 WL 2406145, at *6 (W.D. Wisc. Sept. 28, 2005) ("Unjust enrichment is not a mechanism for supplementing that which a purchaser perceives as inadequate contractual remedies.").

In determining whether a contract precludes an unjust enrichment claim, courts consider the subject matter of the contract and not the specific terms or provisions of that contract.  *Duffy v. Ticketreserve, Inc*., 772 F. Supp. 2d 977, 993 (N.D. Ill. 2010); *Ramirez v. Gen. Elec. Co.*, No. 3:08cv636, 2008 WL 4696118, at *2 (D. Conn. Oct. 21, 2008) (interpreting Illinois law); *Doll*, 814 F. Supp. 2d at 551 (same).  In *Ramirez*, for example, the plaintiffs alleged that the defendant

72

manufactured a product with a design defect and failed to disclose that defect to consumers.  2008 WL 4696118, at *1.  The court refused to dismiss the plaintiff's ICFA claim but dismissed the unjust enrichment claim, finding that the product's warranty—which defined the manufacturer's obligation to consumers with respect to "defects in material or workmanship"—covered the subject matter at issue.  *Id*. at *2.  The court rejected the plaintiff's argument that the warranty did not apply to his claim for a design defect, stating that the warranty "defined the relationship of the parties with respect to the subject matter on which the [unjust enrichment] claim rests."  *Id*. at *2; *see also Doll*, 814 F. Supp. 2d at 551 (dismissing an Illinois plaintiff's unjust enrichment claim because he did not dispute the defendant's contention that the product's express warranty governed the subject matter of his claim).

Here, Illinois Plaintiff argues that he is entitled to recover a portion of the price that he paid for his vehicle and/or the cost of repairing his vehicle because the vehicle contained a part—allegedly defective in material—that failed outside of the Warranty Period.  The 2004 Warranty defines PCNA's obligation to consumers regarding parts that are "defective in material or workmanship."  (ECF No. 62-3, at 7.)  Allowing Illinois Plaintiff's claim to proceed would effectively expand the scope and/or duration of the 2004 Warranty, which is not an appropriate purpose of an unjust enrichment claim.  *See Ramirez*, 2008 WL 4696118, at *2; *First Commodity Traders, Inc*., 766 F.2d at 1011–12.

Illinois Plaintiff does not dispute the fact that the 2004 Warranty covers the subject matter of his unjust enrichment claim.  Instead, Illinois Plaintiff argues that he may bring an unjust enrichment claim "despite any seemingly inconsistent allegations concerning PCNA's written warranty."  (ECF No. 77, at 97.)  As discussed in conjunction with Georgia Plaintiff's claim, this

73

argument would only be relevant if the validity or existence of the 2004 Warranty (and not Georgia Plaintiff's likelihood of recovering under that Warranty) were in dispute. *See, e.g., Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 U.S. Dist. LEXIS 910, at *18 (N.D. Ill. Jan. 17, 2002) (allowing an unjust enrichment claim to proceed alongside a breach of warranty claim where there existed "a good faith dispute" as to whether the defendant's representations constituted an express warranty under the UCC). Illinois Plaintiff does not argue that any such dispute exists in this case.

There also exists an alternative ground for dismissing Illinois Plaintiff's unjust enrichment claim. Illinois Plaintiff agrees with PCNA that he cannot advance an unjust enrichment claim on the same allegations that underlie his ICFA claim; he argues that he has "pleaded his unjust enrichment claim without incorporating the allegations of fraudulent conduct from his [I]CFA claim . . . and it should be evaluated on its own merits." (ECF No. 77, at 97.) But without these allegations of fraudulent conduct, Illinois Plaintiff does not allege that PCNA engaged in any conduct that would make its retention of the alleged benefits unjust. Because a plaintiff cannot assert a claim for unjust enrichment in Illinois without alleging that "the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience," *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc*., 545 N.E.2d 672, 679 (Ill. 1989), dismissal of Illinois Plaintiff's unjust enrichment claim is also proper on this ground.

The Court finds that Illinois Plaintiff fails to state a claim for unjust enrichment. Accordingly, the Court **GRANTS** PCNA's motion to dismiss Count Fifteen of Plaintiffs' Complaint.

### G. MICHIGAN

Michigan Plaintiff Kyle Hoffecker purchased a 2006 Cayenne from an unidentified seller.

The coolant tubes in Michigan Plaintiff's vehicle cracked in 2011, and his vehicle was rendered disabled.  Michigan Plaintiff paid to repair his vehicle and now brings claims for strict product liability, breach of implied warranty under the UCC, violations of Michigan's Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq*., and negligence.  PCNA moves to dismiss all claims.

*Count Sixteen: Strict Product Liability (Michigan)*

Michigan Plaintiff seeks to recover damages under a theory of strict product liability. PCNA argues, and the Court agrees, that the economic loss doctrine bars Michigan Plaintiff's strict liability claim.

Michigan's highest court has recognized the economic loss doctrine.  *See Neibarger v. Universal Coops., Inc*., 486 N.W.2d 612, 615 (Mich. 1992).  In *Neibarger*, the Michigan Supreme Court held that the plaintiff (a dairy farmer) could not pursue a negligence claim against the defendant (a contractor) for damages allegedly caused by a defective milking system that the defendant had designed and installed.  *See id*. at 613–15.  The court found that the plaintiff had suffered only economic loss in the form of "frustrated expectations because the product he bought was not working properly" and that the damages could have been addressed in the parties' agreement. *Id*. at 615.  The court distinguished the plaintiff's case from those cases involving "unanticipated personal injury," which has "traditionally been remedied by the law of torts."  *Id*. The court concluded that "where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC."  *Id*. at 618.

Michigan Plaintiff highlights the *Neibarger* court's "commercial purposes" language and

75

argues that his status as an individual consumer precludes application of the economic loss doctrine in this case. This argument fails. Although some courts initially interpreted *Neibarger* as standing for the proposition that the economic loss doctrine bars tort claims of commercial—and not individual—purchasers, Michigan courts now recognize that the doctrine applies with equal force to individual purchasers. *See Sherman v. Sea Ray Boats*, 649 N.W.2d 783, 790 (Mich. Ct. App. 2002). In *Sherman*, a Michigan court of appeals found that the economic loss doctrine barred an individual plaintiff's tort claim against a boat manufacturer when a defect in the boat allegedly caused it to decay earlier than the plaintiff expected. *Id*. The court expressly rejected the plaintiff's argument that "the economic loss doctrine applies only to 'commercial' or 'non-consumer transactions' " and concluded that the principles underlying the doctrine apply equally to claims brought by individual consumers. *Id*. at 788. Because the individual plaintiff in *Sherman* sought to recover only the loss of her economic expectation in the product, her remedy sounded in contract and her tort claim could not survive. *Id*. at 790. Michigan district courts have since found that *Sherman* effectively expanded the reach of the economic loss doctrine to individual consumers in Michigan. *See State Farm Fire & Cas. Co. v. Conair Corp.*, No. 11-10237, 2011 U.S. Dist. LEXIS 68921, at *11–12 (E.D. Mich. June 27, 2011) ("*Sherman*'s application of the economic loss doctrine to a consumer transaction, though lacking the controlling force of a Michigan Supreme Court ruling, nonetheless serves as datum for ascertaining state law . . . ." (internal citations omitted)).[14]

_____

[14]*See also Murphy v. Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 602 (E.D. Mich. 2010) (citing *Sherman* and holding that "the economic loss doctrine applies to consumer transactions"); *Safeco Ins. Co. of Am. v. CPI Plastics Group, Ltd.*, 625 F. Supp. 2d 508, 511 (E.D. Mich. 2008) ("[C]ourts of appeals in Michigan have expanded the scope of the economic loss doctrine to transactions made by consumers . . . .").

The Court finds that *Sherman* mandates dismissal of Michigan Plaintiff's strict liability claim. *Sherman* is well reasoned and addresses the exact issue that is currently before this court; thus, it is datum for ascertaining state law absent persuasive evidence to the contrary. *See West*, 311 U.S. at 237. Such persuasive evidence does not exist in this case. The *Sherman* court analyzed the roots of the economic loss doctrine in Michigan and cited extensively to the Michigan Supreme Court's earlier decision in *Hart v. Ludwig*, 79 N.W.2d 895 (Mich. 1956), the principles of which "evolved into the economic loss doctrine." *Sherman*, 649 N.W.2d at 786–89. The *Sherman* court found that these principles, such as the analysis of whether a duty arose in tort that was separate and distinct from a contractual duty, were not premised on or affected by the relationship of the parties. *Id*. at 787. The court concluded that the principles underlying the *Neibarger* court's decision to bar a commercial plaintiff's tort claim applied with equal force where an individual consumer sought to recover purely economic loss in tort. *Id*. at 790. *Sherman* is therefore consistent with *Hart* and does not contradict *Neibarger* on this point.

Michigan Plaintiff does not offer any persuasive authority to the contrary. Michigan Plaintiff points to *Blackward v. Simplex Products Division* for the proposition that the economic loss doctrine does not apply to individual consumers. No. 221066, 2001 Mich. App. LEXIS 1940, at *1–2 (Mich. Ct. App. Oct. 19, 2001). But *Blackward* preceded *Sherman* and is therefore unpersuasive on this point. Michigan Plaintiff also argues that "when a defect is safety-related, tort principles come into play" but do not cite any cases in which courts accepted this argument when only product damage (and not personal injury or damage to other property) was alleged. (ECF No. 77, at 156.) *Compare Sherman*, 649 N.W.2d at 790 (stating that, where a plaintiff seeks only economic loss and not damages for physical injury, "tort concerns with product safety

77

no longer apply, and economic expectation issues prevail") *with Safeco*, 625 F. Supp. 2d at 511

(finding that, where a defective product started a fire that destroyed the plaintiff's home, the

plaintiff had been "injured in a manner that is traditionally considered in tort and not in contract"

and the economic loss doctrine did not apply). Finally, Michigan Plaintiff argues that the

economic loss doctrine does not apply where the parties are not in privity, but "that theory has

been rejected by both Michigan and federal courts." *Murphy*, 695 F. Supp. 2d at 606; *see also*

*Citizens Ins. Co. v. Osmose Wood Preserving, Inc.*, 585 N.W.2d 314, 316 (Mich. Ct. App. 1998).

     The Court finds that the economic loss doctrine bars Michigan Plaintiff's strict product

liability claim. Accordingly, the Court **GRANTS** PCNA's motion to dismiss Count Sixteen of

Plaintiffs' Complaint.

*Count Seventeen: Implied Warranty Under the UCC (Michigan)*

     Michigan Plaintiff, like many of his co-plaintiffs, brings a claim for breach of the implied

warranty of merchantability under the UCC. PCNA does not offer any arguments specific to

Michigan Plaintiff's claim and adopts only those arguments that it advanced in connection with

Plaintiffs' Magnuson-Moss claim—specifically, that all implied warranties had expired by the

time the alleged defect manifested in Michigan Plaintiff's vehicle. The Court rejected these

arguments in Section IV(A)(2)(b) of this Opinion and Order (Count One) and found that Plaintiffs

had sufficiently alleged facts to suggest that the durational limitation on all implied warranties

was unconscionable. *See supra* Section IV(A)(2)(b) (Count One).

     The Court finds that Michigan Plaintiff states a claim for breach of the implied warranty

of merchantability. Accordingly, the Court **DENIES** PCNA's motion to dismiss Count

Seventeen of Plaintiffs' Complaint.

78

*Count Eighteen: Michigan's Consumer Protection Act*

The Michigan Consumer Protection Act ("MCPA") proscribes certain "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903(1). Affirmative misrepresentations, such as misrepresenting the quality or characteristics of a product, and material omissions, such as failing to reveal a material fact in such a way as to mislead or deceive a consumer, are included within the definition of "unfair, unconscionable, or deceptive" acts under the MCPA. *Id*. §§ 445.903(1)(d) & (s). One party's failure to provide the promised benefits of a transaction also constitutes an unlawful act under the MCPA. *Id*. § 445.903(y).

Michigan courts allow consumers to bring MCPA claims premised on theories of fraud and/or breach of implied warranty. *See Mikos v. Chrysler Corp.*, 404 N.W.2d 783, 785 (Mich. Ct. App. 1987); *Zanger v. Gulf Stream Coach, Inc.*, No. 05-72300, 2005 WL 3416466, at *11 (S.D. Mich. Dec. 15, 2005). Rule 9(b)'s heightened pleading requirements apply to MCPA allegations of fraudulent conduct but not allegations of breach of implied warranty. *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011).

Michigan Plaintiff alleges that PCNA violated the MCPA by breaching the implied warranty of merchantability under the UCC and by making deceptive representations and omissions regarding the quality of the Cayenne. The Court finds that Michigan Plaintiff states an MCPA claim on theories of breach of implied warranty and failure to disclose material facts to consumers. Michigan Plaintiff's allegations regarding affirmative representations are not actionable under the MCPA.

The Court first addresses Michigan Plaintiff's allegations regarding affirmative

representations. Plaintiffs bringing MCPA claims must establish that they relied on the defendant's deceptive conduct to their detriment. *See In re OnStar Contract Litig.*, 278 F.R.D. 352, 378 (E.D. Mich. 2011) (stating that there is "no dispute" that individuals asserting MCPA claims "must establish reliance"); *Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006) (dismissing a plaintiff's MCPA claim premised on allegations of fraud because the plaintiff failed to identify the specific statements on which he relied). Michigan Plaintiff does not allege or argue that he heard, saw, had access to, or was aware of any of PCNA's purported misrepresentations. These allegations therefore cannot form the basis of a MCPA claim. *See Williams*, 2006 WL 2077588, at *7.

Michigan Plaintiff incorrectly cites *Dix v. American Bankers Life Assurance Co. of Florida*, 415 N.W.2d 206 (Mich. 1987), for the proposition that he may demonstrate reliance under the MCPA by demonstrating that a reasonable person would have relied on PCNA's alleged conduct even if he, himself, did not. In *Dix*, the plaintiffs purchased annuity policies from the defendants and later alleged that the defendants had acted deceptively in the sale of said policies. *Id.* at 207. The plaintiffs brought an MCPA claim on behalf of a putative class of individuals that had purchased similar policies from the defendants. *Id.* The court held that plaintiffs bringing putative class actions need not prove that each unnamed class member individually relied on the alleged conduct; instead, the court allowed the plaintiffs to demonstrate reliance on a representative basis by establishing that a reasonable person would have relied on the alleged conduct. *See id.* The *Dix* court's holding does not relieve plaintiffs bringing MCPA claims of their obligation to plead individual reliance. *See OnStar*, 278 F.R.D. at 378 (acknowledging *Dix* but finding that individual plaintiffs must still establish reliance under the

MCPA; to hold otherwise would improperly allow a class action to "abridge, enlarge or modify

[a] substantive right" (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011))); *see*

*also J&R Mktg.*, 549 F.3d at 390.  Michigan Plaintiff's allegations of affirmative

misrepresentations are fatally flawed in this respect.  The Court **GRANTS** PCNA's motion to

dismiss Count Eighteen of Plaintiffs' Complaint to the extent that it is premised on allegations of

affirmative misrepresentations.

   The Court next address Michigan Plaintiff's claim for breach of implied warranty under

the MCPA.  For the reasons set forth in Section IV(G) of this Opinion and Order (Count

Seventeen), the Court finds that Michigan Plaintiff states a claim for breach of implied warranty

under Michigan law.  *See supra* Section IV(G) (Count Seventeen).  Michigan Plaintiff therefore

states a claim for breach of implied warranty under the MCPA.  *See Zanger*, 2005 WL 3416466,

at *11.

   The Court similarly finds that Michigan Plaintiff's allegations regarding PCNA's failure

to disclose material facts are actionable under the MCPA.  The MCPA proscribes "[f]ailing to

reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which

fact could not reasonably be known by the consumer."  Mich. Comp. Laws § 445.903(1)(s).  This

language mirrors the test that California courts employ in interpreting California's consumer

protection statute.  *Compare* Mich. Comp. Laws § 445.903(1)(s) *with Daugherty*, 51 Cal. Rptr. 3d

at 126.  PCNA cites *Daugherty* and argues that "failing to disclose that [a defendant's] products

may require repair after expiration of the warranty period" is not an actionable omission under the

MCPA.  (ECF No. 62, at 101.)  But the Court rejected this argument in Section IV(B) of this

Opinion and Order (Count Two) and found that California Plaintiffs had sufficiently alleged facts

to suggest that PCNA violated a duty to disclose under *Daugherty*.  *See supra* Section IV(B) (Count Two).  PCNA cites no Michigan authority that would put such a general failure to disclose outside the reach of the MCPA.

Similarly, PCNA cites no Michigan authority to negate the conclusion that Michigan Plaintiff has sufficiently pleaded causation.  Michigan Plaintiff asserts that he had no way to discover the alleged defect on his own and that knowledge of the alleged defect would have altered his individual buying decision.  The Court finds that these allegations are sufficient to establish that Michigan Plaintiff relied on PCNA's silence to his detriment.

PCNA's final argument is that Michigan Plaintiff fails to establish that PCNA acted with the requisite intent under the MCPA.  The Court disagrees.  For the reasons set forth in Section III(B) of this Opinion and Order, the Court finds that Plaintiffs have pleaded facts suggesting that PCNA had knowledge of the alleged defect at all times relevant and failed to disclose the defect to consumers.  *See supra* Section III(B).  These pleaded facts support an inference that PCNA acted with the requisite intent to deceive.  *Cf. Rodriguez v. Berrybrook Farms, Inc*., No. K86-161, 1990 U.S. Dist. LEXIS 7678, at *39–40 (W.D. Mich. June 20, 1990) (holding that, where the plaintiffs failed to show that the defendant authorized or had knowledge of the alleged conduct, the plaintiffs failed to demonstrate that the defendants acted with an intent to deceive).

The Court finds that Michigan Plaintiff states a claim for violations of the MCPA based on theories of breach of implied warranty and failure to disclose material facts to consumers but not affirmative misrepresentations.  Accordingly, the Court **DENIES** PCNA's motion to dismiss these allegations.  The Court **GRANTS IN PART** and **DENIES IN PART** PCNA's motion to dismiss Count Eighteen of Plaintiffs' Complaint.

82

*Count Nineteen: Negligence (Michigan)*

Michigan Plaintiff argues that PCNA negligently designed and/or manufactured the Cayenne in such a way as to cause harm to Michigan Plaintiff. The parties do not offer any arguments in addition to those that they advanced in connection with Michigan Plaintiff's strict liability claim.

For the reasons set forth in Section IV(G) of this Opinion and Order, the Court finds that the economic loss doctrine precludes Michigan Plaintiff from advancing a tort claim in this case. *See supra* Section IV(G) (Count Sixteen). The economic loss doctrine therefore bars Michigan Plaintiff's negligence claim, and the Court **GRANTS** PCNA's motion to dismiss Count Nineteen of Plaintiffs' Complaint.

## H.  NEW JERSEY

New Jersey Plaintiffs Daniel Delgado, Richard Gorospe, and Nicholas Spagnoletti purchased Cayennes that came equipped with plastic coolant tubes. Plaintiffs Delgado and Gorospe purchased their vehicles (Delgado purchased a 2004 model and Gorospe a 2005 model) from used car dealerships in 2009, and both experienced problems with their coolant tubes in 2010. Both Delgado's and Gorospe's Cayennes were leaking coolant but had not actually failed at the time they replaced the plastic coolant tubes with aluminum pipes. Plaintiff Spagnoletti purchased a certified pre-owned Cayenne (model year 2004) from an authorized Porsche dealership in 2010 and preemptively replaced the plastic coolant tubes with aluminum pipes at the suggestion of his mechanic. New Jersey Plaintiffs now bring claims for violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §56:8-1 *et seq*., and for breach of the implied warranty of merchantability. PCNA moves to dismiss both claims.

*Count Twenty: New Jersey's Consumer Fraud Act*

Under the NJCFA, it is unlawful for any person to knowingly conceal, suppress, or omit material facts in connection with the sale or advertisement of merchandise.  N.J. Stan. Ann. § 56:8-2.  The NJCFA provides a claim for relief to "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act."  *Id*. § 56:8-19.  To state a claim under the NJCFA, a plaintiff must allege that (1) the defendant engaged in unlawful conduct, (2) the plaintiff suffered an ascertainable loss and (3) a causal relationship exists between the defendant's unlawful conduct and the plaintiffs' ascertainable loss.  *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007) (per curiam).

PCNA argues that New Jersey Plaintiffs' fail to demonstrate "ascertainable loss" under the NJCFA.  The Court agrees and finds that New Jersey Plaintiffs fail to state a claim for violations of the NJCFA.

New Jersey courts have held that a plaintiff cannot demonstrate "ascertainable loss" under the NJCFA where the allegedly defective vehicle component outperforms its warranty period.  *Perkins v. Daimler Chrysler Corp.*, 890 A.2d 997, 1005 (N.J. Super. Ct. App. Div. 2006); *see also Nobile v. Ford Motor Co.*, No. 10-1890, 2011 WL 900119, at *6 (D.N.J. Mar. 14, 2011).  The *Perkins* court reasoned that " '[t]he defects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate "loss" that the [NJ]CFA expressly requires for a private claim under the [NJ]CFA, bringing with it the potential for treble damages, attorney's fees, and the court costs and fees.' "  *Perkins*, 890 A.2d at 1004 (citing *Thiedemann v. Mercedes-*

*Benz USA*, 872 A.2d 783, 794 (N.J. 2005)).  The court reasoned that a consumer suffers no ascertainable loss if a part fails within the warranty period and is repaired at no cost to the consumer.  *Id*.  It would be "illogical" for a court to conclude that a consumer suffered ascertainable loss simply because that product outlived its warranty period.  *Id*. at 1004–05.

New Jersey Plaintiffs argue that the *Perkins* rule does not apply where the defendant concealed defects or where the defect presents a safety concern.  This argument is against the weight of authority.  Although the *Perkins* court "offered no view" regarding a safety concerns exception, 890 A.2d at 1004, courts in New Jersey have since found *Perkins*' holding equally persuasive in cases in which safety concerns and/or concealment of defects are alleged.  *See, e.g.*, *Nobile*, 2011 WL 900119 at *6 (applying *Perkins* to deny a NJCFA claim and stating that "it is of no moment that [p]laintiffs allege that [d]efendant concealed defects and allege safety concerns"); *Noble v. Porsche Cars N. Am., Inc*., 694 F. Supp. 2d 333, 337 (D.N.J. 2010) (dismissing a putative class action in which the plaintiffs alleged that their vehicles contained a design defect that caused antifreeze to leak into the engine and stating that "we agree with the Appellate Division's rationale [in *Perkins*] and find its holding just as applicable here, in a case where safety concerns are alleged"); *Duffy v. Samsung Elecs. Am., Inc.*, No. 06-5259, 2007 WL 703197, at *7–8 (D.N.J. Mar. 2, 2007) (dismissing a NJCFA claim for failure to plead ascertainable loss over the plaintiff's argument that the manufacturer "concealed a known safety hazard that could have been corrected during the warranty period").

Similarly, the defendant's knowledge of a defect may be relevant in determining whether that defendant committed an unlawful act, but not whether the plaintiff suffered ascertainable loss.  *See, e.g., Nobile*, 2011 WL 900119, at *6; *Noble*, 694 F. Supp. 2d at 339 n.4; *Duffy*, 2007

WL 703197, at *7–8 (discussing a defendant's knowledge of an alleged defect in terms of the

NJCFA's "unlawful conduct" requirement and concluding that even if the plaintiff had properly

pleaded unlawful conduct, the claim still failed to allege ascertainable loss).  New Jersey

Plaintiffs cite *Maniscalco v. Brother International Corp.,* 627 F. Supp. 2d 494, 502 (D.N.J. 2009),

for the proposition that, where a defendant has knowledge of and conceals a defect, that conduct

is actionable under the NJCFA.  Indeed, the *Maniscalco* court found that the NJCFA is not

"categorically inapplicable" where a seller "knew that its product had a defect which would cause

it to fail before its useful life, and intention concealed that information from the purchaser."  *Id*.

Another New Jersey district court later clarified this holding.  *See Noble*, 694 F. Supp. 2d at 339

n.4.  The *Noble* court found, and this Court agrees, that the *Maniscalco* court reached its

conclusion "in the context of finding that plaintiff sufficiently plead an unlawful act" and did not

fully discuss "whether a plaintiff had sufficiently pled an ascertainable loss."  *Id*.  The *Noble*

court went on to dismiss the plaintiff's claim (on allegations very similar to those alleged here)

because his vehicle had performed adequately under its warranty and he could not demonstrate

ascertainable loss.  *Id*.

    In arguing that *Perkins* does not apply where a defendant concealed defects or failed to

disclose safety concerns, New Jersey Plaintiffs improperly conflate the NJCFA's ascertainable

loss requirement with its unlawful act requirement.  The gist of New Jersey Plaintiffs' argument is

that PCNA had a duty to disclose the alleged defect and that its failure to do so is actionable

conduct.  *See* ECF No. 77, at 37–38 (citing *In re Philips/Magnavox TV Litig.,* No. 09-3072, 2010

U.S. Dist. LEXIS 91343, at *20 (D.N.J. Sept. 1, 2010), for the proposition that a defendant has a

duty to disclose defects that pose a safety risk to consumers).  But the fact that non-disclosure of

safety risks may be unlawful (and thus actionable) conduct in some states does not demonstrate that New Jersey Plaintiffs suffered ascertainable loss under the NJCFA.  The NJCFA requires both an unlawful act *and* ascertainable loss.  New Jersey Plaintiffs cannot demonstrate the latter by merely referencing the former.

The Court finds that New Jersey Plaintiffs fail to state a claim under the NJCFA.  Accordingly, the Court **GRANTS** PCNA's motion to dismiss Count Twenty of Plaintiffs' Complaint.

*Count Twenty-One: Implied Warranty of Merchantability (New Jersey)*

New Jersey Plaintiffs bring a claim for breach of the implied warranty of merchantability under the UCC.  PCNA does not offer any arguments regarding New Jersey Plaintiffs' implied warranty claim in addition to those that it advanced in connection with Plaintiffs' Magnuson-Moss claim.  Specifically, PCNA argues that all implied warranties had expired by the time the alleged defect manifested in New Jersey Plaintiffs' vehicles.  The Court rejected these arguments in Section IV(A)(2)(b) of this Opinion and Order (Count One) and found that Plaintiffs had sufficiently alleged facts to suggest that the durational limitation on all implied warranties was unconscionable.  *See supra* Section IV(A)(2)(b) (Count One).  The Court therefore finds that New Jersey Plaintiffs state a claim for breach of the implied warranty of merchantability.  The Court **DENIES** PCNA's motion to dismiss Count Twenty-One of Plaintiffs' Complaint.

## I.  NEW YORK

New York Plaintiffs Gregory Cadman, Ecliff Jackman, and Dane McIntosh purchased Cayennes that came equipped with plastic coolant tubes.  Plaintiff Cadman purchased a year 2004 certified pre-owned Cayenne in September 2008 from an authorized Porsche dealership in

Connecticut.  The coolant tubes in Plaintiff Cadman's vehicle cracked in 2011, and he paid a mechanic to repair the vehicle in New York.  Plaintiff Jackman purchased a 2005 certified pre-owned Cayenne in 2008 from a Porsche authorized dealership in New York; the coolant tubes in his vehicle began leaking in June 2011, and he paid to repair the vehicle.  Plaintiff McIntosh purchased a used 2004 Cayenne from an unidentified seller in New Jersey in 2008.  The coolant tubes in Plaintiff McIntosh's vehicle began leaking in October 2010, and he paid to have the vehicle repaired in New York.

New York Plaintiffs now bring claims for violations of New York's General Business Law ("NYGBL") § 349 and unjust enrichment.  PCNA moves to dismiss both claims.

*Count Twenty-Two: New York's General Business Law*

Section 349(a) of the NYGBL provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349(a).  The act provides a private claim for relief to "any person who has been injured by reason of any violation of this section."  N.Y. Gen. Bus. Law § 349(h).  The New York Court of Appeals has stated that Section 349 is based on "broad consumer protection concerns" and "contemplates actionable conduct that does not necessarily rise to the level of fraud."  *Gaidon v. Guardian Life. Ins. Co. of Am.*, 725 N.E.2d 598, 603 (N.Y. 1999).

PCNA argues that New York Plaintiffs fail to satisfy the substantive requirements of Section 349 and, alternatively, that Plaintiffs Cadman and McIntosh lack standing to pursue a Section 349 claim.  The Court finds that New York Plaintiffs state a claim for relief under Section 349.

### A.  Substantive Arguments

To state a claim under Section 349, a plaintiff must allege that the challenged act or practice was consumer-oriented, that it was deceptive or misleading in a material way, and that the plaintiff suffered injury as a result of the deceptive act.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995).  The parties dispute whether New York Plaintiffs have sufficiently alleged a deceptive act and/or the requisite causation under the statute.

Deceptive acts under Section 349 can take the form of misrepresentations or omissions.  *Id*. at 744–45.  New York's Court of Appeals has suggested that an omission is deceptive under the statute where the business fails to disclose material information to the consumer:

> In the case of omissions in particular . . . the statute surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation. The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information.

*Id*. at 745.  Courts must examine the challenged act objectively to determine whether the representation or omission is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id*. at 744.

Notwithstanding this "reasonable consumer" standard, plaintiffs bringing Section 349 claims must demonstrate that the allegedly deceptive act caused their injuries.  *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611–12 (N.Y. 2000).  This is a lesser—albeit related—standard than justifiable reliance.  *See id*. (finding that the plaintiffs adequately pleaded causation when they alleged that the defendant's material omission—failing to inform the plaintiff of a $275 transaction fee—caused them to suffer a $275 loss).  The *Stutman* court noted that causation and

89

justifiable reliance are "twin concepts" and that, although plaintiffs must allege that the deceptive conduct "caused" their injury, they need not demonstrate that they justifiably relied on the alleged omission. *Id.* at 612.

Here, New York Plaintiffs allege that PCNA committed deceptive acts by (1) failing to disclose material information from consumers regarding the defective nature of the Cayenne's cooling system and (2) affirmatively misrepresenting the quality of the Cayenne. The Court finds that the former allegations are sufficient to state a Section 349 claim but that the latter allegations cannot survive PCNA's motion to dismiss.

The Court first disposes of New York Plaintiffs' allegations regarding affirmative misrepresentations. Similar to their co-plaintiffs, New York Plaintiffs do not plead any facts suggesting that they saw, heard, or were aware of PCNA's alleged misrepresentations at any relevant time. *See supra* Section III(B). New York Plaintiffs therefore cannot claim that these statements caused their injuries. *See, e.g.*, *Syzmczak*, 2011 U.S. Dist. LEXIS 153011, at *42 (dismissing Section 349 claims in which the plaintiffs did not have access to the alleged misrepresentations and stating that "[a]lthough privity between a buyer and seller is not required for a Section 349 claim, the buyers must still allege receipt of or exposure to the misleading practice or act"); *see also Goshen v. Mut. Life. Ins. Co.*, 774 N.E.2d 1190, 1196 (N.Y. 2002) (stating that, to be actionable, the allegedly deceptive advertisement or promotional package must result in a transaction in which the consumer was harmed). Although causation under Section 349 requires a lesser showing than justifiable reliance, New York Plaintiffs must still identify the specific statements that allegedly "caused" their injuries. *See Syzmczak*, 2011 U.S. Dist. LEXIS 153011, at *42. The Court **GRANTS** PCNA's motion to dismiss Count Twenty-Two of

Plaintiffs' Complaint to the extent it is premised on allegations of affirmative misrepresentations.

The Court reaches the opposite conclusion regarding PCNA's alleged failure to disclose. New York's highest court has suggested that a defendant-manufacturer's failure to disclose material information to consumers is actionable conduct under Section 349. *See Oswego*, 647 N.E.2d at 745; *see also Goshen*, 774 N.E.2d at 1197.  At least two district courts applying Section 349 have allowed claims to proceed where a defendant-manufacturer allegedly failed to disclose material product defects to consumers. *See Szymczak*, 2011 U.S. Dist. LEXIS 153011, at *46 (citing *Oswego* and holding that the plaintiffs adequately stated a claim under Section 349 based on the defendant's failure to disclose a material defect to consumers); *Doll*, 814 F. Supp. 2d at 550 (citing *Oswego* and holding that the plaintiffs adequately pleaded a Section 349 claim when they alleged that "[defendant] misled consumers by withholding material information regarding the defective torque converter, and, as a result, consumers were harmed by high repair and replacement costs").  In *Doll*, the court expressly rejected the defendant's argument that "a warranty is an express acknowledgment of potential defects in the vehicles[; c]onsequently, [defendant] did not mislead their customers since it already disclosed this information."  814 F. Supp. 2d at 546.  The court stated that "a warranty defense is generally unavailable when there are allegations of intentional concealment of a defect or where a defendant has an obligation to disclose the defect."  *Id*.  The Court finds that this reasoning is consistent with the New York Court of Appeal's suggestion in *Oswego* that defendants have a duty to disclose material information to consumers.  *Oswego*, 647 N.E.2d at 745.

The Court recognizes that a New York appellate court's holding in *Against Gravity Apparel, Inc. v. Quarterdeck Corp*. lends support to PCNA's position.  699 N.Y.S.2d 368, 368

(App. Div. 1999) (holding that, where the defendant allegedly knew that its product was not Y2K compliant and failed to disclose this fact to consumers, the defendant did not act deceptively because the product outlived its ninety-day warranty).  *See also Moore v. Microsoft Corp.*, 741 N.Y.S.2d 91, 91 (App. Div. 1999) (affirming dismissal of a plaintiff's complaint when the allegedly defective software came with a user agreement that disclaimed all warranties and "there was no warranty given by the defendant that the software product was error free").  The Court finds, however, that *Against Gravity* is unpersuasive in this case.

First, the *Against Gravity* court did not cite *Oswego* and thus did not distinguish the New York Court of Appeals' language from the facts it confronted.  *See Against Gravity*, 699 N.Y.S.2d at 368.  At least one other federal district court has declined to follow *Against Gravity* due to its lack of substantive analysis.  *See In re OnStar Contract Litig.*, 600 F. Supp. 2d at 870 (stating that *Against Gravity* "provides little analysis" and is not "persuasive support" in favor of dismissing a Section 349 claim).  The other case on which PCNA relies, *Moore v. Microsoft Corp.*, similarly fails to distinguish the Court of Appeals' language in *Oswego*.  *See* 741 N.Y.S.2d at 91.

Second, the *Against Gravity* court did not confront the issue of safety risks.  *See* 699 N.Y.S.2d at 368 (analyzing a product defect claim in which a computer ceased operating).  The issue of safety risks is central to the test that California courts use in assessing deceptive conduct in the product liability context, and this test is analogous to the New York Court of Appeals' language in *Oswego*.  *Compare Doll*, 814 F. Supp. 2d 526, 550 (citing *Oswego* and finding that a defendant's failure to disclose a defect that will manifest post-warranty is actionable under the NYGBL "where a defendant has an obligation to disclose the defect") *with Daugherty*, 51 Cal. Rptr. 3d at 126 (stating that a defendant's failure to disclose defects that will manifest post-

92

warranty is actionable under the CLRA where the defendant had a "duty to disclose").  Indeed, PCNA argues that *Against Gravity* is consistent with *Daugherty* because both courts implicitly found that "consumer protection claims cannot be premised on allegations that a manufacturer/distributor failed to disclose that a product may fail after a warranty expires."  (ECF No. 91, at 49.)  This Court found in Section IV(B) of this Opinion and Order (Count Two) that California Plaintiffs had sufficiently alleged facts to suggest that PCNA violated a duty to disclose under *Daugherty* and therefore acted deceptively for purposes of California's consumer protection statute.  *See supra* Section IV(B) (Count Two).  Given PCNA's own comparison of *Against Gravity* and *Daugherty*, and given the seemingly analogous nature of the tests that California and New York courts employ, the Court is unwilling to apply *Against Gravity* to dismiss New York Plaintiffs' Section 349 claim in this case.

The Court next finds that New York Plaintiffs have sufficiently alleged causation.  New York Plaintiffs allege that the coolant tube defect was material and that knowledge of the defect would have altered their individual buying decisions.  New York Plaintiffs also allege that they were not aware of the alleged defect at the time they purchased their vehicles and that, due to the design and placement of the coolant tubes, they could not have reasonably discovered the defect before they purchased their vehicles.  The Court finds that such allegations are sufficient to support an inference that PCNA's omission caused New York Plaintiffs to suffer injuries in this case.

### B.  Standing – Cadman and McIntosh

The Court next confronts PCNA's argument that New York Plaintiffs Cadman and McIntosh do not have standing to bring a Section 349 claim.  PCNA argues that, because

93

Plaintiffs Cadman and McIntosh purchased their vehicles outside of the state (Connecticut and New Jersey, respectively), they fail to satisfy Section 349's geographic nexus requirement.  The Court rejects these arguments and finds that New York Plaintiffs may pursue a claim for relief under Section 349.

Plaintiffs bringing a Section 349 claim must demonstrate that the allegedly deceptive act or practice has a sufficient geographic nexus to the state.  N.Y. Gen. Bus. Law § 349(a); *Goshen*, 774 N.E.2d at 1195 (N.Y. 2002) ("To apply [Section 349] to out-of-state transactions in the case before us would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law § 349." (citing *Oswego*, 647 N.E.2d at 744–45 (N.Y. 1995))).  The fact that a plaintiff resides in New York is insufficient to establish the requisite geographic nexus; instead, the statute is intended to protect consumers in their transactions that take place in the state.  *Goshen*, 774 N.E.2d at 1196.

New York courts have suggested that Section 349's geographic nexus requirement may be satisfied in one of three ways.  First, a plaintiff has standing under Section 349 if the transaction in which he or she was deceived took place in New York.  *See, e.g., Oswego*, 647 N.E.2d at 743.  Second, even if the deception took place elsewhere, a plaintiff has standing under Section 349 if the transaction in which he or she was actually harmed took place in New York.  *See Goshen*, 774 N.E.2d at 1196 (stating that Section 349 was not "intended to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state").  Finally, at least one New York court has held that a plaintiff has standing under Section 349 when he or she was exposed to deceptive conduct aimed at New York that led to a harmful transaction, even if that

94

transaction took place outside of the state.  *Meachum v. Outdoor World Corp.*, 652 N.Y.S.2d 749, 750 (App. Div. 1997) (finding that, where the plaintiffs executed a contract in Pennsylvania and "much of the purported fraudulent activity occurred in that State," plaintiffs had standing under Section 349 because "defendants engaged in deceptive conduct in New York by mailing misleading literature to New York residents in an attempt to induce them to travel to the defendants' facilities in Pennsylvania").

The Court finds that Plaintiffs Cadman and McIntosh satisfy the geographic nexus requirement under the second scenario.  New York Plaintiffs allege that PCNA violated a general duty to disclose information regarding the Cayenne's coolant system to consumers, and that this conduct caused Plaintiffs Cadman and McIntosh to purchase defective vehicles and have the defect repaired in New York.  The Court finds that this sequence of events is akin to "claims of deceptive acts" that led to "transactions within the state" that the *Goshen* court suggested would satisfy Section 349's geographic nexus requirement.  *See* 774 N.E.2d at 1196.  The Court therefore declines to dismiss Plaintiff Cadman's or Plaintiff McIntosh's claim on standing grounds.

The Court finds that New York Plaintiffs state a Section 349 claim premised on deceptive omissions but not on affirmative misrepresentations.  Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** PCNA's motion to dismiss Count Twenty-Two of Plaintiffs' Complaint.

*Count Twenty-Three: Unjust Enrichment (New York)*

In New York, as in Georgia and Illinois, it is well settled that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."  *Clark-Fitzpatrick,*

*Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *Statler v. Dell*, 775 F. Supp. 2d 474, 485–86 (E.D.N.Y. 2011). Courts interpreting New York state law have found that, in cases involving allegedly defective products, express warranties cover the subject matter at issue and an unjust enrichment claim does not lie. *See Statler*, 775 F. Supp. 2d at 474; *Wiseberg v. Toyota Motor Corp.*, No. 11-3776, 2012 WL 1108542, at *12 (D.N.J. Mar. 30, 2012) (interpreting New York law).

Similar to their co-plaintiffs, New York Plaintiffs argue that they are entitled to recover a portion of the price that they paid for their vehicles and/or the cost of repairing their vehicles because their vehicles contained a part that was defective in material. New York Plaintiffs' vehicles are subject to the terms of the 2004 Warranty (Cadman and McIntosh) and the 2005 Warranty (Jackman), which define PCNA's obligation to reimburse consumers regarding "any factory-installed part that is defective in material or workmanship under normal use." (ECF No. 62-3, at 7; 62-5, at 6.) The Warranties therefore cover the subject matter of New York Plaintiffs' unjust enrichment claim. *See Wiseberg*, 2012 WL 1108542, at *12; *accord Ramirez*, 2008 WL 4696118, at *2.[15] Allowing New York Plaintiffs to proceed with their unjust enrichment claim

---

[15]In response to PCNA's argument that New York Plaintiffs failed to allege a connection between themselves and PCNA, New York Plaintiffs cite *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (App. Div. 2004), for the proposition that a plaintiff need not confer a direct benefit on a defendant in order to state a claim for unjust enrichment under New York law. Regardless of whether New York courts permit recovery in quasi-contract for indirect benefits, *Cox* illustrates why the Warranties bar New York Plaintiffs' claim in this case. In *Cox*, the court permitted the plaintiffs to pursue a theory of unjust enrichment to recover the "artificially inflated prices" that they paid for a product as a result of the defendant's alleged monopolistic conduct. *Id.* at 149. The court noted, however, that such conduct was outside the scope of any "end-user license agreements with [the defendant's] prime customers," which would "insulate" the defendant from "product defect claims." *Id.* *Cox* can be read to suggest that, when the subject matter of the claim is not covered by a contract, that contract will not bar a plaintiff's unjust enrichment claim. *See Cox*, 778 N.Y.S.2d at 149. Where, however, the contract does cover the subject matter of the claim—as in the case of an end-user agreement that would have precluded an unjust

would effectively expand the scope and duration of the 2004 and 2005 Warranties, which is not an appropriate purpose of an unjust enrichment claim. *See Wiseberg*, 2012 WL 1108542, at *12; *Statler*, 775 F. Supp. 2d at 474; *Doll*, 814 F. Supp. 2d at 551 (dismissing two New York plaintiffs' unjust enrichment claims on allegations similar to those alleged here because the plaintiffs did not dispute the defendant's contention that an express contract—a product's warranty—governed the subject matter of their claims).

New York Plaintiffs are not arguing that the Warranties do not cover the subject matter of their claim. Instead, New York Plaintiffs cite *Waldman v. Englishtown Sportswear, Ltd.* for the proposition that "[w]here the express contract has been rescinded, is unenforceable or abrogated, a recovery may be had on an implied promise to pay for benefits conferred thereunder." 460 N.Y.S.2d 552, 556 (App. Div. 1983). *Waldman* does not apply to the facts of this case. New York Plaintiffs do not argue that, had the defect manifested within the four-year/50,000 mile Warranty Period, they would have been unable to recover because the Warranty was invalid or unenforceable. *Cf. Lilly*, 2002 U.S. Dist. LEXIS 910, at *18 (allowing an unjust enrichment claim to proceed alongside a breach of warranty claim where there existed "a good faith dispute" as to whether the defendant's representations constituted an express warranty under the UCC). Instead, New York Plaintiffs appear to argue that one of the Warranty's terms—the express warranty's durational limitation—is unenforceable. Accepting this argument would allow New York Plaintiffs to use an unjust enrichment claim to unilaterally alter one of the Warranties' terms, which is not an appropriate purpose of an unjust enrichment claim. *Wiseberg*, 2012 WL 1108542, at *12; *accord First Commodity Traders, Inc.*, 766 F.2d at 1011–12; *Terrill*, 753 F.

---

enrichment claim for product defects—a plaintiff may not advance an unjust enrichment claim based on the same subject matter. *See id*.; *Wiseberg*, 2012 WL 1108542, at *12.

Supp. 2d at 1291.[16]

The *Waldman* court's statement is even further removed from the facts of this case because New York Plaintiffs cannot demonstrate that any "recovery may be had on an implied promise to pay for benefits conferred."  460 N.Y.S.2d at 556.  Here, there has been no implied promise to pay for repairs past the warranty period.  New York Plaintiffs do not point to any allegations suggesting that PCNA made such a promise or that such a promise can be inferred from PCNA's conduct.  *Waldman* is therefore inapposite and does not save New York Plaintiffs' unjust enrichment claim.

The Court finds that New York Plaintiffs fail to state a claim for unjust enrichment.  Accordingly, the Court **GRANTS** PCNA's motion to dismiss Count Twenty-Three of Plaintiffs' Complaint.

## J.  OHIO

Ohio Plaintiffs Lance Bredefeld and Deana Crawford purchased Cayennes that came

---

[16]New York Plaintiffs also cite *Szymczak v. Nissan Motor Co., Ltd.*, in which the court declined to dismiss two New York plaintiffs' unjust enrichment claims at the pleading stage because they brought their claim in the alternative to a breach of warranty claim.  2011 U.S. Dist. LEXIS 153011, at *55.  The *Szymczak* court failed to account for the fact that plaintiffs cannot use an unjust enrichment claim to unilaterally alter the terms of a contract.  *See Statler*, 775 F. Supp. 2d at 474; *Wiseberg*, 2012 WL 1108542, at *12.  Indeed, the *Wiseberg* court cited *Szymczak* on several points of law outside of the unjust enrichment context but held that the plaintiffs could not advance an unjust enrichment claim where the product's warranty covered the subject matter of their claim.  *Wiseberg*, 2012 WL 1108542, at *12.  Importantly, in *Wiseberg*, the plaintiffs (like New York Plaintiffs here) alleged that the defendant concealed material defects and the court permitted the plaintiffs' Section 349 claim to proceed.  *Id*. at *6.  Even if *Szymczak* were correct on this point, however, New York Plaintiffs' argument still fails because Plaintiffs abandoned their express warranty claims in all cases in which the alleged defect manifested outside of the Warranty Period.  (ECF No. 77, at 28 n.3.)  Because such a claim would have "provided their only basis for their unconscionability arguments" in this context, New York Plaintiffs "cannot now rely on these abandoned claims to prop up their unjust enrichment claim."  *Zwicker v. Gen. Motors Corp*., No. C07-0291-JCC, 2007 WL 5309204, at *6 (W.D. Wash. July 27, 2007).

equipped with plastic coolant tubes.  Plaintiff Bredefeld purchased a 2006 vehicle in 2010 from a Suzuki dealership and Plaintiff Crawford purchased a 2004 Cayenne in 2005 from an unidentified seller.  The coolant tubes in Ohio Plaintiffs' vehicles failed (Bredefeld's in 2010 and Crawford's in 2011) and rendered the vehicles disabled.  Ohio Plaintiffs both paid to repair and install aluminum pipes in their vehicles and now bring claims for breach of implied warranty in tort, violations of Ohio's Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et seq.*, negligence, and violations of Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 *et seq*.  PCNA moves to dismiss all claims.

*Count Twenty-Four: Breach of Implied Warranty in Tort (Ohio)*

In Ohio, every manufacturer or distributor impliedly warrants that its products are of good and merchantable quality, fit and safe for the ordinary purposes for which they are intended.  *See* Ohio Rev. Code § 1302.27 (adopting UCC § 2-314 as Ohio law); *Lonzrick v. Republic Steel Corp.*, 6 Ohio St. 2d 227, 229–30, 218 N.E.2d 185 (1966). There are two types of implied warranty claims that are available to Ohio consumers if this warranty is breached.  The availability of each depends on whether the consumer is in privity with the seller.

Purchasers that are in privity with the seller may pursue a claim for breach of implied warranty of merchantability under the UCC.  *See* Ohio Rev. Code § 1302.27(A); *Curl*, 114 Ohio St. 3d ¶ 26 (Ohio 2007).[17]  Such an action sounds in contract and is subject to the provisions of the UCC.  *See* Ohio Rev. Code § 1302.27(A).  Ohio Plaintiffs admit that they are not in privity with PCNA and therefore are not asserting a claim for breach of the implied warranty of merchantability.

_____

[17]*See also* Section IV(A)(2) of this Opinion and Order (Count One) (discussing implied warranty of merchantability claims in the context of the federal Magnuson-Moss Act).

Instead, Ohio Plaintiffs bring a claim for breach of the implied warranty in tort.  This claim for relief is only available to remote purchasers of goods and can be used to recover purely economic loss.  *Lonzrick*, 6 Ohio St. 2d at 229–30; *Iacono v. Anderson Concrete Corp*., 42 Ohio St. 2d 88, 93, 326 N.E.2d 267 (1975) (extending *Lonzrick*'s holding to property damage and stating that "an action in tort, based on the properly pleaded theory of breach of implied warranty, may be maintained to recover for damage to property"); *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 49–50, 537 N.E.2d 624 (1989) (holding that parties in privity of contract may not bring implied warranty in tort claims and that such claims are limited to remote purchasers only).  Ohio's implied warranty in tort claim effectively extends the UCC's implied warranty protections to purchasers who are not in privity with the party against whom they seek to assert their claim.  *See, e.g.*, *Trgo v. Chrysler Corp.*, 34 F. Supp. 2d 581, 588 n.5 (N.D. Ohio 1998) ("Ohio law [] converts claims for breach of implied warranty [under the UCC] into tort claims when contractual privity is absent.").

PCNA argues that Ohio Plaintiffs' implied warranty in tort claim is time-barred.  PCNA acknowledges that implied warranty of merchantability claims are subject to a different statute of limitations than implied warranty in tort claims and that, under current Ohio jurisprudence, Ohio Plaintiffs' implied warranty in tort claim is not time-barred.  PCNA argues that the statute of limitations for implied warranty of merchantability claims has expired and asks this Court to similarly limit the statute of limitations for Ohio Plaintiff's implied warranty in tort claim.  PCNA bases its argument on the following analysis.

Implied warranty of merchantability claims are subject to the four-year statute of limitations set forth in the UCC.  *See* Ohio Rev. Code § 1302.98(A)–(B) (adopting UCC § 2-725(1)–(2) as Ohio law); *Val Decker Packing Co. v. Corn Prods. Sales Co.*, 411 F.2d 850, 851

100

(6th Cir. 1969) (recognizing the four-year statute of limitations provided in Ohio Rev. Code §

1302.98 and UCC § 2-725); *but see Ressallat v. Burglar & Fire Alarms, Inc*., 79 Ohio App. 3d

43, 48, 606 N.E.2d 1001 (3d Dist. 1992). In the product liability context, the statute of limitations

begins running at the time of the transaction and not on the date that the defect manifested and

caused damage. *Val Decker*, 411 F.2d at 851 (in a case involving an allegedly defective storage

facility that damaged the defendant's products, finding that the statute of limitations began

running on "the date on which installation [of the storage facility] was completed and not the date

of discovery of the spoilage").

In contrast, implied warranty in tort claims are subject to a two-year statute of limitations

that begins running when "the injury or loss to person or property occurs." Ohio Rev. Code §

2305.10(A)–(B); *U.S. Fid. & Guar. Co. v. Truck & Concrete Equip. Co.*, 21 Ohio St. 2d 244, 252,

257 N.E.2d 380 (1970). For implied warranty in tort claims based on defective products, Ohio

courts have held that the loss occurs at the point at which the alleged defect manifests, rather than

the point at which the sale is made. *See U.S. Fid. & Guar. Co*., 21 Ohio St. 2d, syllabus (stating

that, in a products liability case involving an allegedly defective truck part, the plaintiff's implied

warranty in tort claim arose on the day that the alleged defect manifested and damaged the truck).

Where, as here, the alleged defect manifests outside of the UCC's four-year period, PCNA

argues that this system creates a discrepancy because the secondhand purchaser is essentially

afforded a longer warranty period than the original purchaser. Although the original purchaser

would be barred from bringing an implied warranty claim four years after his or her purchase, the

remote purchaser may bring one at any point, so long as he or she brings the action within two

years after the defect manifests. PCNA argues that Ohio Plaintiffs should not be permitted to

pursue damages that are not available to firsthand purchasers in privity with PCNA.

101

The Court recognizes the oddity of a remote purchaser having a longer period in which to file suit for a defective product than an original purchaser.  But courts in some jurisdictions disallow purchasers from recovering economic loss in tort for precisely this reason—to prevent those purchasers from avoiding the UCC's provisions and restrictions—while Ohio courts have consistently allowed individual consumers to recover economic loss in tort.  *Compare Chemtrol*, 42 Ohio St. 3d at 49 (noting that Ohio courts allow remote purchasers to recover economic loss in tort) *with Neibarger*, 486 N.W.2d at 618 (stating that, if purchasers were allowed to sue in tort to recover economic loss, "the UCC provisions designed to govern such disputes, which[, *inter alia*,] limit the time in which such a suit must be filed, could be entirely avoided").  The Ohio Supreme Court has acknowledged the fact that UCC claims and implied warranty in tort claims are subject to a different statute of limitations, even where the plaintiffs seek to recover the same economic loss, and has not evinced an intent to standardize the two claims for relief.  *See U.S. Fid. & Guar. Co.*, 21 Ohio St. 2d 244 at 251.  The court has also declined to extend the availability of implied warranty in tort claims to firsthand purchasers, which would have harmonized the discrepancy that PCNA highlights.  *See Chemtrol*, 42 Ohio St. 3d at 49.  In its opinion, the *Chemtrol* court emphasized the fact that parties in privity are able to bargain for the quality of goods that they will receive and that remote purchasers must rely on the added protection of implied warranty in tort.  *See id*. at 49.  Without some indication that the Ohio Supreme Court would limit a remote purchaser's right to bring a tort action to the UCC's four-year statute of limitations, the Court declines to impose this requirement.

Finding that Ohio Plaintiffs' claims are not time-barred, the Court turns to the substance of their implied warranty claim.  Plaintiffs bringing implied warranty in tort claims must allege that (1) a defect existed in a defendant's product that made it unfit for its ordinary, intended use;

102

(2) the defect existed at the time the product left the defendant's possession; and (3) the defect was the proximate cause of the plaintiff's injuries. *White v. DePuy, Inc.*, 129 Ohio App. 3d 472, 480, 718 N.E.2d 450 (12th Dist. 1998) (quoting *Temple v. Wean United*, 50 Ohio St. 2d 317, 321, 364 N.E.2d 267 (1977)).  The parties dispute whether a reasonable consumer would find that the alleged defect rendered the Cayenne unfit for its ordinary, intended use.

PCNA argues that no reasonable consumer could conclude that the alleged coolant tube defect rendered Ohio Plaintiffs' vehicles unfit for their ordinary, intended use when the Cayennes outlived their warranties.  PCNA does not cite any Ohio authority in support of its position but instead cites *Daugherty v. American Honda Motor Co.* and *Clemens v. DaimlerChrysler Corp.* for the proposition that reasonable consumers understand that the ordinary useful life of a product is limited by its express warranty.  PCNA argues that the Ohio doctrine of implied warranty in tort is similar to California's Consumer Legal Remedies Act in that both causes of action "assign liability when a defendant withholds information that is 'likely to mislead a reasonable consumer.' "  (ECF No. 91, at 85 (citing *Wilson*, 668 F.3d at 1141–43).)

Assuming *arguendo* that PCNA's comparison of Ohio and California law is accurate in this context, PCNA's argument fails.  The Court found in Section IV(B) of this Opinion and Order (Count Two) that California Plaintiffs had sufficiently pleaded facts to suggest that PCNA withheld information regarding safety risks and therefore violated a duty to disclose under *Daugherty*.  *See supra* Section IV(B) (Count Two); *cf. Clemens v. DaimlerChrysler Corp*., 534 F.3d at 1026–27.  PCNA does not assert any additional arguments in support of its position.

The Court finds that Ohio Plaintiffs state a claim for breach of implied warranty in tort. Accordingly, the Court **DENIES** PCNA's motion to dismiss Count Twenty-Four of Plaintiffs' Complaint.

*Count Twenty-Five: Ohio's Consumer Sales Practices Act*

The Ohio Consumer Sales Practices Act ("OCSPA") provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."  Ohio Rev. Code § 1345.02(A).  "Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."  *Id.*  Plaintiffs bringing OCSPA claims must allege that the defendant performed an act or omission that was unfair or deceptive, and that the alleged act "impacted [the plaintiffs'] decision to purchase the item at issue."  *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 265 (6th Cir. 2005).

Plaintiffs bringing class actions under the OCSPA are subject to the statute's class action notice requirement.  Under the OCSPA, consumers may seek relief in a class action only if the defendant was sufficiently on notice that its conduct was deceptive or unconscionable under the statute at the time it committed the alleged acts.  Ohio. Rev. Code § 1345.09(B);[18] *Marrone v. Phillip Morris USA, Inc.*, 110 Ohio St. 3d 5, 2006-Ohio 2869, 850 N.E.2d 31, ¶ 1.  Plaintiffs

---

[18]Section 1345.09(B) provides:

> Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

Ohio Rev. Code § 1345.09(B).  *See Amato v. Gen. Motors Corp.*, 11 Ohio App. 3d 124, 130, 463 N.E.2d 625 (8th Dist. 1982) (interpreting Section 1345.09(B)).

bringing claims on behalf of a class must demonstrate that either (1) the alleged violation is an act or practice that was declared to be deceptive or unconscionable by a rule adopted by the Attorney General before the consumer transaction on which the action is based or (2) the alleged violation is an act or practice that was determined by a court to violate the OCSPA and the court's decision was available for inspection before the transaction took place.  Ohio. Rev. Code §1345.09(B). The alleged conduct must be "substantially similar" to an act or practice previously declared to be deceptive under the OCSPA in order for the action to proceed as a class.  *Marrone*, 110 Ohio St. 3d ¶ 2.

To bring a claim on behalf of a putative class, a plaintiff must identify in his or her complaint the rule or case that satisfies Section 1345.09(B)'s notice requirement.  *See Johnson v. Microsoft Corp.*, 155 Ohio App. 3d 626, 2003-Ohio-7153, 802 N.E.2d 712, ¶ 20 (1st Dist.), *aff'd on other grounds*, 106 Ohio St. 3d 278, 2005-Ohio-4985, 834 N.E.2d 791.  In *Johnson*, the trial court dismissed a plaintiff's OCSPA class action because she failed to plead the requisite notice elements under Section 1345.09(B).  *Id*. at paragraph five of the syllabus.  The plaintiff argued on appeal that the trial court "required her to plead with a higher degree of specificity than that called for under the general rule."  *Id*. ¶ 20.  The appellate court expressly rejected this argument and affirmed the trial court's dismissal, noting that the plaintiff failed to plead either of the elements that would satisfy Section 1345.09(B).  *Id*.  The *Johnson* court's holding is datum for analyzing Ohio law and disposes of Ohio Plaintiffs' argument that Section 1345.09(B) is only relevant at the class certification stage.[19]

---

[19]*See also Kline v. Mortgage Elec. Sec. Sys*., No. 08-408, 2010 WL 6298271, at *4 (S.D. Ohio Dec. 30, 2010) (dismissing a plaintiffs' complaint under Rule 12(b)(6) and stating that " '[l]ack of prior notice' that a practice has been deemed deceptive or unconscionable in accordance with Section 1345.09(B) 'requires dismissal of class action allegations' brought

If a plaintiff fails to identify a rule or case in his or her complaint that satisfies Section 1345.09(B), dismissal of the claim as a class action is proper and the plaintiff may proceed in his or her individual capacity alone.  *See Volbers-Klarich v. Middletown Mgmt., Inc*., 125 Ohio St. 3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 33.  In *Volbers-Klarich*, the plaintiff brought an OCSPA claim on behalf of a putative class and alleged that the defendant deceptively imposed a non-existent city and municipal tax on its customers.  *Id*. ¶ 3.  The plaintiff alleged that Ohio's general rule against false advertising put the defendants on notice that their conduct was unlawful.  *Id*. ¶ 33.  The Ohio Supreme Court rejected this argument, finding that general rules are not sufficient to put a reasonable person on notice that a specific act or practice is prohibited.  *Id*.  The court affirmed the lower court's dismissal of the plaintiff's class-action claim at the pleading stage and noted that the plaintiff could advance her claim "only as an individual."  *Id*. at ¶ 34.

---

under the OCSPA") (citing *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 901 (N.D.Ohio 2008)); *Bower v. Int'l Bus. Machs., Inc*., 495 F. Supp. 2d 837, 841 (S.D. Ohio 2007) ("The [p]laintiffs have failed to identify in their complaint a rule or judgment that would place the [d]efendant on notice that the conduct alleged by the [p]laintiffs violated the [O]CSPA; consequently pursuit of this claim as a class action is improper."); *City of Findlay v. Hotels.com*, 441 F. Supp. 2d 855, 863 (N.D. Ohio 2006) (citing *Johnson* and dismissing an OCSPA class action class for failing to allege the two prerequisites set forth in Section 1345.09(B)).  *But see In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 684 F. Supp. 2d 942, 948 (N.D. Ohio 2009) (finding that Section 1345.09(B) is more appropriately addressed at the class certification stage); *Lilly v. Hewlett-Packard Co.*, No. 1:05-CV-465, 2006 U.S. Dist. LEXIS 22114, at *17 (S.D. Ohio Apr. 21, 2006) (same).  The *Lilly* court cited *Johnson* but declined to follow it, stating that "the actual basis" for the *Johnson* court's affirmance of the trial court's decision rested on other grounds. *Lilly*, 2006 U.S. Dist. LEXIS 22114, at *17.  Given the fact that the *Johnson* court expressly "disagreed" with the plaintiff's argument that the trial court required her to plead her claim with a higher level of specificity than the statute required, the Court finds this reasoning unpersuasive. *See Johnson*, 155 Ohio App. 3d ¶ 20.  Similarly, the *Whirlpool* court declined to consider the class action plaintiff's notice allegations at the pleading stage, reasoning that the plaintiffs could still proceed as individuals even if they failed to plead the requisite notice.  684 F. Supp. 2d at 948.  The Ohio Supreme Court confronted this exact situation in *Volbers-Klarich v. Middletown Mgmt., Inc*., 125 Ohio St. 3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 33 and affirmed the trial court's dismissal of the plaintiff's class action allegations at the pleading stage.

The Court will therefore examine Ohio Plaintiffs' allegations of prior notice to determine whether they may pursue their claim on behalf of a class. Ohio Plaintiffs allege that two court cases—*Lilly v. Hewlett-Packard Co.*, No. 1:05-CV-465, 2006 U.S. Dist. LEXIS 22114 (S.D. Ohio Apr. 21, 2006) and *Mason v. Mercedes Benz USA, LLC*, 8th Dist. No. 85031, 2005 Ohio App. LEXIS 3911 (Aug. 18, 2005)—put PCNA on notice that its alleged conduct violated the OCSPA. Federal district court cases such as *Lilly*, however, cannot supply the requisite notice under Section 1345.09(B). *See Kline v. Mortgage Elec. Sec. Sys.*, No. 3:09-cv-408, 2010 WL 6298271, at *6 (S.D. Ohio Dec. 30, 2010) ("[T]he Court cannot logically conclude that by referring to decisions of 'a court of this state,' the Ohio legislature intended to allow a federal court sitting in Ohio to define the parameters of 'deceptive or unconscionable' practices under Ohio's Consumer Sales Practices Act.").

Ohio Plaintiffs are therefore left with *Mason v. Mercedes Benz*, in which the defendant allegedly placed a vehicle in the stream of commerce that was afflicted with a "multitude of different problems" that "required [the plaintiff] to have the car in for repairs twenty times over a two-year period." 2005 Ohio App. LEXIS 3911, at *33. The court found that such facts supported a verdict of breach of the implied warranty of merchantability (which in turn supported an OCSPA claim) because the plaintiff's faith in her vehicle was "so undermined by its constant problems" that she had to purchase another vehicle. *Id*. at 34. The *Mason* court implicitly suggested that its decision rested on the fact that the vehicle contained multiple defects and required continuous repairs; the court distinguished cases in which the product contained a single or small number of defects. *See id.* at *33. The conduct alleged in *Mason* is therefore unlike the conduct alleged here, in which PCNA allegedly placed a vehicle into the stream of commerce with one defect that required repair on one occasion. The Court declines to consider the

107

additional cases that Ohio Plaintiffs provide in their opposition memorandum that are not identified in their Complaint.  *See Pa. ex rel. Zimmerman*, 836 F.2d at 181 ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  (internal quotations omitted)).  Ohio Plaintiffs fail to satisfy the requirements of Section 1345.09(B).

Because Ohio Plaintiffs fail to satisfy Section 1345.09(B), they are precluded from advancing an OCSPA claim on behalf of a class.  The Court **GRANTS** PCNA's motion to dismiss Ohio Plaintiffs' OCSPA class action allegations.

The Court next examines the substance of Ohio Plaintiffs' OCSPA claim to determine whether they, in their individual capacities, have stated claims for relief.  Ohio Plaintiffs allege that PCNA violated the OCSPA by breaching the implied warranty in tort, failing to disclose the alleged coolant tube defect to consumers and affirmatively misrepresenting the quality of the Cayenne.  The Court finds that Ohio Plaintiffs state an OCSPA claim premised on PCNA's alleged failure to disclose material facts but fail to state an OCSPA claim based on affirmative representations.

The Court first disposes of Ohio Plaintiffs' allegations regarding affirmative representations.  To bring an OCSPA claim premised on affirmative conduct, a plaintiff must allege that he "saw or was . . . aware of the alleged misrepresentations at any time before or during the purchase of the [allegedly defective product]."  *Lilly*, 2006 WL 1064063, at *5 (dismissing a plaintiff's OCSPA claim for failing to establish the requisite "cause and effect" relationship).  Like their co-plaintiffs, Ohio Plaintiffs do not allege that they saw, heard, or were aware of PCNA's purported misrepresentations at any given time.  *See supra* Section III(B).  The Court therefore **GRANTS** PCNA's motion to dismiss Count Twenty-Five of Plaintiffs' Complaint to the extent it is premised on allegations of affirmative misrepresentations.

108

Ohio Plaintiffs' remaining allegations are based on PCNA's alleged failure to disclose material facts to consumers.[20]  Omissions are actionable under the OCSPA if they "concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved." *Temple*, 133 F. App'x at 265–66 (citing *Richards v. Beechmond Volvo*, 127 Ohio App. 3d 188, 190, 711 N.E.2d 1088 (1st Dist. 1998)).  PCNA cites, *inter alia*, *Daugherty v. American Honda Motor Co.* and *Eisert v. Kantner*, 3d Dist. No. 2-10-13, 2010 WL 3836205, at *2 (Oct. 4, 2010), for the proposition that defendants do not have a duty to disclose to consumers defects that will require post-warranty repairs.  But the Court declined to dismiss California Plaintiffs' claims under *Daugherty*, finding instead that California Plaintiffs had sufficiently alleged facts to demonstrate that the alleged defect presents a safety concern such that PCNA violated a duty to disclose.  *See supra* Section IV(B) (Count Two).  The *Eisert* court did not confront the issue of safety concerns and is therefore not persuasive on this point.  *See* 2010 WL 3836205, at *1–6 (analyzing an OCSPA claim in which the plaintiffs alleged that the defendant's faulty construction caused a moldy/musty smell in their home).  Absent authority that would put such an omission outside the scope of the OCSPA, the Court declines to dismiss Ohio Plaintiffs' claim on this ground.

The Court finds that Ohio Plaintiffs state a claim in their individual capacities for violations of the OCSPA premised on PCNA's alleged failure to disclose material facts.  The Court therefore **DENIES** PCNA's motion to dismiss these allegations.  The Court **GRANTS IN PART** and **DENIES IN PART** PCNA's motion to dismiss Count Twenty-Five of Plaintiffs'

---

[20]Ohio Plaintiffs assert that their claim also rests on PCNA's breach of the implied warranty in tort but do not differentiate this allegation from their allegation that PCNA failed to disclose a material fact to consumers for purposes of OCSPA liability.  The Court therefore considers these allegations as one theory of liability under the OCSPA.

Complaint.

*Count Twenty-Six: Negligence (Ohio)*

Ohio Plaintiffs assert that PCNA breached its duty to design and manufacture the Cayenne in such a way as to ensure that it would not leak coolant and require substantial repair costs unreasonably early in its usable life.  The Court finds that Ohio Plaintiffs state a claim for negligence.

The parties agree that Ohio courts recognize the economic loss doctrine as it relates to commercial plaintiffs in privity with the defendant—in other words, such plaintiffs cannot recover damages in tort for purely economic loss.  *See Chemtrol,* 42 Ohio St. 3d at 45–46.  The Ohio Supreme Court summarized one of the theories underlying the economic loss rule as follows: "where the buyer and seller are in privity of contract, and they have negotiated that contract from relatively equal bargaining positions, the parties are able to allocate the risk of all loss, including loss of the subject product itself, between themselves."  *Id*.  In such a situation, the economic loss rule applies to maintain the boundary between tort and contract.  *See id.*

In discussing the theories underlying the economic loss doctrine, the *Chemtrol* court distinguished parties in privity from those not in privity, stating, "[f]or an ordinary consumer, *i.e.*, one not in privity of contract with the seller or manufacturer against whom recovery is sought, an action in negligence may be an appropriate remedy to protect the consumer's property interests." *Id*. at 45–46.  Ohio Plaintiffs and PCNA dispute whether the economic loss doctrine bars tort claims of individual consumers not in privity with the defendant.

Allowing Ohio Plaintiffs' negligence claim to proceed would represent the minority view among courts in other jurisdictions.  *See, e.g., supra* Sections IV(C) (Count Six); IV(G) (Counts Sixteen & Nineteen); *infra* Section IV(K) (Count Twenty-Nine).  The Ohio Supreme Court has,

however, acknowledged that it aligns itself with a minority of courts in permitting consumers to recover economic loss in tort.  *See, e.g., Chemtrol*, 42 Ohio St.3d at 48 (explaining that prior decisions of the Ohio Supreme Court appear to favor the minority approach of *Santor v. A&M Karagheusian, Inc.* in permitting individual plaintiffs to recover economic through implied warranty in tort and strict liability theories of recovery); *LaPuma v. Collinwood Concrete*, 75 Ohio St. 3d 64, 67, 661 N.E.2d 714 (1996) (permitting recovery in tort for economic loss to the product itself where there was no privity between the plaintiff and the supplier); *Avery Dennison Corp. v. Soliant LLC,* No. 1:04CV1865, 2005 U.S. Dist. Lexis 17672, at *6 (N.D. Ohio Aug. 23, 2005) (citing *LaPuma* for the proposition that "Ohio courts continue to permit product liability claims by individual consumers for purely economic losses" and noting that such a position represents the minority view among courts).

District courts in Ohio, relying on *Chemtrol*, have permitted individual consumers to bring negligence claims for purely economic loss against a manufacturer with whom they are not in privity of contract.  *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 684 F. Supp. 2d 942, 951 (N.D. Ohio 2009) (denying the defendant's motion to dismiss a putative class action claim for negligence against a remote manufacturer and finding that, in Ohio, "the foundational doctrinal distinction in the economic loss rule jurisprudence is whether the parties are in privity of contract").  Another district court in Ohio recently agreed with the *Whirlpool* court's holding on this point, stating that "in cases where 'the parties are not in privity of contract, [Ohio] courts apply a more relaxed rule, allowing individual consumers to bring negligence claims for solely economic injuries.' " *Hale v. Enerco Group., Inc*., No. 1:10-cv-00867, 2011 U.S. Dist. LEXIS 781, at *19–20 (N.D. Ohio Jan. 5, 2011) (citing *In re Whirlpool*, 684 F. Supp. 2d at 949–50).

In allowing the individual plaintiffs' negligence claim to proceed, the *Whirlpool* court rejected the case of *Lee v. Chrysler Corp.* as "one summary misapplication of *Chemtrol* [that] cannot override the otherwise consistent holdings of Ohio courts that absent privity, consumer plaintiffs may bring a negligence action for economic losses." *In re Whirlpool*, 684 F. Supp. 2d at 951 (discussing *Lee*, 5th Dist. No. 2004CA00164, 2005 WL 449762, at *2 (Feb. 22, 2005)). In *Lee*, an Illinois appellate court purported to extend the reach of the economic loss doctrine to consumers lacking privity but offered no analysis in doing so. *See Lee*, 2005 WL 449762, at *3–4 (Hoffman, J., dissenting) (noting that the majority failed to acknowledge the *Chemtrol* court's holding that the economic loss doctrine applies only to parties in privity of contract). This Court agrees with Ohio Plaintiffs that *Lee* is unpersuasive on this point. *See West*, 311 U.S. at 237 (suggesting that an intermediate appellate state court's decision is controlling only if the court "rests its considered judgment upon the rule of law which it announces").

PCNA's remaining arguments are equally unpersuasive. PCNA does not offer any authority in which Ohio courts applied the economic loss doctrine to bar an individual purchaser's tort claim against a remote manufacturer. Instead, PCNA argues that *Chemtrol* necessitates a "nuanced analysis" in determining whether a remote purchaser may bring a tort claim to recover economic loss. (ECF No. 91, at 99.) PCNA argues that Ohio law extends numerous remedies to consumer-plaintiffs, such as warranty protections and protection against deception/misrepresentation, such that a negligence action is "unnecessary and superfluous." (*Id.*) But these remedies existed at the time of the *Chemtrol* decision; if their existence alone was enough to preclude a negligence claim, the Ohio Supreme Court's statement would have no meaning. PCNA's argument does not mandate dismissal of Ohio Plaintiffs' claim at this stage of the litigation.

112

As a final argument, PCNA cites *Potts v. Safeco Insurance Co.* for the proposition that "in the absence of privity of contract between two disputing parties the general rule is there is no . . . duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things."  5th Dist. No. 2009CA0083, 2010 WL 1839738, at *4 (May 3, 2010) (internal quotations omitted) (citing *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 54 Ohio St. 3d 1, 3, 560 N.E.2d 206 (Ohio 1990)).  The question in the products liability context is not whether manufacturers have a duty that extends to the remote purchaser; the various cases in which Ohio courts have allowed remote purchasers to pursue product liability claims against a manufacturer confirms that they do.  *See, e.g., LaPuma*, 75 Ohio St. 3d at 67.  The language in *Floor Craft* and the cases citing it does not apply to the facts of this case.

Here, Ohio Plaintiffs suffered property damage in that they purchased a product that damaged itself.  Courts in most jurisdictions would preclude Ohio Plaintiffs from recovering this loss in tort; however, Ohio courts permit consumers to advance tort theories seeking recovery of these damages.  PCNA fails to meet its burden on this motion to dismiss.

The Court finds that Ohio Plaintiffs state a claim for negligence and **DENIES** PCNA's motion to dismiss Count Twenty-Six of Plaintiffs' Complaint.

*Count Twenty-Seven: Deceptive Trade Practices (Ohio)*

Ohio Plaintiffs allege that PCNA violated the Ohio Deceptive Trade Practices Act ("ODTPA") by misrepresenting the quality and characteristics of the Cayenne in such a way as to cause harm to Ohio Plaintiffs.  The Court predicts that the Ohio Supreme Court would dismiss Ohio Plaintiffs' ODTPA claim for lack of standing.

The ODTPA proscribes certain "deceptive trade practices" such as passing off goods or

services as those of another and causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services. Ohio Rev. Code. § 4165.02(A)(1) & (2). Section 4165.03 of the ODTPA confers standing on a "person who is likely to be damaged by a person who commits a deceptive trade practice" or a "person who is injured by a person who commits a deceptive trade practice." *Id.* § 4165.03(A)(1) & (2). The ODTPA defines "person" as an "individual, corporation, government . . . or any other legal or commercial entity." *Id.* § 4165.01(D).

Despite this language, an Ohio court of appeals has held that consumers do not have standing to bring a ODTPA claim. *Dawson v. Blockbuster, Inc.*, 8th Dist. No. 86451, 2006 WL 1061769, at *4 (Mar. 16, 2006), *cert denied*, 110 Ohio St. 3d 1442, 2006-Ohio-3862, 852 N.E.2d 190 (Ohio 2006). The court reasoned that the ODTPA is "substantially similar to Section 43(a) of the Lanham Act" and that the Lanham Act protects the interests of a purely commercial class that does not include individual consumers. *Dawson*, 2006 WL 1061769, at *3 (citing *Yocono's Rest., Inc. v. Yocono*, 100 Ohio App. 3d 11, 17, 651 N.E.2d 1347 (9th Dist. 1994)). *See also Chandler & Assoc. v. Am. Healthcare Alliance*, 125 Ohio App. 3d 572, 580, 709 N.E.2d 190 (8th Dist. 1997) ("When adjudicating claims under the [ODTPA], Ohio courts shall apply the same analysis applicable to claims commenced under analogous federal law.").

Similar to the ODTPA, Section 43(a) of the Lanham Act confers standing on "any person who believes that he or she is likely to be damaged" by prohibited conduct under the Act. 15 U.S.C.A. § 1125(a). Despite this language, federal courts have consistently held that individual consumers do not have standing under this section because they are not within the class of persons that the Lanham Act was designed to protect. *See, e.g., Colligan v. Activities Club of N.Y., Ltd.*, 442 F.2d 686, 694 (2d Cir. 1971) (holding that individual consumers do not have

114

standing to sue under the Lanham Act because "[t]he Act's purpose, as defined in § 45, is exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct"); *Made in the USA Found. v. Phillips Foods, Inc.*, 365 F.3d 278, 281 (4th Cir. 2004) (same).  Applying this logic to the ODTPA, the *Dawson* court affirmed the district court's dismissal of an individual consumer's ODTPA claim.  2006 WL 1061769, at *4 ("At least half of the circuits hold (and none of the others disagree) that § 45 of the Lanham Act, 15 U.S.C.S. § 1051 *et seq.*, specifically 15 U.S.C.S. § 1127, bars a consumer from suing under the act.").

The Court finds that *Dawson* mandates dismissal of Ohio Plaintiffs' ODTPA claim.  In so holding, the Court declines Ohio Plaintiffs' invitation to ignore *Dawson* and instead follow *Bower v. International Business Machines, Inc.*, in which the court held that individual consumers have standing under the ODTPA.  495 F. Supp. 2d 837, 843 (S.D. Ohio 2007).  The Court declines to adopt *Bower*'s holding on this point for four reasons.

First, *Dawson* is well reasoned and therefore is datum for ascertaining state law, not to be disregarded unless this Court is persuaded that the Ohio Supreme Court would decide otherwise. *West*, 311 U.S. at 237.  *Dawson*'s holding is supported by Ohio cases that equate the ODTPA to the Lanham Act in all material respects.  *See Dawson*, 2006 WL 1061769, at *4 (citing *Yocono's Rest., Inc. v. Yocono* and *Chandler* for the proposition that courts should interpret the ODTPA in the same way that courts interpret the Lanham Act).  The *Dawson* court analyzed the federal cases interpreting the Lanham Act and unequivocally ruled on the issue that is currently before this Court.  *See Dawson*, 2006 WL 1061769, at *4.

Second, the *Bower* court did not cite or mention *Dawson* and referenced only two cases, both from the Northern District of Ohio, for the proposition that consumers do not have standing under the ODTPA.  *Bower*, 495 F. Supp. 2d at 842 (stating that the defendants "rely exclusively"

115

on *Chamberlain v. American Tobacco Co.*, No. 1:96-CV-02005, 1999 WL 33994451 (N.D. Ohio Nov. 19, 1999) and *Glassner v. R.J. Reynolds Tobacco Co.*, No. 5:99CV0796, 1999 WL 33591006 (N.D. Ohio June 19, 1999) for the proposition that the ODTPA does not apply to individual consumers). The court concluded that both of these cases had "limited precedential value" and declined to follow them. *Id.* In contrast to these cases, *Dawson* has significant precedential value and provides well-reasoned support for the holding that the *Chamberlain* and *Glassner* courts reached.

Third, the *Bower* court's (as well as Ohio Plaintiffs') reliance on the ODTPA's plain language ignores the fact that numerous federal courts have interpreted the Lanham Act in a way that appears contrary to its plain language. 15 U.S.C.A. § 1125(a) (conferring standing on "any person who believes that he or she is likely to be damaged" by prohibited conduct under the Act). The *Bower* court did not address this issue and does not mention the Lanham Act in its opinion.

Finally, at least one Ohio state court and another district court in Ohio have expressly declined to follow *Bower* and have followed *Dawson* instead. *See, e.g., Blankenship v. CFMOTO Powersports, Inc.*, 944 N.E.2d 769, 776–77 (Clermont Cty. Ct. Com. Pl. 2011) (addressing *Bower* but adopting *Dawson*'s interpretation of the ODTPA); *Robins v. Global Fitness Holdings, LLC*, No. 1:11 CV 1373, 2012 WL 163031, at *15 (N.D. Ohio Jan. 18, 2012) ("The Court disagrees with *Bower* and adopts the *Dawson/Chamberlain* interpretation of the [O]DTPA."). In *Blankenship*, the court noted that the ODTPA and OCSPA "prohibit the same type of conduct" such that it makes sense that the ODTPA protects only commercial entities; to hold otherwise would render the OCSPA "superfluous." 944 N.E.2d at 776–77.

The Court predicts that the Ohio Supreme Court would adopt the reasoning of *Dawson* and conclude that individual consumers lack standing under the ODTPA. The Court finds that

Ohio Plaintiffs, as individual consumers, fail to state a claim under the ODTPA.  Accordingly, the Court **GRANTS** PCNA's motion to dismiss Count Twenty-Seven of Plaintiffs' Complaint.

## K.  TEXAS

Texas Plaintiffs Randall Stuewe and Sven Wust purchased Cayennes from unidentified sellers in 2006 (Stuewe) and 2003 (Wust).  The coolant tubes in Plaintiff Stuewe's vehicle failed in 2011, and the tubes in Plaintiff Wust's vehicle failed in 2010.  Both Texas Plaintiffs' vehicles were allegedly rendered disabled following the coolant tube failure, and both Texas Plaintiffs paid to repair their vehicles.  Neither Texas Plaintiff alleges any facts surrounding the purchase of his Cayenne such as the price paid for the vehicle or the identity of the seller.

Texas Plaintiffs now brings claims for breach of implied warranty under the UCC, negligence, violations of Texas' Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 *et seq.*, and unjust enrichment.  PCNA moves to dismiss all claims.

*Count Twenty-Eight: Breach of Implied Warranty (Texas)*

Texas Plaintiffs, similar to many of their co-plaintiffs, bring a claim for breach of implied warranty under the UCC.  PCNA does not offer any arguments specific to Texas Plaintiffs' claim and adopts only those arguments that it advanced in connection with Plaintiffs' Magnuson-Moss claim.  Specifically, PCNA argues that any implied warranties had expired by the time the alleged defect manifested in Texas Plaintiffs' vehicles.  The Court rejected these arguments in Section IV(A)(2)(b) of this Opinion and Order (Count One) and found that Plaintiffs had alleged sufficient facts to suggest that the durational limitation was unconscionable.  *See supra* Section IV(A)(2)(b) (Count One).  Thus, the Court finds that Texas Plaintiffs state a claim for breach of implied warranty.  The Court **DENIES** PCNA's motion to dismiss Count Twenty-Eight of Plaintiffs' Complaint.

117

*Count Twenty-Nine: Negligence (Texas)*

Texas Plaintiffs allege that PCNA negligently designed the cooling system in its Cayennes and that Texas Plaintiffs sustained damages as a result.  The Court finds that the economic loss doctrine bars Texas Plaintiffs' claims.

In Texas, as in other states, the economic loss doctrine precludes plaintiffs from asserting tort claims based on allegedly defective products when the only injury is to the product itself.  *See Mem'l Harmann Healthcare Sys., Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008).  The Texas Supreme Court has stated that the economic loss rule applies in cases involving defective products and that the rule applies to parties not in privity, including a remote manufacturer and a consumer.  *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011).  In the case of defective products, the court stated that economic losses are "more appropriately addressed through statutory warranty actions."  *Id*.  Texas Plaintiffs' argument that Texas courts would not apply the economic loss doctrine due to the lack of contractual privity between the parties in this case is not persuasive.

Texas Plaintiffs do not allege that the alleged defect injured anything other than the Cayenne itself.  Accordingly, the Court finds that the economic loss doctrine bars Texas Plaintiffs' negligence claim.  The Court **GRANTS** PCNA's motion to dismiss Count Twenty-Nine of Plaintiffs' Complaint.

*Count Thirty: Deceptive Trade Practices (Texas)*

Texas Plaintiffs allege that PCNA violated the Texas Deceptive Trade Practices–Consumer Protection Act ("TDTPA") by misrepresenting the quality of the Cayenne and failing to disclose information about the Cayenne to consumers.  The Court finds that Texas Plaintiffs state a claim under the TDTPA.

118

The TDTPA proscribes "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  Tex. Bus. & Com. Code § 17.46(a).  Under the TDTPA, a consumer may bring a claim for relief where, *inter alia*, (1) the consumer relied on a false, misleading, or deceptive act or practice to his or her detriment, (2) the defendant breached an express or implied warranty, or (3) the defendant engaged in any unconscionable action or course of action.  *Id*. § 17.50.  Texas Plaintiffs allege that PCNA is liable under each of these three prongs.

The Court first addresses Texas Plaintiffs' allegations of deceptive acts or practices. TDTPA claims that are predicated on allegations of fraud are subject to the heightened pleading requirements of Rule 9(b).  *Luna v. Nationwide Prop. & Cas. Ins. Co.*, No. 10-2918, 2011 WL 2565354, at *3 (S.D. Tex. June 27, 2011).  To the extent that Texas Plaintiffs base their TDTPA claim on the seven affirmative misrepresentations that Plaintiffs (and Texas Plaintiffs by incorporation) identified in their Complaint, dismissal of this claim is proper.  As discussed in Section III(B) of this Opinion and Order, these allegations are fatally flawed because Plaintiffs failed to allege the time, place, or circumstances in which PCNA allegedly made these statements. Texas Plaintiffs' allegation that they relied on these misrepresentations, without more, does not cure this deficiency.  *See Cataldo*, 676 F.3d at 551; *Culy*, 2012 WL 2071804, at *6–7.  The Court therefore **GRANTS** Texas Plaintiffs' TDTPA claim to the extent that it is premised on allegations of affirmative misrepresentations.

Texas Plaintiffs base their claim for deceptive practices on PCNA's failure to disclose the alleged coolant tube defect to consumers.  Section 17.46(b)(24) of the TDTPA proscribes "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

119

*Id*. § 17.46(b)(24).  Thus, to state a claim under Section 17.46(b)(24), a consumer must allege the

following elements: "(1) a failure to disclose information concerning goods or services, (2) which

was known at the time of the transaction, (3) if such failure was intended to induce the consumer

into a transaction, (4) which the consumer would not have entered had the information been

disclosed."  *Willowbrook Foods, Inc. v. Grinnell Corp*., 147 S.W.3d 492, 506–07 (Tex. App.

2004).  PCNA does not argue that Texas Plaintiffs failed to allege the elements of a nondisclosure

claim under the TDTPA.

Instead, the issue before this Court is whether PCNA's alleged nondisclosure occurred in

connection with the transactions in which Texas Plaintiffs purchased their vehicles.  The Texas

Supreme Court has held that the TDTPA only reaches conduct that occurs in connection with

specific consumer transactions.  *Amstadt v. U.S. Brass Corp*., 919 S.W.2d 644, 649–50 (Tex.

1996).  The court explained this requirement as follows:

> The in-connection-with requirement imposes a limitation on liability that is consistent
> with the underlying purposes of the [T]DTPA. Without this limitation, we would
> merely substitute the defendant's introduction of a particular product into the stream
> of commerce for the conduct that was found to have violated the [T]DTPA. We find
> no authority for shifting the focus of a [T]DTPA claim from whether the defendant
> committed a deceptive act to whether a product that was sold caused an injury.

*Id*.  The court reasoned that the TDTPA was not intended to reach upstream manufacturers and

suppliers when their misrepresentations are not communicated to the consumer.  *Id*. at 649.

Because the *Amstadt* defendants were "upstream suppliers" of the parts used in a plumbing

system and because their alleged misrepresentations were not communicated to consumers, the

court found that the plaintiffs could not satisfy the "in-connection-with" requirement under the

TDTPA.  *Id*. at 647, 650–51; *see also Church & Dwight Co. v. Huey*, 961 S.W.2d 560, 565 (Tex.

App. 1997) (citing *Amstadt* and concluding that the "in connection with" requirement was met

where the "[the manufacturer's] marketing efforts were incorporated into [the immediate seller's] marketing efforts, and they formed the basis for [the plaintiff's] decision to use the product"). The *Amstadt* court noted, however, that TDTPA liability is not limited to those defendants that are in contractual privity with the consumer and that the focus of the inquiry is whether the alleged misrepresentation reached the consumer and influenced his or her purchase transaction. 919 S.W.2d at 649.

In contrast to the *Amstadt* plaintiffs, Texas Plaintiffs allege that, at the time PCNA distributed its vehicles, it concealed the defective nature of the Cayenne's cooling system in violation of Section 17.46(b)(24).  Texas Plaintiffs assert that PCNA's deceptive omission was incorporated into the transactions in which they purchased their vehicles because the defect remained undisclosed and they had no way to discover it.  Texas Plaintiffs allege that they relied to their detriment on this nondisclosure in the course of their individual transactions because, had the alleged defect been disclosed, they would not have purchased their vehicles or would have insisted on paying less for them.

The Court declines to dismiss Texas Plaintiffs' TDTPA claim at this stage of the litigation.  Texas Plaintiffs' claim is dependent on PCNA's allegedly deceptive conduct—on which Texas Plaintiffs allegedly relied—and not on the injury that the allegedly defective coolant tubes may have caused.  *Cf. Amstadt*, 919 S.W.2d at 649–50.  *See also Church & Dwight Co.*, 961 S.W.2d at 571 ("Finding that the general and well-settled rule articulated in *Amstadt* protects [the defendant] from its own misrepresentations would be a misreading of the law on this issue."). Furthermore, courts in other jurisdictions have found that a defendant commits actionable consumer fraud when it fails to inform consumers of a defect that presents a safety risk because the defendant—by not disclosing the risk—misrepresents the safety and reliability of its product.

121

*See, e.g., Daugherty*, 51 Cal. Rptr. 3d at 126, *Connick*, 675 N.E.2d at 595.  PCNA cites no case

law that would put such a misrepresentation outside the scope of the TDTPA.  Because Texas

Plaintiffs allege that they relied on PCNA's alleged misrepresentation to their detriment in their

individual transactions, the Court cannot conclude that *Amstadt* mandates dismissal of Texas

Plaintiffs' claim.

The Court finds that Texas Plaintiffs may also advance their TDTPA claim on theories of

breach of implied warranty and unconscionability.  The Court found in Section IV(K) of this

Opinion and Order (Count Twenty-Eight) that Texas Plaintiffs had sufficiently alleged facts to

support an inference that the durational limitation on all implied warranties was unconscionable

and unenforceable, such that the Court cannot assume for purposes of this motion that the implied

warranty of merchantability had expired by the time the alleged defect manifested in Texas

Plaintiffs' vehicles.  PCNA notes that a plaintiff seeking to advance a claim for unconscionable

practices under the TDTPA must establish that the defendant "took advantage of the lack of

knowledge, ability, experience, or capacity of the consumer *to a grossly unfair degree*," Tex. Bus.

& Com. Code § 17.45(5) (emphasis added), but PCNA fails to persuade the Court that this

standard is more narrow than the unconscionability standard that the Fourth Circuit espoused in

*Carlson*.  *Compare Daugherty v. Jacobs*, 187 S.W.3d 607, 616 (Tex. App. 2006) (examining the

knowledge disparity between a consumer and seller and asking whether the resulting unfairness

was glaringly noticeable, flagrant, complete, and unmitigated) *with Carlson*, 883 F.2d at 296

(examining the knowledge disparity between a buyer and seller, as well as the resulting contract,

in order to determine whether the contract was procedurally and substantively unconscionable).

Accordingly, the Court **DENIES** PCNA's motion to dismiss Texas Plaintiffs' TDTPA claim to

the extent that it is premised on PCNA's alleged failure to disclose material facts to consumers,

breach of implied warranty, and unconscionable acts or practices.

The Court **GRANTS IN PART** and **DENIES IN PART** PCNA's motion to dismiss Count Thirty of Plaintiffs' claim.

*Count Thirty-One: Unjust Enrichment (Texas)*

In Texas, a claim for unjust enrichment is appropriate where "one party has obtained a benefit from another by fraud, duress or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). A plaintiff bringing a claim for unjust enrichment must allege a connection between the parties that could be interpreted as one party having an implied or quasi-contractual obligation to repay the other party for benefits conferred. *Smith v. Texas*, No. 2:10-CV-218-J, 2011 WL 2883402, at *6 (N.D. Tex. July 15, 2011). If a valid express contract exists and governs the subject matter at issue, there can be no recovery upon a contract implied by law. *Allen v. Berrey*, 645 S.W.2d 550, 553 (Tex. App. 1982); *see also Anderson v. CitiMortgage, Inc.*, No. 4:10-CV-398, 2011 WL 1113494, at *6 (E.D. Tex. Mar. 24, 2011).

Similar to their co-plaintiffs, Texas Plaintiffs assert that PCNA should reimburse them for a portion of the price that they paid for their vehicles and for the cost of installing aluminum coolant pipes in their vehicles because their vehicles contained a part—allegedly defective in material—that manifested outside of the Warranty Period. Texas Plaintiffs also assert that their claim for an "overpayment" constitutes an exception to the general rule that the existence of a contract precludes an unjust enrichment claim. The Court rejects these arguments and finds that Texas Plaintiffs fail to state a claim for unjust enrichment.

Texas Plaintiffs' vehicles are subject to the terms of the Warranties. The Warranties define PCNA's obligation to reimburse consumers for the cost of repairing and replacing parts

that are defective in material.  (ECF No. 62-1, at 7; 62-3, at 7; 62-5, at 6; 62-7, at 7.)  Allowing Texas Plaintiffs to recover the damages that they seek from PCNA under a theory of unjust enrichment would improperly expand the duration and scope of these Warranties.  *See, e.g., In re Gen. Motors Corp.*, 385 F. Supp. 2d 1172, 1176 (W.D. Okla. 2005) (interpreting Texas law and dismissing a plaintiff's unjust enrichment claim where the defendant allegedly concealed a design defect because the product's warranty covered the subject matter of the claim); *accord supra* Sections IV(E) (Count Thirteen), IV(F) (Count Fifteen), IV(I) (Count Twenty-Three).  Texas Plaintiffs do not argue that the Warranties do not cover the subject matter of their claim.

Instead, Texas Plaintiffs cite *Southwestern Electric Power Co. v. Burlington Northern Railroad Co.* for the proposition that "in some circumstances, overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment."  966 S.W.2d 467, 469 (Tex. 1998).  This "exception" applies to those situations in which a party made a payment in excess of a contract's agreed-upon terms, not when a party is attempting to retroactively alter the terms of a contract.  *Compare id.* at 470 (citing a case in which a plaintiff sought to recover money mistakenly paid in excess of a contract price as one in which an overpayment could give rise to an unjust enrichment claim)[21] *with First Commodity Traders, Inc.*, 766 F.2d at 1011–12

---

[21]To support the claim that "in some circumstances, overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment," the Texas Supreme Court offered the following authority:

> *See, e.g., Staats v. Miller*, 150 Tex. 581, 243 S.W.2d 686, 687–88 (1951) (allowing restitution for excess money held by defendant after selling plaintiffs' cotton harvester pursuant to oral contract); *Bowers v. Missouri, Kan. & Tex. Ry. Co.*, 241 S.W. 509, 510–11 (Tex.Civ.App.—Texarkana 1922, no writ) (allowing restitution for freight charges paid in excess of rates specified in shipping contract); *see also Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28, 31–33 (5th Cir. 1963) (holding that plaintiff could recover money mistakenly paid in excess of contract price); *Natural Gas Pipeline Co. v. Harrington*, 246 F.2d 915, 921 (5th Cir. 1957)

("[Plaintiff] may not unilaterally alter the terms of the contract by now claiming unjust enrichment.").  Texas Plaintiffs do not cite any authority for the proposition that they may use an unjust enrichment claim to recover for an alleged overcharge arising out of the same subject matter as that which their Warranties cover.

The Court finds that Texas Plaintiffs fail to state a claim for unjust enrichment. Accordingly, the Court **GRANTS** PCNA's motion to dismiss Count Thirty-One of Plaintiffs' Complaint.

### L.  WASHINGTON

In 2007, Washington Plaintiff Ghassan Daher purchased a used 2003 Cayenne from a Ferrari dealer in Arizona.  The plastic coolant tubes in Washington Plaintiff's vehicle cracked in 2011 and rendered his vehicle disabled.  Washington Plaintiff paid to replace the coolant tubes in his vehicle and now seeks injunctive relief and monetary damages under Washington's Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010 *et seq*.  PCNA moves to dismiss this claim.

*Count Thirty-Two: Washington's Consumer Protection Act*

The WCPA proscribes any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Wash. Rev. Code § 19.86.020.  To state a claim under the WCPA, a plaintiff must allege (1) a deceptive act or practice, (2) occurring in trade or commerce, (3) a public interest impact, (4) an injury to plaintiff in his or her business or

---

(holding that gas company was entitled to restitution of difference between contract rate and price paid under invalid rate order set by regulatory board).

*Sw. Elec. Power Co.*, 966 S.W. 2d at 469–70.  None of the courts in these cases allowed a plaintiff to recover an overpayment from a third party with no connection to the contract.

property, and (5) causation.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719

P.2d 531, 533 (Wash. 1986).  PCNA alleges that Washington Plaintiff fails to allege the first and

fifth elements of this test.

      To demonstrate unfair or deceptive conduct under the WCPA, a plaintiff must allege that a

defendant's conduct had the capacity to deceive a substantial portion of the public or that it was

per se unfair.  *Id.*  The Washington Supreme Court has stated that "[k]nowing failure to reveal

something of material importance is deceptive within the [W]CPA."  *Indoor Billboard/Wash.,*

*Inc. v. Integra Telecom of Wash., Inc*., 170 P.3d 10, 18 (Wash. 2007) (internal citations omitted).

Washington Plaintiff alleges that PCNA's failure to disclose to consumers the fact that the

Cayenne's coolant system was not of a particular standard, quality or grade constitutes a

deceptive act capable of deceiving a substantial portion of the public.[22]  Washington Plaintiff

further alleges that PCNA's failure to disclose this information caused him to suffer injuries in

that, had he known of the alleged defect, he would not have purchased a Cayenne or would have

insisted on paying less for it.  The Court finds that Washington Plaintiff states a claim for relief

under the WCPA.

      In *Zwicker v. Gen. Motors Corp*., a Washington district court upheld a WCPA claim

based on allegations that are very similar to the allegations in this case.  No. C07-0291, 2007 WL

5309204 (W.D. Wash. July 26, 2007).  The plaintiffs in *Zwicker* alleged that the defendant

knowingly manufactured vehicles with a defective speedometer and failed to disclose the defect

to consumers.  *Id.* at *1.  The plaintiffs claimed that the faulty speedometers posed safety risks

and that, had they known of the defect, such knowledge would have impacted their purchasing

_____

[22]Washington Plaintiff does not appear to incorporate Plaintiffs' allegations of affirmative
misrepresentations into his claim.

decisions.  *Id*.  The defendant advanced the same arguments that PCNA advances here—that there is nothing deceptive about failing to inform consumers of the fact that a product component may fail within its useful life and that such a failure to disclose did not "cause" the plaintiffs' injuries. *Id*. at *5.  In rejecting these arguments, the court found that allegations of a "systematic failure of a specific automotive part of which [defendant] was allegedly aware and concealed from the public" were sufficient to establish a deceptive act or practice under the WCPA.  *Id*.  Similar to PCNA, the defendant in *Zwicker* characterized the plaintiff's allegations as a "failure to disclose that a component part may fail in the future."  *Id*.  The court rejected this characterization, noting that "[p]laintiffs are not asserting a one-off post-warranty failure of an automobile component." *Id*.  The court went on to conclude that the plaintiffs' allegations that "had [the defendant] informed them about the nature of the speedometer defect they would either not have purchased the cars or paid less for them" were sufficient to demonstrate causation under the WCPA.  *Id*. The court denied the defendant's motion to dismiss.  *Id*.

The Court finds that the *Zwicker* court's analysis is consistent with the Washington Supreme Court's statement that "[k]nowing failure to reveal something of material importance is deceptive within the [W]CPA."  *See Indoor Billboard, Inc*., 170 P.3d at 18.  The *Indoor Billboard* court's statement also mirrors the standard that California courts use in interpreting California's Consumer Legal Remedies Act; the Court found that California Plaintiffs sufficiently stated a CLRA claim on the same facts that Washington Plaintiff advances.[23]  *See supra* Section IV(B)

_____

[23]  PCNA's argument that the *Zwicker* court relied on *Falk v. General Motors Corp*., which the Ninth Circuit has since limited, is irrelevant.  The *Falk* court found that a defendant has a duty to disclose under the CLRA any defects that are "material."  496 F. Supp. 2d at 1095; *see Wilson*, 668 F.3d at 1141–43 (discussing *Falk* and finding that post-warranty defects are only "material" for purposes of the CLRA if they present a safety risk to consumers).  The *Falk* test mirrors the standard that the Washington Supreme Court has espoused—that a defendant has a

(Count Two).  PCNA does not cite any Washington authority to negate the proposition that,

where a manufacturer fails to disclose post-warranty defects that allegedly present safety risks to

consumers and where the consumer could not have reasonably discovered such information on his

or her own, such conduct is outside the reach of the WCPA.  PCNA similarly does not provide

any Washington authority negating the *Zwicker* court's holding that such a failure to disclose

"caused" the consumer's injuries when, had the consumer known the undisclosed information, it

would have affected his or her purchasing decision.  PCNA's final attempt to distinguish

*Zwicker*—by arguing that Washington Plaintiff failed to allege facts suggesting that PCNA had

knowledge of the alleged defect—has already been rejected by this Court.  *See supra* Section

III(B).  The Court finds that Washington Plaintiff states a claim for relief under the WCPA.

The Court **DENIES** PCNA's motion to dismiss Count Thirty-Two of Plaintiffs'

Complaint.

## V.  Leave to Amend

As a final matter, the Court addresses Plaintiffs' general request for "leave to amend" in

the alternative to their request that this Court deny PCNA's motion.  (ECF No. 77, at 180.)  The

Court denies Plaintiffs' request for leave to amend their Complaint.

Courts in this circuit "[do] not look favorably upon bare requests for leave to amend in a

response to a motion to dismiss when the requesting party could have filed a proper motion to

amend and attached a proposed amended complaint for consideration by the court."

---

duty to disclose all "material" information to consumers. *See Indoor Billboard*, 170 P.3d at 18.
Regardless of whether non-safety related defects can be "material" for purposes of the WCPA,
the Court found that California Plaintiffs had sufficiently alleged facts to meet the stricter test set
forth in *Wilson*. *See supra* Section IV(B) (Count Two).  The *Zwicker* court's reliance on *Falk*
(as opposed to *Wilson*) in this context is therefore inconsequential.

*Techdisposal.com, Inc. v. CEVA Freight Mgmt*, No. 2:09-cv-356, 2009 WL 4283090, at *4 (S.D. Ohio Nov. 30, 2009). The court of appeals has explained:

> Had plaintiffs filed a motion to amend the complaint prior to th[e] Court's consideration of the motions to dismiss and accompanied that motion with a memorandum identifying the proposed amendments, the Court would have considered the motions to dismiss in light of the proposed amendments to the complaint . . . . Absent such a motion, however, Defendant was entitled to a review of the complaint as filed pursuant to Rule 12(b)(6). *Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies* of the complaint and then an opportunity to cure those deficiencies.

*PR Diamonds, Inc. v. Chandler,* 364 F.3d 671, 699 (6th Cir. 2004) (quoting *Bengala v. PNC Bank*, 214 F.3d 776, 783–84 (6th Cir. 2000)).

Plaintiffs' general request for leave to amend their Complaint, in the alternative to their request that this Court deny PCNA's motion, is nothing more than an attempt to use the Court's decision as an advisory opinion enabling them to cure any deficiencies in their Complaint. *See id.* Plaintiffs have failed to follow the proper procedure for submitting a motion to amend their Complaint; thus, this Court "will not accept [Plaintiffs] alternative argument contained in a response to a motion to dismiss as a proper motion to amend." *Techdisposal.com, Inc.*, 2009 WL 4283090, at *4. The Court **DENIES** Plaintiffs' request for leave to amend their Complaint.

## VI. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** PCNA's motion to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6). (ECF No. 62.) The Court takes the following action with respect to each count:

> Count One – Magnuson-Moss – **GRANT** as to the nationwide class' express warranty claim under Magnuson-Moss; **DENY** as to the nationwide class' implied warranty claim under Magnuson-Moss. California, Florida, New York, Washington, Ohio and Georgia Plaintiffs are excluded from the nationwide class.

Count Two – California's Consumer Legal Remedies Act – **DENY**

Count Three – California's Unfair Business Practices Act – **DENY**

Count Four – Unjust Enrichment (California) – **GRANT**

Count Five – Colorado Consumer Protection Act – **GRANT IN PART** and **DENY IN PART**

Count Six – Strict Product Liability (Colorado) – **GRANT**

Count Seven – Implied Warranty of Merchantability (Colorado) – **DENY**

Count Eight – Florida's Deceptive and Unfair Trade Practices Act – **DENY**

Count Nine – Negligence (Florida) – **GRANT**

Count Ten – Unjust Enrichment (Florida) – **GRANT**

Count Eleven – Implied Warranty of Merchantability (Georgia) – **GRANT**

Count Twelve – Georgia's Uniform Deceptive Trade Practices Act – **GRANT**

Count Thirteen – Unjust Enrichment (Georgia) – **GRANT**

Count Fourteen – Illinois Consumer Fraud and Deceptive Practices Act – **GRANT IN PART** and **DENY IN PART**

Count Fifteen – Unjust Enrichment (Illinois) – **GRANT**

Count Sixteen – Strict Product Liability (Michigan) – **GRANT**

Count Seventeen – Implied Warranty Under the UCC (Michigan) – **DENY**

Count Eighteen – Michigan Consumer Protection Act – **GRANT IN PART** and **DENY IN PART**

Count Nineteen – Negligence (Michigan) – **GRANT**

Count Twenty – New Jersey's Consumer Fraud Act – **GRANT**

Count Twenty-One – Implied Warranty of Merchantability (New Jersey) – **DENY**

Count Twenty-Two – New York General Business Law – **GRANT IN PART** and **DENY IN PART**

Count Twenty-Three – Unjust Enrichment (New York) – **GRANT**

Count Twenty-Four – Breach of Implied Warranty in Tort (Ohio) – **DENY**

Count Twenty-Five – Ohio's Consumer Sales Protection Act – **GRANT** as to class action allegations; **GRANT IN PART** and **DENY IN PART** as to Ohio Plaintiffs' individual claims

Count Twenty-Six – Negligence (Ohio) – **DENY**

Count Twenty-Seven – Deceptive Trade Practices (Ohio) – **GRANT**

Count Twenty-Eight – Breach of Implied Warranty of Merchantability (Texas) – **DENY**

Count Twenty-Nine – Negligence (Texas) – **GRANT**

Count Thirty – Deceptive Trade Practices (Texas) – **GRANT IN PART** and **DENY IN PART**

Count Thirty-One – Unjust Enrichment (Texas) – **GRANT**

Count Thirty-Two – Washington Consumer Protection Act – **DENY**

**IT IS SO ORDERED.**

   /s/  Gregory L. Frost           
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE