UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: PORSCHE CARS NORTH                    Case No.  2:11-md-2233
AMERICA, INC. PLASTIC COOLANT
TUBES PRODUCTS LIABILITY
LITIGATION                                   JUDGE GREGORY L. FROST
                                             Magistrate Judge E.A. Preston Deavers

This document relates to: <u>ALL CASES</u>.

<u>OPINION AND ORDER</u>

This matter is before the Court for consideration of the joint motion for appeal bond to secure costs incurred during pendency of appeal (ECF No. 188), objector Mary Ellen Kalange's response in opposition (ECF No. 192), and the joint reply memorandum (ECF No. 193).  For the reasons that follow, the Court **GRANTS** the motion, but declines to order a bond in the amount the movants seek.

I.      BACKGROUND

This case is a multidistrict class action brought by purchasers of the Porsche Cayenne sport utility vehicle.  Plaintiffs claim, on behalf of themselves and other similarly-situated individuals, that Defendants manufactured the Cayenne with a defective cooling system.

On August 26, 2013, the Court preliminarily approved a settlement agreement between the parties.  (ECF No. 147.)  Cayenne purchaser Mary Ellen Kalange elected to remain in the class and be bound by all determinations and judgments concerning the settlement.

Ms. Kalange objected to the proposed settlement agreement and appeared at the March 10, 2014 Final Fairness Hearing to orally argue her objections.  The basis of Ms. Kalange's

1

objections is that her particular Cayenne experienced engine failure as a result of the alleged defect, such that the amount she would receive in the settlement agreement is not adequate compensation.  Ms. Kalange also argued that Defendants acted unethically by not informing Cayenne owners of the alleged defect, in addition to suggesting various other points that are unrelated to the merits of this litigation and the settlement.

After finding that the settlement was fair, reasonable and adequate to the class, the Court rejected Ms. Kalange's arguments and approved the settlement.  Ms. Kalange filed a notice of appeal shortly thereafter.

The movants now request an appeal bond under Federal Rule of Appellate Procedure 7. In their motion, the movants request a bond in the amount of $176,474.50, the bulk of which is $139,000 in attorney's fees that they expect to incur in defending against Ms. Kalange's appeal.

Despite filing a memorandum in opposition to the joint motion, Ms. Kalange did not substantively respond to any of the movants' legal arguments.  Ms. Kalange's position in this dispute appears to be that she is acting in good faith because she is an attorney who wishes to protect the class from what she perceives to be an unfair settlement.  Meanwhile, however, the remaining class members—approximately 5,800 of whom have already filed claims for payment under the settlement agreement and none of whom have consented to have Ms. Kalange represent them—cannot receive payment under the settlement agreement until Ms. Kalange's appeal concludes.

## II.    ANALYSIS

Pursuant to Federal Rule of Appellate Procedure 7, "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure

payment of costs on appeal." The issue before this Court is two-fold: (1) is a bond appropriate in this case, and (2) if so, in what amount?

### A. Standard for Ordering an Appeal Bond

Courts in this Circuit have considered the following factors in analyzing whether to impose a bond under Rule 7: "(1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct." *Gemelas v. Dannon Co., Inc*., No. 1:08 CV 236, 2010 WL 3703811, at *1 (N.D. Ohio Aug. 31, 2010) (citing *Tri–Star Pictures, Inc. v. Unger*, 32 F. Supp. 2d 144, 147–50 (S.D.N.Y. 1999)). The Court agrees with the movants that these factors support the imposition of a bond in this case.

Regarding the first factor, Ms. Kalange does not dispute the movants' assertion that she has the financial ability to post a bond. It is Ms. Kalange's burden to demonstrate that the bond would constitute a barrier to her appeal, see *In re: Cardizem CD Antitrust Lit*., 391 F.3d 812, 818 (6th Cir. 2004), and Ms. Kalange does not make any such showing in her brief.

Regarding the second factor, the Court agrees with the movants that Ms. Kalange's conduct up to this point suggests a pattern of noncooperation and noncompliance with court orders. Following the March 10, 2014 Final Fairness Hearing, Ms. Kalange attempted to file an unauthorized "Addendum to Fairness Hearing," which was nothing more than an attempt to argue untimely objections. (ECF No. 177; struck by ECF No. 178.) Ms. Kalange then failed to timely file her memorandum in opposition to the motion for bond. Finally, rather than taking Plaintiffs' counsel's calls and discussing the substance of the present motion before it was filed, Ms. Kalange elected to ignore those calls and "wait and see the basis for the motion." (ECF No. 192, at 5 n.2.) The fact that Ms. Kalange resides in Idaho—outside the jurisdiction of the Sixth

Circuit and this Court—is further support for the conclusion that Ms. Kalange may not pay the appeal costs if her appeal is unsuccessful.

The third and fourth factors are related in this case because, in the Court's opinion, the lack of merit in Ms. Kalange's appeal (and her willingness to prevent other class members from receiving compensation while pursuing that appeal) suggests a lack of good faith.  During the Final Fairness Hearing, the Court gave Ms. Kalange unlimited time to present all legal arguments in support of her objections.  But Ms. Kalange failed to make any persuasive arguments, instead claiming that her unique circumstances should invalidate a settlement of which the overwhelming majority of the class approves.  Ms. Kalange's brief on the bond issue actually highlights the problem with her objections: she argues that it "did not make sense for me to 'opt out' to pursue an independent action against PCNA and [her local Porsche dealership], let alone the foreign manufacturer, Porsche AG, a party certain to challenge the exercise of jurisdiction," (ECF No. 192, at 2)—thereby acknowledging the hurdles that litigants pursuing this issue would have faced—but then rejects as "inadequate" the compromised amount of compensation she would receive under the settlement agreement.  Now, after failing to convince this Court that the settlement is unfair, inadequate, or unreasonable, Ms. Kalange asserts that the issues she raises on appeal "will be fully supported by Supreme Court and Sixth Circuit precedents," (ECF No. 192, at 4), but sheds no light on how she now plans to argue that this Court abused its discretion in approving the settlement agreement.

The fact that Ms. Kalange's brief does not discuss the merits of her appeal, but instead discusses at length her personal frustration with her local Porsche dealership, speaks volumes.  It appears that Ms. Kalange's desire to pursue this appeal is based solely on a personal vendetta against her local Porsche dealership for disregarding concerns she raised after her vehicle broke

down.  *See id.* at 2.  Unfortunately, the remaining class members now must wait to receive their payments under the settlement agreement while Ms. Kalange pursues that personal vendetta.

For those reasons, the Court concludes that a bond is appropriate.  The question now becomes what costs should be included in the bond amount.

### B.  Bond Amount

It is undisputed that the costs referenced in Federal Rule of Appellate Procedure 39(e) and 28 U.S.C. § 1920 can be assessed on appeal and included in a bond under Rule 7.  The question is whether additional costs (such as attorney's fees and administrative costs) can be included in the bond amount.

The Sixth Circuit has held that Rule 7's reference to "costs" encompasses more than just the specific costs referenced in Rule 39(e) and § 1920.  *Cardizem*, 391 F.3d at 817–18.  The "costs" that can be assessed on appeal, and therefore included in a Rule 7 bond, include those sums that are "properly awardable under the relevant statute or other authority."  *Id*. at 818 (quoting *Marek v. Chesny*, 473 U.S. 1, 9 (1985)).  As such, courts must analyze the underlying statute to determine whether additional costs (such as attorney's fees) can be assessed on appeal and therefore included in the bond.

The movants suggest that the analysis ends whenever an underlying statute contains a fee-shifting provision; however, that is not accurate.  The Court must analyze the fee-shifting provision at issue to determine whether attorney's fees are "properly awardable" under that provision in each case.  *Id*. (concluding that attorney's fees were awardable against a class action objector when the underlying statute authorized attorney's fees against a plaintiff pursuing a frivolous action).  If, for example, the underlying statute is "asymmetrical," meaning that fee awards are only available to one party but not the other, then the court must ask whether the

party requesting the fee award (or requesting that the fee award be included in a bond) would be entitled to that award under the relevant statute.  *See Azizian v. Federated Dep't Stores, Inc*., 499 F.3d 950, 959 (9th Cir. 2007) (rejecting the parties' argument that a class action objector should post a bond that included expected attorney's fees because the underlying statute authorized attorney's fees against losing defendants only, and the objector could not be considered a losing defendant).

Applying those principles to the facts of this case, the Court begins by identifying the "relevant statute" to which it must look to define costs.  *Cardizem*, 391 F.3d at 817.  The movants assert that the Court can consider any statute in the underlying class action—specifically in this case, Ohio's Consumer Protection Statute, Ohio Revised Code § 1345.09(F)—but that argument is unavailing.  It would make no logical sense to permit the movants to recover their appellate attorney's fees under an Ohio statute (which the Ohio plaintiffs raised on behalf of an Ohio subclass) against an objector who is neither an Ohio plaintiff nor a member of the Ohio subclass.  Indeed, the Sixth Circuit rejected a similar argument in *Cardizem* when it refused to look to the various substantive laws raised in the class action and instead focused exclusively on the Tennessee statute that the objector had raised in the litigation.  *See* 391 F.3d at 817.

The movants' argument also makes no sense in light of the Ohio statute's language.  As stated above, the question is not whether the underlying statute contains a fee-shifting provision, but whether attorney's fees are "properly awardable" under that provision.  The Ohio statute authorizes attorney's fees against suppliers who violate the statute and against consumers "complaining of the act or practice that violated this chapter" in certain circumstances.  Ohio Rev. Code § 1345.09(F).  Because Ms. Kalange is neither a supplier nor a consumer who

invoked the Ohio statute, the plain language of the fee-shifting provision does not apply, and attorney's fees are not properly awardable under § 1345.09(F) in this case.  *Cf. Azizian*, 499 F.3d at 959.[1]

In this case, because there is no Idaho subclass, Ms. Kalange is only a part of the nationwide class.  The Complaint contains one claim for relief on behalf of the nationwide class, which arises under the Magnuson-Moss Federal Warranty Act, 15 U.S.C. § 2301 *et seq*. ("Warranty Act").  The Court therefore must examine the Warranty Act to determine what fees and costs could be assessed against Ms. Kalange in the event her appeal is unsuccessful.

The Warranty Act authorizes attorney's fees in certain circumstances.  It states:

> If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

15 U.S.C. § 2310(d)(2).  Because this provision only allows consumers who prevail in their Warranty Act claims to recover attorney's fees, it parallels the asymmetrical attorney's fee provision in *Azizan*.  *See* 499 F.3d at 960.

Here, as in *Azizian*, both the objector (Ms. Kalange) and the settlement class constitute consumers alleging wrongdoing under the Warranty Act.  The nationwide class (of which Ms. Kalange is a part) never "prevailed" in its Warranty Act claim.  Accordingly, it would contradict the plain language and obvious purpose of § 2310(d)(2) to permit the class to recover their attorneys' fees against Ms. Kalange in the event her appeal is unsuccessful.  *Cf. id*. at 960 (explaining why asymmetrical statutes do not authorize attorney's fee awards against losing

---

[1] The movants cite *Gemelas v. Dannon Co., Inc*., in which a judicial officer from the Northern District of Ohio relied on an Ohio statute to include attorney's fees in a bond amount against a class action objector, but that decision provides no discernible analysis on this issue on which the Court can rely.  *See* 2010 WL 3703811, at *1–2.

objectors in class actions and stating, "[w]hile the interests of [a settlement] class member who challenges the settlement on appeal may well be adverse to the interests of a class member who supports it, both remain the alleged victims, rather than perpetrators, of the claimed . . . injury"); *see also In re Magsafe Apple Power Adapter Lit*., Nos. 12-15757 & 12-15782, 2014 WL 1624493, at *1 (9th Cir. Apr. 24, 2014) (noting that the Warranty Act contains an asymmetrical fee-shifting provision, which cannot be used to shift attorneys' fees from losing objectors to prevailing plaintiffs in a class action).  It also would contradict the plain language of § 2310(d)(2) to assess Defendants' attorneys' fees against Ms. Kalange.  *See* 15 U.S.C. § 2310(d)(2).

In short, there is no statutory authority that defines additional expenses such as attorney's fees as "costs" that the Court can include in Rule 7 bond.  The movants make the additional argument that courts can include attorney's fees and costs in a Rule 7 bond if the appeal is taken in bad faith, but that decision lies within the appellate court's discretion.  *See* Fed. R. App. P. 38 (stating that a court of appeals may award damages if it determines that an appeal is frivolous). Nothing in this Opinion and Order would prevent the movants from seeking their attorney's fees as damages under Rule 38.  The Court, however, declines to include prospective attorney's fees in a bond amount simply because the Sixth Circuit might decide to assess those damages against Ms. Kalange for filing a frivolous appeal.

Having found no statutory authority that authorizes additional costs, the Court is constrained by the costs referenced in Rule 39(e) and 28 U.S.C. § 1920 in setting the bond amount in this case.  The movants request that the bond amount include $474.50 for costs associated with "preparation and transmission of the record," which Rule 39(e) references as a recoverable cost on appeal.  That amount therefore will be included in the bond.

8

The movants also request that the bond amount include $2,000 for expected expenses related to preparing and filing their appellate briefs, including charges for printing and copying. Because § 1920 lists fees for printing and copying as recoverable costs, the Court will include the requested $2,000 in the bond amount.

The movants then make the curious argument that Rule 39(e)(3) encompasses the additional costs they will incur during the pendency of the appeal, including $25,000 in administrative costs paid to the Settlement Administrator and $10,000 in "travel, mediation, briefing, oral argument, research, and file administration" costs. (ECF No. 188, at 13–14.) But those costs fall outside the plain language of Rule 39(e)(3), which applies to costs for "premiums paid for a supersedeas bond or other bond to preserve rights pending appeal." The movants do not provide any authority interpreting Rule 39(e)(3) to mean anything other than what its plain language suggests. Nor do they explain how administrative costs and travel expenses are examples of premiums they paid for a bond. Accordingly, the Court declines to include the requested $35,000 in the bond amount.

The Court is left with $2,474.50 in recoverable costs that can be included in the Rule 7 bond. The movants suggest that courts have authority to impose $25,000 bonds without requiring a delineated showing of costs but, as the above analysis shows, fail to persuade the Court that their recoverable costs will approach $25,000. The Court therefore declines to order a bond in that amount.

### III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the joint motion for appeal bond (ECF No. 188) and **ORDERS** Mary Ellen Kalange to post a bond in the amount of $2,474.50 within fourteen days of the date of this Opinion and Order.

9

**IT IS SO ORDERED**.

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**